IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Statesville Division)
Civil Case No. _____

| | |
|---|---|
| RABO AGRIFINANCE LLC, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> WESCOR FARM OPERATIONS, LLC ) </br> f/k/a WESCOR FARMING, LLC; ) </br> JOSEPH RANDALL ELLER; DD&R ) </br> LAND HOLDINGS, LLC; D&R LAND ) </br> HOLDINGS, LLC; and ELK CREEK ) </br> LAND HOLDINGS, LLC, ) </br> ) </br> Defendants. ) </br> ) </br> ) | **VERIFIED COMPLAINT AND REQUEST FOR ENTRY OF ORDER APPOINTING RECEIVER** |

NOW COMES Plaintiff Rabo AgriFinance LLC ("Rabo" or "Plaintiff") by and through the undersigned counsel, and complains of Defendants Wescor Farm Operations, LLC f/k/a Wescor Farming, LLC, Joseph Randall Eller, DD&R Land Holdings, LLC, D&R Land Holdings, LLC and Elk Creek Land Holdings, LLC (collectively, the "Defendants"), by alleging and saying as follows:

**INTRODUCTION**

Defendants Wescor Farm Operations, LLC f/k/a Wescor Farming, LLC ("Wescor") and Joseph Randall Eller ("Eller") operated and managed a row crop farming and cattle operation in northwestern North Carolina and southwestern Virginia. Plaintiff, an agricultural-based lender, extended an operating line of credit to Wescor and Eller secured by their assets, including the crops, livestock and farm equipment. In recent years, Wescor's and Eller's farming operations were not profitable and as a result, they defaulted on their loan. Plaintiff and Defendants sought

1

to resolve their issues through an out-of-court forbearance agreement; however, the Defendants were unable to abide by its terms and remain in default. As a result, Plaintiff now seeks a money judgment for the balance owed under the loan and the appointment of a receiver to take control of the real property pledged as collateral to sell it to pay the loan.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a limited liability company organized under the laws of the State of Delaware and is authorized to transact business in the State of North Carolina.

2. Wescor Farm Operations, LLC, formerly known as Wescor Farming, LLC ("Wescor"), is a limited liability company organized under the laws of the Commonwealth of Virginia with its principal place of business in Grayson County, Virginia.

3. Defendant Joseph Randall Eller ("Eller"), an unmarried person who is not part of a civil union or domestic partnership, is a citizen and resident of Ashe County, North Carolina and is not an infant, incompetent person, nor in active military service or otherwise subject to the protections afforded under the Servicemembers Civil Relief Act, 50 U.S.C. §§ 3901-4043.

4. Defendant DD&R, LLC ("DD&R") is a limited liability company organized under the laws of the Commonwealth of Virginia with its principal place of business in Grayson County, Virginia.

5. Defendant D&R Land Holdings, LLC ("D&R") is a limited liability company organized under the laws of the Commonwealth of Virginia with its principal place of business in Grayson County, Virginia.

6. Defendant Elk Creek Land Holdings, LLC ("Elk Creek") is a limited liability company organized under the laws of the Commonwealth of Virginia with its principal place of business in Grayson County, Virginia.

7. The Court has subject matter jurisdiction over this action under and by virtue of, inter alia, 28 U.S.C. § 1332 in that the matter in controversy exceed $75,000 exclusive of interest and costs and is between citizens of different states.

8. Venue for this case is properly in this court pursuant to, without limitation, 28 U.S.C. § 1391.

## STATEMENT OF FACTS

9. Plaintiff is in the business of providing agricultural-based financing to farmers throughout the United States.

10. Wescor and Eller were owners and operators of a row crop and cattle operation in northwestern North Carolina and southwestern Virginia.

11. Defendants DD&R, D&R and Elk Creek are real estate holding companies owned and operated primarily by Eller.

**I.** **The Line of Credit**.

12. In and around June 2019, Plaintiff agreed to extend an operating line of credit to Wescor and Eller (the "Line of Credit"). In connection with the Line of Credit, Plaintiff and Eller entered into a Master Credit Agreement dated June 3, 2019 (as amended, modified and restated from time to time, the "Credit Agreement") whereby Plaintiff agreed to make one or more credit facilities available to Eller under the terms and conditions of certain facility sheets. A true and correct copy of the Credit Agreement is attached to Plaintiff's Complaint as **Exhibit 1**.

13. On or about May 14, 2020, Plaintiff and Wescor and Eller entered into a Joinder Agreement (the "Joinder Agreement") to amend and modify the Credit Agreement to add Wescor as a party to the Credit Agreement. Under the Joinder Agreement, Wescor assumed, and became

jointly and severally liable with Eller for the payment of the Line of Credit. A true and correct copy of the Joinder Agreement is attached hereto as **Exhibit 2**.

14. In addition to the Joinder Agreement, certain other terms of Credit Agreement were amended, modified and restated pursuant to the Addendum to Master Credit Agreement dated May 14, 2020 and executed by Wescor and Eller (the "Addendum"), a true and correct copy of which is attached collectively hereto as **Exhibit 3**.

15. Under the terms of the Credit Agreement, Wescor and Eller executed a Facility Sheet dated May 4, 2020, for an operating line of credit from Plaintiff in the original maximum principal amount of Ten Million Dollars ($10,000,000.00). The Facility Sheet was amended, modified, renewed and restated several times, including by new Facility Sheets dated June 4, 2021, November 6, 2021, and May 17, 2022 (as amended, modified, renewed and restated from time to time, collectively the "Facility Sheet"). The Facility Sheet executed on May 17, 2022, increased the maximum aggregate principal amount of the line of credit from Ten Million Dollars ($10,000,000.00) to Thirteen Million Five Hundred Thousand Dollars ($13,500,000.00). True and correct copies of the Facility Sheets, as amended, modified, renewed and restated, are attached hereto collectively as **Exhibit 4**.

16. In connection with the credit extended by Plaintiff under the Credit Agreement and Facility Sheet, Wescor and Eller executed an Operating Line of Credit 1 Note dated May 14, 2020 payable to Plaintiff in the original principal amount of Ten Million Dollars ($10,000,000.00). When Wescor and Eller executed the Facility Sheet dated May 17, 2022 that increased the maximum aggregate principal amount of the line of credit from $10,000,000 to $13,500,000, Wescor and Eller executed a new Operating Line of Credit 1 Note dated May 17, 2022 in the

amount of $13,500,000.00 (hereinafter and together with the May 14, 2020 note, the "Note"). A true and correct copy of the Notes are attached hereto as **Exhibit 5**.

17. The Credit Agreement, Security Agreement, UCC-1's, Facility Sheets and the Note and all other loan documents executed in connection with the Line of Credit and any amendments and restatements are collectively referred to as the "LOC Loan Documents".

18. The Line of Credit matured on May 1, 2023 and all outstanding principal, interest, fees and charges became immediately due and payable in full.

II. **The $350,000 Vendor Finance Agreement**.

19. On or about February 27, 2020, Wescor applied for and was granted a line of credit in the amount of $350,000.00 from Plaintiff pursuant to the Application and Account Agreement dated February 27, 2020 (the "Inputs Agreement"). A true and correct copy of the Inputs Agreement is attached hereto as **Exhibit 6**.

20. On or about March 7, 2022, Wescor borrowed from Plaintiff pursuant to the Inputs Agreement, designed as Rabo Account No. 748526-11003 ("Account No. 11003").

21. On or about March 18, 2022, Wescor borrowed from Plaintiff pursuant to the Inputs Agreement, designed as Rabo Account No. 748526-12001 ("Account No. 12001" and together with Account No. 11003, the "Inputs Accounts" and together with the Line of Credit, the "Loans").

22. The Inputs Accounts are in default and all outstanding principal, interest, fees and charges are currently due and payable in full.

23. As of March 31, 2025, the balance owed under Account 11003 was $267,966.55 with interest continuing to accrue at the per diem rate of $94.49.

24. As of March 31, 2025, the balance owed under Account 12001 was $143,680.06 with interest continuing to accrue at the per diem rate of $52.76.

### III. The Forbearance Agreement.

25. On or about October 30, 2023, Plaintiff sent written demand to Wescor and Eller demanding the full and complete payment of the Loans. A true and complete copy of the demand letter is attached hereto as **Exhibit 7**.

26. Notwithstanding Plaintiff's demand, Wescor and Eller failed to pay the Loans.

27. Thereafter, over the next several months Plaintiff and Wescor and Eller thereafter engaged in extensive discussions and negotiations to address the repayment of the Loans, which resulted in the Plaintiff and Defendants entering into a forbearance agreement dated January 24, 2024 (the "Forbearance Agreement"), a true and correct copy of which is attached hereto as **Exhibit 8**.

28. Under the terms of the Forbearance Agreement, Plaintiff agreed to forbear on enforcing its rights and remedies under the Loans in exchange for the Defendants agreeing to certain terms, conditions and consideration that included, among other things, (i) appointing a chief restructuring officer (the "CRO") to wind up the operations of Wescor and liquidate the Collateral, (ii) granting liens on real estate owned by entities that are owned and/or controlled by Eller to secure the Loans, (iii) liquidating the real estate collateral through a structured sales plan, and (iv) agreeing to the appointment of a receiver over Wescor and the Collateral (defined below) in the event the Defendants default under the Forbearance Agreement.

29. Consistent with the terms of the Forbearance Agreement, Defendants executed certain deeds of trust (collectively, the "Deeds of Trust" and which are attached hereto as Exhibits 9-18) granting Plaintiff a security interest in certain real estate owned by the Defendants as described therein (the "Collateral") to secure the Loans, to wit:

   a. Deed of Trust, Assignment of Rents and Security Agreement recorded in Book 1882, Page 281 of the Surry County Registry. See **Exhibit 9** attached hereto.

b. Deed of Trust, Assignment of Rents and Security Agreement recorded in Book 1402, Page 336 of the Yadkin County Registry. See **Exhibit 10** attached hereto.

c. Credit Line Deed of Trust, Assignment of Rents and Security Agreement, Instrument No. 240000406 recorded in Book 1231, Page 924 of the Carroll County Circuit Court. See **Exhibit 11** attached hereto.

d. Credit Line Deed of Trust, Assignment of Rents and Security Agreement, Instrument No. 240000199 and recorded in the Patrick County Circuit Court. See **Exhibit 12** attached hereto.

e. Credit Line Deed of Trust, Assignment of Rents and Security Agreement, Instrument No. 240000216 recorded in the Grayson County Circuit Court. See **Exhibit 13** attached hereto.

f. Credit Line Deed of Trust, Assignment of Rents and Security Agreement, Instrument No. 240000221 recorded in Book 1110, Page 537 of the Smyth County Circuit Court. See **Exhibit 14** attached hereto.

g. Credit Line Deed of Trust, Assignment of Rents and Security Agreement, Instrument No. 240000227 recorded in the Floyd County Circuit Court. See **Exhibit 15** attached hereto.

h. Supplemental Deed of Trust (Additional Security), Instrument No. 240001082 recorded in the Washington County Circuit Court. See **Exhibit 16** attached hereto.

i. Supplemental Deed of Trust (Additional Security), Instrument No. 240000487 recorded in Book 692, Page 937 of the Grayson County Circuit Court. See **Exhibit 17** attached hereto.

j. Supplemental Deed of Trust (Additional Security), Instrument No. 240002284, recorded in Book 701, Page 854 of the Grayson County Circuit Court. See **Exhibit 18** attached hereto.

A summary of the Collateral is attached hereto as **Exhibit 19**.

30. Defendants defaulted under the Forbearance Agreement.

31. Instead of Plaintiff immediately seeking to enforce its rights and remedies, on or about June 4, 2024, Plaintiff and Defendants entered into a First Amendment to Forbearance Agreement (the "First Amendment"), which extended the forbearance period and set out a

schedule of dates and payments that must be made to Plaintiff. A copy of the First Amendment is attached hereto as **Exhibit 20**.

32. Defendants again defaulted under the Forbearance Agreement by failing to timely make the required minimum payments to Plaintiff as set forth in the First Amendment to Forbearance Agreement.

33. On or about November 13, 2024, Plaintiff provided Defendants with written notice of default (the "Notice of Default") and provided Defendants five (5) business days to cure the default required under the Forbearance Agreement. A true and correct copy of the Notice of Default is attached hereto as **Exhibit 21**.

34. As of the date of the filing of this Complaint, Wescor and Eller have failed to cure the default and have failed to pay all principal, interest, and other indebtedness due on the Note and Loan Documents, constituting a material default thereunder.

35. As of April 2, 2025, the outstanding balances under the Loans were as follows: $3,384,904.36 with interest continuing to accrue at the per diem rate of $946.38 on the Line of Credit; $267,966.55 interest continuing to accrue at the per diem rate of $94.49 on the Inputs Agreement 1, and $143,680.06 interest continuing to accrue at the per diem rate of $94.49 on the Inputs Agreement 2.

36. Plaintiff previously made demand for payment of the indebtedness upon Defendants. In the Notice of Default, Plaintiff provided notice of its intent to seek recovery of its attorneys' fees.

**FIRST CLAIM FOR RELIEF**
BREACH OF CONTRACT ON LINE OF CREDIT
(Against Wescor Farming Operations, LLC and Joseph Randall Eller)

8

37. The allegations contained in the preceding paragraphs are re-alleged and incorporated herein by reference.

38. Wescor and Eller promised to repay the amounts advanced by Plaintiff in accordance with the terms and conditions of the LOC Loan Documents.

39. One or more Events of Default exists under the LOC Loan Documents, including, but not limited, failure to repay the indebtedness, the impairment and insecurity of Plaintiff's collateral and Wescor and Eller's inability to perform under the Line of Credit.

40. As a result of these and other Events of Defaults, Wescor and Eller are jointly and several liable to Plaintiff in the total amount of $3,384,904.36 with interest continuing to accrue at the per diem rate of $946.38 from April 2, 2025, until the date of judgment and thereafter at the legal rate until paid in full; plus reasonable attorney's fees and costs.

41. Pursuant to the LOC Loan Documents, Plaintiff is entitled to foreclose its security interest in the Collateral, including taking immediate and permanent possession of the Personal Property Collateral and applying any proceeds received from the liquidation of the Personal Property Collateral to the balance due on the Line of Credit.

42. Notice of default and reservation of rights letters have been noticed to the Wescor and Eller, and demand for payment has been made. The indebtedness under the Line of Credit remains unsatisfied.

43. Plaintiff has complied with all conditions precedent and is entitled to receipt of payment from Wescor and Eller.

## SECOND CLAIM FOR RELIEF
BREACH OF CONTRACT ON INPUTS AGREEMENT
(Against Wescor Farming Operations, LLC and Joseph Randall Eller)

44. The allegations contained in the preceding paragraphs are re-alleged and incorporated herein by reference.

45. Wescor and Eller promised to repay the amounts advanced by Plaintiff in accordance with the terms and conditions of the Inputs Agreements.

46. One or more Events of Default exists under the Inputs Agreement, including, but not limited, failure to repay the indebtedness under the Inputs Accounts, the impairment and insecurity of Plaintiff's collateral and Wescor and Eller's inability to perform under the Inputs Agreement.

47. As a result of these and other Events of Defaults, Wescor and Eller are jointly and several liable to Plaintiff under Account 11003 in the total amount of $267,966.55 with interest continuing to accrue at the per diem rate of $94.49 from March 31, 2025, until the date of judgment and thereafter at the legal rate until paid in full; plus reasonable attorney's fees and costs.

48. As a further result of these and other Events of Defaults, Wescor and Eller are jointly and several liable to Plaintiff under Account 12001 in the total amount of $143,680.06 with interest continuing to accrue at the per diem rate of $52.76 from March 31, 2025, until the date of judgment and thereafter at the legal rate until paid in full; plus reasonable attorney's fees and costs.

49. Notice of default and reservation of rights letters have been noticed to the Wescor and Eller, and demand for payment has been made. The indebtedness under the Inputs Agreement remains unsatisfied.

50. Plaintiff has complied with all conditions precedent and is entitled to receipt of payment from Wescor and Eller.

**THIRD CLAIM FOR RELIEF**
APPOINTMENT OF RECEIVER OVER REAL PROPERTY COLLATERAL
(Against All Defendants)

51. The foregoing paragraphs are realleged and incorporated by reference as if fully stated herein.

52. Plaintiff is entitled to the appointment of a receiver by the express terms of paragraph 17 of the Deeds of Trust and paragraph 3(B) of the Forbearance Agreement.

53. Plaintiff is also entitled to the appointment of a receiver under Rule 66 of the Federal Rules of Civil Procedure.

54. Wescor and Eller have failed to make payment in full under the Note.

55. Furthermore, Defendants have failed to comply with the structured and negotiated Forbearance Agreement that was designed to provide Defendants with a deliberate and orderly liquidation of properties to repay the indebtedness under the Loan Documents.

56. Due to Defendants' failure to comply with the terms of the Forbearance Agreement, direct and immediate oversight of the Collateral by a receiver is necessary to assure that the rents, profits and proceeds of the Collateral are not lost, wasted or dissipated and that the value of the Collateral is preserved.

57. Preservation of the Collateral is critical to Plaintiff in order to prevent impairment of its security interest and its collateral to ensure payment of the indebtedness is realized from the Collateral.

58. Plaintiff is without an effective remedy at law for managing and maintaining the Collateral.

59. As a result, Plaintiff will suffer immediate and irreparable harm unless (i) a receiver is immediately appointed to take possession and control of the Collateral, including all leases, rents, income, profits and revenue, and to lease, manage, and maintain the Collateral until the receivership is terminated or the Collateral is sold at a foreclosure sale or otherwise; (ii) the

occupants are directed by a court appointed receiver to pay rents to the receiver; and (iii) Defendants and all other persons are restrained and enjoined from interfering with the receiver in the performance of its duties.

60. The proposed receiver, Ampleo Turnaround and Restructuring LLC ("Ampleo") is experienced in serving as receiver and very familiar with Defendants and the Collateral. A description of the qualifications for the receiver and the proposal for Ampleo's services is attached hereto as **Exhibit 22**.

WHEREFORE, Plaintiff prays this honorable court for the following relief:

1. Award a judgment under the First Claim for Relief to Plaintiff against Defendants Wescor Farming Operation, LLC and Joseph Randall Eller, jointly and severally, in the amount of $3,384,904.36 with interest continuing to accrue at the per diem rate of $946.38 from April 2, 2025 until the date of judgment and thereafter at the legal rate until satisfied in full, plus reasonable attorneys' fees, and the costs of this action.

2. Award a judgment under the Second Claim for Relief to Plaintiff against Defendants Wescor Farming Operation, LLC and Joseph Randall Eller, jointly and severally, under the Inputs Agreement for Account 11003 in the amount of $267,966.55 with interest continuing to accrue at the per diem rate of $94.49 from April 2, 2025 until the date of judgment and thereafter at the legal rate until satisfied in full, and for Account 12001 in the amount of $143,680.06 with interest continuing to accrue at the per diem rate of $52.76 from April 2, 2025 until the date of judgment and thereafter at the legal rate until satisfied in full, plus reasonable attorneys' fees.

3. Appoint Ampleo as receiver of the Real Property Collateral on a temporary, preliminary and permanent basis for the following purposes and with the following powers, duties

and responsibilities to perform all tasks, duties and responsibilities with regard to the Real Property Collateral as allowed and provided under Fed. Rule of Civ. Proc. 66 and the equitable powers of this Court and as are deemed necessary and appropriate by the receiver.

4. Award Plaintiff reasonable attorney's fees incurred in pursuing this action;

5. Tax the costs of this action against Defendants; and

6. Grant Plaintiff such additional relief as the Court deems just and proper.

This, the 29th day of April, 2025.

**WOMBLE BOND DICKINSON (US) LLP**

By: /s/ James S. Livermon, III
JAMES S. LIVERMON, III
N.C. State Bar No. 26492
Email: Charlie.Livermon@wbd-us.com
Eudora F.S. Arthur
N.C. State Bar No. 59854
Email: Dorie.Arthur@wbd-us.com
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-2148
Facsimile: (919) 755-6048
E-mail:charlie.livermon@wbd-us.com

*Attorneys for Rabo AgriFinance LLC*

STATE OF Minnesota            )
                              )        VERIFICATION
COUNTY OF Washington          )


The undersigned, Jeff Hanson, being first duly sworn, deposes and says that he has read the foregoing Verified Complaint and Request for Order Appointing Receiver and the factual allegations are true and correct of his own personal knowledge or from information provided to him by employees or agents of Rabo AgriFinance LLC except as to those allegations made upon information and belief, and as to those allegations he believes them to be true.


By: _____
    Jeff Hanson


I, _Rachel Petrie-Stahlmann_, a Notary Public of the State of _MN_, hereby certify that Jeff Hanson personally came before me this day and acknowledged that he executed the foregoing verification. He is personally known to me.

WITNESS my hand and seal, this 28th day of April, 2025.

My Commission Expires:

_1/31/28_

[NOTARIAL SEAL]

_____
(official signature of Notary)

Print Name: _Rachel Petrie-Stahlmann_



RACHEL E. PETRIE-STAHLMANN
Notary Public, State of Minnesota
My Commission Expires
January 31, 2028

14