## MASTER CREDIT AGREEMENT

This Master Credit Agreement (referred to herein as the "Agreement" or the "MCA") is dated as of June 3, 2019 between JOSEPH RANDALL ELLER, an unmarried person who is not part of a civil union or domestic partnership ("Party") and RABO AGRIFINANCE LLC, a Delaware limited liability company ("Lender").

### ARTICLE 1 - THE FACILITY SHEETS

**1.01** **Facility Sheets.** Lender has agreed, subject to the terms of this Agreement, to make one or more credit facility(ies) available to Party under the terms and conditions of one or more Facility Sheet(s), which are incorporated herein. Lender may in the future and at its sole option make additional credit facilities available to Party which by their terms will be governed by this Agreement and a separate Facility Sheet(s). Upon and in the event Lender enters into any Facility Sheet with any Party that specifically references this MCA, the term "Agreement" as used in the Facility Sheet or any exhibit or schedule in connection therewith, shall be deemed to include this MCA as well as such Facility Sheet.

### ARTICLE 2 – SCHEDULE OF DEFINITIONS AND COVENANTS

**2.01** **Schedule of Definitions and Covenants.** This Agreement is also entered with reference to a Schedule of Definitions and Covenants. Party hereby acknowledges Party has received and reviewed the Schedule of Definitions marked as Exhibit A via paper copy, electronic copy, electronic mail, or by accessing the Schedule of Definitions with the version number that matches the version number shown in the footer of this Agreement at https://www.raboag.com/about-us/scheduledefinitions-167. Lender and Party agree the Schedule of Definitions is hereby incorporated by reference. The Applicable Obligor Covenants Schedule is attached hereto and incorporated herein by reference as **Exhibit B.** Party agrees to the Schedule of Definitions and Covenants and the Applicable Obligor Covenants Schedule. Capitalized terms contained in this Agreement are used as defined in the Schedule of Definitions and Covenants. Some of or all of the capitalized terms defined in the Schedule of Definitions and Covenants are used in this Agreement, the Applicable Obligor Covenants Schedule and the Facility Sheet(s). To the extent any term is defined in the Schedule of Definitions and Covenants but is not used in this Agreement, the Applicable Obligor Covenants Schedule, any Facility Sheet, or any amendment, modification or supplement to this Agreement, such term shall be deemed to be disregarded, of no meaning and without any effect. Except as otherwise defined in this Agreement or in the Schedule of Definitions and Covenants, or unless the context otherwise requires, each term that is used in this Agreement which is defined in Article 9 of the UCC shall have the meaning ascribed to that term in Article 9 of the UCC. If a term is defined in an Applicable Obligor Covenants Schedule, Facility Sheet, Schedule of Covenants, or Other Schedule differently than in the Schedule of Definitions and Covenants, then the definition in each such Facility Sheet, Schedule of Covenants, or Other Schedule will control for the purposes of that schedule and that schedule only.

### ARTICLE 3 - COVENANTS UNDER THE FACILITY SHEETS

**3.01** **Computation of Interest.** All computations of accrued interest under all Loan Documents other than interest at the Maximum Rate, and all fees under all Loan Documents, will be made on the basis of a year of 360 days for the actual number of days (including the first day but excluding the last day) elapsed. Except as set forth in a Facility Sheet, there is no limit on the amount that an Interest Rate subject to Adjustment by Lender may increase at any one time, or in the aggregate. Lender's determination of an Interest Rate will be conclusive, absent manifest error.

**3.02** **Adjustment of Long Term Adjustable Rate.** Lender shall notify Party of any Adjustment of a Long Term Adjustable Rate not less than 30 days before the Long Term Adjustable Rate Adjustment Date. At any time prior to that Long Term Adjustable Rate Adjustment Date, Party may deliver a Notice of Election to Prepay. If Lender receives an Election to Prepay, the entire amount of the principal indebtedness accruing interest at the Long Term Adjustable Rate shall be Prepaid without Prepayment Fee on or before that date which is 90 days after the Long Term Adjustable Rate Adjustment Date. If Lender does not receive a Notice of Election to Prepay, then Party may, but is not obligated to Prepay all or any part of the principal indebtedness accruing interest at the Long Term Adjustable Rate without Prepayment Fee, on or before the Long Term Adjustable Rate Adjustment Date.

**3.03** **Late Fee.** At Lender's option in each instance, to the extent permitted by Applicable Law, Party shall pay on demand a late fee in the amount of 5.000% of the amount of any scheduled payment due prior to the Maturity Date, which is not paid in full when due. The imposition and payment of a late fee will not constitute a waiver of Lender's rights with respect to an Event of Default as a result of that late payment.

**3.04** **Default Rate.** Upon the occurrence of an Event of Default, the principal balance of Loan and, to the extent permitted by Applicable Law, all other Loan Obligations shall, from the date of the Event of Default until the date Lender notifies Borrower that it is waived or cured or all Loan Obligations are paid in full, bear interest at the Default Rate, subject to the provisions of the Schedule of Definitions and Covenants, the Applicable Obligor Covenants Schedule and the applicable Facility Sheet. The provisions of this section may result in compounding of interest. The provisions of this section will neither constitute a waiver of any Event of Default nor require the declaration of an Event of Default.

**3.05** **Maximum Rate.** Notwithstanding any provision of this Agreement to the contrary, (a) no interest will be due on any amount due under this Agreement if, under Applicable Law, Lender is not permitted to charge interest on that amount, and (b) in all other cases interest due under this Agreement will be calculated at a rate not to exceed the Maximum Rate. If Party is requested by Lender to pay interest on any amount due under this Agreement at a rate greater than the Maximum Rate, the amount of interest due on that amount will be deemed the Maximum Rate and all payments in excess of the Maximum Rate will be deemed to have been Prepayments without Prepayment Fee or penalty, and not interest. All amounts other than interest which are paid or agreed to be paid to Lender for the use, forbearance, or detention of Party's indebtedness to Lender under this Agreement shall, to the extent permitted by Applicable Law, be amortized over the full stated term of the indebtedness, so that the rate of interest on account of that indebtedness does not exceed the Maximum Rate for so long as the indebtedness is outstanding.

**3.06** **Method and Application of Payments.** All payments of principal, interest, and other amounts to be made under any Loan Documents shall be made to Lender in U.S. dollars and in immediately available funds, without set-off, deduction, or counterclaim, not later than 2:00 pm (St. Louis, Missouri time) on the dates on which those payments will become due (any of those payments made after that time on the due date will be deemed to have been made on the next succeeding Business Day). All payments received by Lender (including, to the extent permitted by Applicable Law, all proceeds received from the sale or other liquidation of the Collateral) will be applied to the Obligations in any order determined by Lender. The early or late date of making a regularly scheduled payment will be disregarded for purposes of allocating the payment between principal and interest. For this purpose, the payment will be treated as though made on the date due. In any legal action or proceeding, the entries made by Lender in an account or accounts maintained by Lender or Rabobank or any of their Affiliates in accordance with its usual practice and evidencing the Obligations, will be *prima facie* evidence of the existence and amounts of those Obligations.

**3.07** **Prepayments Generally.** The Prepayment of principal on any Loan shall be subject to the Prepayment Options that are set forth in the Facility Sheet applicable to such Loan. Lender may refuse to accept any Prepayment not expressly permitted in the Loan Documents. If a Prepayment is conditioned upon a Notice of Election to Prepay or other prior notice to Lender, at the option of Lender, (a) that Notice of Election to Prepay or notice will be irrevocable; (b) Prepayment will be due in the amount and on the date specified in that Notice of Election to Prepay or notice;

v.004.20180515

and (c) that Notice of Election to Prepay or notice will not affect Parties obligation to make all other payments required under the Loan Documents on the date when due. If Lender receives any Prepayment which it is permitted to refuse, Lender may accept Prepayment; except that Lender may, as a condition of acceptance, require the payment of interest which would accrue on the amount Prepaid through the date when Lender would be obligated to accept the Prepayment, or the date the principal amount Prepaid would be due whichever is earlier. Each Prepayment of a portion of a Loan will be applied to the most remote payment of the principal due under a Facility Sheet for which such Prepayment is designated and as may be permitted under such Facility Sheet.

**3.08** **Reporting Requirements.** Lender may, from time to time, ask for various reporting and other such documentation from each Party to the Agreement regarding the operations, business, corporate affairs and financial condition, including without limitation financial, tax, and other corporate records reporting. Said reporting and/or documentation requests will be made by Lender in its sole and absolute discretion. Except where such reports shall be delivered within a different time period, each Party will be required to provide Lender with the requested reporting within 30 days of the receipt of written notice from Lender. Financial reporting, if any, will be at least of the quality specified in the notice and may be (i) tax returns, (ii) self-prepared financial statements, (iii) CPA Compiled statements, (iv) CPA Reviewed statements and/or (v) CPA Audited statements each based upon either US GAAP or FFSC reporting as also specified in the notice.

**3.09** **Mandatory Repayments.** If at any time the unpaid principal balance of any Loan exceeds the Maximum Amount thereof under the terms of this Agreement, then, subject to a Permitted Over-Advance for such Loan, upon demand by Lender, Party shall repay that portion of the principal balance thereof in excess of that Maximum Amount, along with all unpaid accrued interest on that portion.

**3.10** **Aggregate Borrowing Base.** In no event shall any Borrowing Base Certificate submitted hereunder, include any Eligible Collateral (as such term is defined in a Facility Sheet) that is also included in another Facility Sheet Borrowing Base.

## ARTICLE 4 - COLLATERAL

**4.01** **Collateral Documents.** The payment and performance of the Obligations are secured by those Liens in favor of Collateral Agent as agent for the Lender pursuant to the Collateral Agency Agreement created under (i) any Security Instrument now or hereafter entered into by Party in favor of Collateral Agent, which states that it secures all or any of the Obligations; (ii) any other instrument or agreement now or hereafter delivered to Lender and/or Collateral Agent in conjunction with this Agreement, which states that it secures all or any of the Obligations; and (iii) any Cross Collateralized Loan Documents, if applicable.

**4.02** **Due on Sale or Encumbrance Provisions.** Each Mortgage shall include a provision similar to the following, with applicable terms to be revised as the context requires: Parties shall not make or permit any Prohibited Transfer. Upon Lender's or Beneficiary's election, whichever is applicable, any Prohibited Transfer shall be an Event of Default, permitting Lender/Beneficiary and/or Collateral Agent to declare all of the Secured Obligations to be due and payable immediately.

## ARTICLE 5 - LOAN OPENING AND FUNDING CONDITIONS

**5.01** **Loan Opening Conditions.** Lender's obligation to make a Loan is subject to satisfaction of the following Loan Opening Conditions and receipt by Lender of the following items, each as determined by Lender in Lender's sole and absolute discretion:

(a) **No Event of Default.** No Event of Default or condition which with the giving of notice or passage of time would be an Event of Default exists under this Agreement;

(b) **Fully Executed Agreement.** Lender shall have received a completed and executed Agreement;

(c) **Fully Executed Facility Sheet.** Lender shall have received a completed and executed Facility Sheet.

(d) **Fully Executed Loan Documents.** Loan Documents applicable to the Loan Type and executed by Party and any other Parties, all as set forth in this Agreement or the Facility Sheet applicable to the Loan Type;

(e) **Amendments to Cross Collateralized Loan Documents.** Amendments to Cross Collateralized Loan Documents to the extent, if any, required by Lender for purposes of securing the Loan Obligations;

(f) **Organizational Evidence.** Evidence (i) of the formation, existence and good standing of all Parties to the Transaction Documents other than Lender which are anything other than an individual, if any, and authorization of the individuals executing the Transaction Documents on behalf of those Parties, (ii) to the extent required by Lender or by Applicable Law such information that Lender may require to determine who the ultimate beneficial owner of any or all the Parties; (iii) that there has been no material change in the management and/or ownership structure of any Party since the date on which the application for the applicable Loan was submitted;

(g) **Financial Evidence.** Evidence there has been no Material Adverse Effect as to any Party since the effective date of the Financial Information provided to Lender.

(h) **Appraisals and Reports.** All Appraisals and inspection reports required by Lender;

(i) **Environmental Information.** Environmental Information establishing compliance with all applicable Environmental Laws;

(j) **Regulatory Compliance.** Evidence that all regulatory approvals, Permits and licenses required under Applicable Law for Party's business operations have been issued and are in full force and effect;

(k) **Validity of Liens.** Evidence that the Liens granted to Lender under the Collateral Documents are valid, enforceable, properly perfected, and prior to the rights and interests of all other Persons, except those rights and interests acceptable to Lender;

(l) **Title Evidence.** Evidence that all policies of title insurance, opinions of title and endorsements required by Lender or under the Loan Documents have been issued and are in full force and all premiums and charges for those policies, opinions and endorsements have been paid;

(m) **Representations and Warranties.** All representations and warranties of all Parties in the Transaction Documents are true and correct;

Eller MCA 2019
Master Credit Agreement
v.004.20180515

2

(n)  **Legal Opinion.** To the extent required by Lender, a written opinion from Parties' and Guarantor's (if any) legal counsel acceptable to Lender, covering all issues required by Lender;

(o)  **Payment of Fees and Costs.** Payment to Lender of all fees and costs set forth in this Agreement;

(p)  **Reimbursement of Appraisal Expenses.** Reimbursement of Lender's Appraisal Expenses;

(q)  **Reimbursement of Closing Expenses.** Reimbursement of Closing Expenses;

(r)  **Collateral Ownership.** If any Collateral is not owned by the Party, Party must cause all individuals or entities who own such Collateral to enter into this Agreement; and

(s)  **Preconditions.** All other documents, information and other preconditions required by Lender, including, but not limited to, confirmation that Party is in compliance with all covenants set forth in this Agreement.

5.02  **Loan Funding Conditions.** Lender's obligation to disburse funds under a Loan is subject to satisfaction of all other requirements and conditions set forth in this Agreement, the Applicable Obligor Covenants Schedule and in the Facility Sheet in connection with the Loan, as determined by Lender in Lender's sole and absolute discretion.

## ARTICLE 6 -- PARTY REPRESENTATIONS

6.01  **Representations.** Party represents (collective, the "Party Representations") to Lender that:

(a)  **Good Standing.** If Party is anything other than an individual, Party was duly formed, is validly existing and in good standing and qualified to do business in its state of organization and each state in which it conducts its business;

(b)  **Due Power and Authority.** The execution, delivery and performance by Party of each Transaction Document to which it is a Party, is within the powers and authority of Party and has been duly authorized;

(c)  **No Conflict with Applicable Law.** To Party's knowledge, the Transaction Documents do not conflict with any Applicable Law;

(d)  **Enforceability.** Each Transaction Document is a legal, valid and binding obligation of Party, enforceable against Party in accordance with its terms, and any Transaction Document, instrument or agreement required thereunder, when executed and delivered to Lender, will be similarly legal, valid, binding and enforceable;

(e)  **Financial Information.** All Financial Information delivered to Lender in connection with Party's application for a Loan, Lender's underwriting and approval of the Loan, or this Agreement and the other Loan Documents, are accurate, correct and sufficiently complete in all material respects to provide Lender true and accurate knowledge of their subject matter, including, without limitation, all material contingent liabilities;

(f)  **Utilities.** All Utilities necessary and appropriate for the conduct of the business of Party are available or Party has taken all steps necessary to assure that all utility services so required will be available upon commencement of the business of Party;

(g)  **Roads.** All Roads necessary for the completion, occupancy and operation of Party's business have either been completed or the necessary easements or rights-of-way therefor have been acquired or dedicated to public use, and all necessary steps have been taken by Party to ensure their completion no later than the date they will be needed for operation of Party's business or any earlier date required by any Governmental Authority or Applicable Law;

(h)  **Permits.** All Permits have been obtained, or, to the extent not obtained, no information or fact exists that would reasonably cause Party to believe that all Permits required to construct, occupy, and operate Party's business will not be readily obtainable prior to the commencement of Party's applicable business;

(i)  **No Material Adverse Effect.** There has been no Material Adverse Effect as to Party since the effective date of the Financial Information provided to Lender;

(j)  **No Judgment.** Party is not the subject of any Judgment; and there is no lawsuit, tax claim or other dispute pending or to Party's knowledge threatened against Party that, if determined adverse to Party, is reasonably likely to have a Material Adverse Effect;

(k)  **No Conflicts.** The Transaction Documents do not conflict with, nor is Party in default under any agreement or arrangement in effect providing for or relating to extensions of credit in respect of which Party is in any manner directly or contingently obligated;

(l)  **Tax Returns.** Party has filed all tax returns (federal, state, and local) required to be filed by Party and has paid all taxes, assessments, and governmental charges and levies thereon, including interest and penalties;

(m)  **Applicable Laws Compliance.** Party is in compliance with all Applicable Laws (including all Environmental Laws), and there is no claim, action, proceeding or investigation pending or to Party's knowledge threatened against Party with respect to a violation of Applicable Law by Party;

(n)  **Non-Foreign Person.** Party is not a foreign person within the meaning of Section 1445 of the Internal Revenue Code of 1986; and

(o)  **No Event of Default.** There is no Event of Default or event which, with notice or lapse of time would be an Event of Default.

6.02  **Information Accurate and Complete.** Party's submission of any report, record or other information pertaining to the condition or operations, financial or otherwise, of Party, from time to time, whether or not required under this Agreement, will be deemed accompanied by a representation by Party that the report, record or information is complete and accurate in all material respects as to the condition or operations of Party

(and, if applicable, Party's Subsidiaries, Affiliates, partners, shareholders, members, or other principals), including, without limitation, all material contingent liabilities.

## ARTICLE 7 – PARTY COVENANTS

Until such time as all Obligations have been paid in full and Lender has no obligation to make any additional advance under any Loan (if applicable), Party (or the Person or Persons as may be specifically named in any of the Covenants or Reporting Requirements) agrees to and makes the Covenants set forth in this MCA:

7.01    **Books and Records.** Party shall maintain and cause each of its Subsidiaries to maintain proper books of record and account including full, true, and correct entries of all dealings and transactions relating to its and their business and activities, in all material respects in conformity with GAAP.

7.02    **Change in Accounting.** Party shall not make any material change or modification of Party's manner and method of accounting except as required by the applicable accounting standard.

7.03    **Maintenance of Assets.** Party shall maintain and preserve all rights, privileges, and franchises Party now has; and make any repairs, renewals, or replacements to keep Party's properties in good working condition.

7.04    **Landlord Agreement.** Upon request by Lender, for any personal property Collateral located on real property which is not owned by Party (or the grantor of the security interest in favor of Lender), Party shall obtain an agreement in favor of Lender signed by the owner of the real property and the holder of any mortgage or deed of trust on the real property, waiving any of their rights in the Collateral and permitting Lender's removal thereof from the real property.

7.05    **Mortgagee Agreement.** Upon request by Lender, for any personal property Collateral located on real property which is subject to a mortgage or deed of trust in favor of a Person other than Lender, Party shall obtain an agreement in favor of Lender signed by the holder of the mortgage or deed of trust on the real property, waiving any of their rights in the Collateral and permitting Lender's removal thereof from the real property.

7.06    **Existence and Good Standing.** If Party is anything other than an individual, Party shall preserve and maintain its existence and good standing in the jurisdiction of its formation, and qualify and remain qualified to conduct its business in each jurisdiction in which such qualification is required;

7.07    **Change in Business or Organizational Structure.** Party shall not engage in any material line of business substantially different from, or unrelated to, those lines of business conducted by Party and its Subsidiaries on the date hereof; and if Party is anything other than an individual, Party shall not (a) form or otherwise acquire any Subsidiary, unless that Subsidiary executes and delivers to Lender a Guaranty of all of the Obligations and all other instruments and agreements required by Lender; (b) merge, dissolve, liquidate, consolidate with or into another Person, or dispose of (whether in one transaction or in a series of transactions) all or substantially all of its assets (whether now owned or hereafter acquired) to or in favor of any Person; or (c) change its name, identity or business structure or the location(s) of (A) Party's place of business or Party's chief executive office if Party has more than one place of business, (B) Party's state of organization.

7.08    **Compliance with Laws.** Party shall comply in all respects with all Applicable Laws and pay before delinquency, all taxes, assessments, and governmental charges imposed upon Party or its property.

7.09    **Inspections.** Party shall, at any reasonable time and from time to time, permit Lender or any of its agents or representatives to examine and make copies of and abstracts from the records and books of, and visit the properties of, Party and to discuss the affairs, finances, and accounts of Party with (if Party is other than an individual) officers, directors, partners, or managers or Party, as applicable; Party's independent accountants; and any other Person dealing with Party.

7.10    **Insurance.** Party shall maintain, or cause to be maintained, all insurance policies and any such additional insurance as required by Lender or any Swap Counterparty from time to time. All policies of insurance required must be issued by companies approved by Lender and the Swap Counterparties, and must be acceptable to Lender and the Swap Counterparties as to amounts, forms, risk coverages, deductibles, expiration dates, and loss payable and cancellation provisions. In addition, each required policy must contain such endorsements as Lender or the Swap Counterparties may require and must provide that all proceeds be payable to Lender and the Swap Counterparties to the extent of their respective interests. If and whenever Lender or a Swap Counterparty believes that any required insurance is not in effect, Lender or that Swap Counterparty may (but will not be obligated to) procure that insurance at Party's expense. Party shall reimburse Lender and the Swap Counterparties, on demand, for all premiums on that insurance paid by Lender or the Swap Counterparties, respectively. If any Real Estate is located in an area now or hereafter designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Borrower agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Real Estate is located in a special flood hazard area, for the lesser of 1) the full unpaid principal balance of the Loan, plus Swap Counterparties' derivative exposure under the Hedging Agreements as calculated by Swap Counterparties, plus any prior Lien on the property securing the Loan, 2) the total replacement value of any structure located in the flood hazard area, or 3) the maximum amount available under the National Flood Insurance Program for the particular type of property, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the Loan.

7.11    **Arms' Length Dealing.** Except for de minimis transactions, Party shall not enter into any transaction of any kind with any family member, Subsidiary or Affiliate of Party, whether or not in the ordinary course of business, other than on fair and reasonable terms substantially as favorable to Party as would be obtainable by any Party at the time in a comparable arm's length transaction with a Person other than a family member, Subsidiary or Affiliate of Party.

7.12    **Use of the Loan.** Party shall not use the Loan (a) for personal, family or household purposes, or (b) to purchase or carry margin stock or to invest in other Persons for the purpose of carrying any such margin stock or to reduce or retire any indebtedness incurred for that purpose or for any illegal activity.

7.13    **ERISA Plans.** Party shall promptly pay and cause all Subsidiaries to pay contributions adequate to meet not less than the minimum funding standards under ERISA with respect to each and every Plan; file each annual report required to be filed pursuant to ERISA in connection with each Plan for each year; and notify Lender within ten days following the occurrence of any Reportable Event that might constitute grounds for termination of any capital Plan by the Pension Benefit Guaranty Corporation or for the appointment by the appropriate United States District Court of a trustee to administer any Plan. Capitalized terms in this section shall have the meanings defined within ERISA.

**7.14** **Legal Fees; Costs.** Party shall pay the following: (a) costs, expenses and Legal Fees paid or incurred in connection with the collection or enforcement of the Transaction Documents, whether or not suit is filed; (b) costs and Legal Fees paid or incurred in connection with any Insolvency Proceeding involving a claim under the Transaction Documents; (c) costs, expenses and Legal Fees incurred to protect the Lien and security interests under the Collateral Documents; including but not limited to appraisals, inspections, insurance premiums, and the prevention of waste; and (d) costs of suit and such sum as the court may adjudge as Legal Fees in any action to enforce payment of the Notes or any part thereof.

**7.15** **Other Acts.** Upon request by Lender, Party shall cooperate with Lender for the purposes of, and perform all acts which may be necessary or advisable to perfect any Lien granted under this Agreement or the Collateral Documents, or to carry out the intent of the Transaction Documents.

**7.16** **Reporting Requirements.** Party shall furnish to Lender notice of the occurrence of any of the following, promptly, but in any event no later than five days after such occurrence: (i) any lawsuit, tax claim or other dispute if filed or threatened against Party in an amount greater than $100,000.00; (ii) any substantial dispute between Party and any Governmental Authority; (iii) the failure by Party to comply with the terms and provisions of this Agreement; (iv) any Material Adverse Effect as to Party; or (vi) any change in Party's name, legal structure, place of business, or executive office, including any change from Party's previous reports of: (x) any individual who owns, directly or indirectly, 25 percent or more of the equity interest of the legal entity that is a Party to this Agreement (e.g., each individual who owns 25 percent or more of the shares of a corporation), and (y) any single individual with significant responsibility for managing the legal entity that is a Party to this agreement (e.g., a Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, or Treasurer), and, as to both (x) and (y), such new individual's name, address, date of birth, and Social Security number (or passport number or other similar information, where applicable).

## ARTICLE 8 - REMEDIES

Upon the occurrence of an Event of Default, Lender may: (a) without notice to Party, decline any Request for Advance; (b) declare all Loan Obligations immediately due and payable, without presentment, notice of intent to accelerate or notice of acceleration, demand, protest or further notice of any kind, all of which are expressly waived by Party; and (c) exercise all other rights and remedies afforded to Lender under any or all Loan Document or Applicable Law or in equity; except that upon an actual or deemed entry of an order for relief with respect to Party or any of its Subsidiaries in any Insolvency Proceeding, (i) any obligation of Lender to make any additional advance under any Loan, other than all or any portion of any Loan already advanced by Lender pursuant to the terms and conditions herein, shall automatically be terminated and (ii) all Loan Obligations shall automatically become due and payable, without presentment, demand, protest or any notice of any kind, all of which are expressly waived by Party.

## ARTICLE 9 - NOTICES

All Notices between the Parties must be in writing and mailed or delivered to the address specified in that Loan Document, or to the address designated by any Party in a notice to the other Parties; and in the case of any other Person, to the address designated by that Person in a notice to Party and Lender. All Notices will be deemed to be given or made upon the earlier to occur of (a) actual receipt by the intended recipient or (b) (i) if delivered by hand or by courier, upon delivery; or (ii) if delivered by mail, four Business Days after deposit in the mails, properly addressed, postage prepaid; except that Notices and other communications to Lender shall not be effective until actually received by Lender. Party requests that Lender accept, and Lender may, at its option, accept and is entitled to rely and act upon any Notices purportedly given by or on behalf of Party, even if not made in a manner specified herein (including Notices made verbally, by telephone, facsimile, email, or other electronic means of communication), were incomplete or were not preceded or followed by any other form of Notice specified herein, or the terms thereof, as understood by the recipient, varied from any confirmation thereof. All telephonic Notices to and other telephonic communications with Lender may be recorded by Lender, and each Party consents to such recording.

## ARTICLE 10 – ACCOUNTING MATTERS AND DRAFTING CONVENTIONS

**10.01** **Accounting Matters.** All accounting terms not specifically defined herein or in the Schedule of Definitions and Covenants will be construed in accordance with GAAP or FFSC, at Party's option. All financial covenants applicable to an individual will be calculated based on that individual's business, excluding personal assets and liabilities. Party will not change (a) the accounting standards used to prepare Party's financial statements or (b) the manner in which either the last day of its fiscal year or the last days of the first three fiscal quarters of its fiscal years is calculated. If at any time any change in GAAP or FFSC would affect the computation of any financial ratio or requirement set forth in any Loan Document, Lender may amend that ratio or requirement to preserve the original intent thereof in light of that change.

**10.02** **Drafting Conventions.** Unless expressly stated therein or the context otherwise requires, all Loan Documents will be interpreted in accordance with the Drafting Conventions.

## ARTICLE 11 – GENERAL TERMS AND CONDITIONS APPLICABLE TO ANY LOAN AND LOAN TYPE

**11.01** **Loan Documents.** Each Loan shall be evidenced by a Note and any other Loan Documents Lender so requires. The form, substance and enforceability (substantiated by an opinion of Party's counsel, if requested) of all Loan Documents required by Lender must also be satisfactory to Lender's counsel and all Loan Documents will contain terms and conditions not set forth in this Agreement and required by Lender for the Loan Type contemplated by this Agreement and the applicable Facility Sheet.

**11.02** **Compliance With Conditions.** Lender shall have received such evidence of compliance with the Loan Opening Conditions and such other due diligence items as Lender or its counsel may reasonably require.

**11.03** **Obligation to Borrow and Lend.** Party's obligation to borrow and Lender's obligation to lend any Loan hereunder shall be conditioned upon the execution and delivery by Party and Lender of this Agreement, a Facility Sheet and the satisfaction of all Loan Opening Conditions set forth in this Agreement. Lender shall be under no obligation to lend and Party shall be under no obligation to borrow unless and until both this Agreement and a Facility Sheet are approved by Lender in Lender's sole and absolute discretion and executed by both Lender and Party.

**11.04** **Requests for Advances.** Each Request for Advance will be irrevocable and is a representation by Party to Lender that, if applicable, the unpaid principal balance of that Loan after disbursement of the requested Loan will not exceed the Maximum Amount of such Loan under this Agreement. Each time Party makes a Request for Advance, Party reaffirms and re-makes all of the Party Representations and acknowledges and agrees to all of the Covenants and Reporting Requirements set forth in the Applicable Obligor Covenants Schedule, any Facility Sheet as of the date of

the Request for Advance by Party. Lender may postpone making any advance on any Loan to the extent Lender is delayed by fire, earthquake or another circumstance outside Lender's reasonable control.

**11.05** **Optional Rates.** If Party is granted such an option hereunder, Party may from time to time elect (i) a Rate Conversion, or (ii) a LIBOR Rate Continuation, subject to the Optional Rate Conditions.

**11.06** **Designated Account.** So long as Lender has any obligation to make any advance on any Loan or any Loan Obligations or any portion of any Loan remains unpaid or unsatisfied, upon the request of Lender, Party shall maintain a Designated Account. If all of the applicable conditions to a Loan have been fulfilled, Lender shall make the Loan available to Party as set forth herein by, at the option of Lender, (a) depositing the proceeds in the Designated Account; (b) if applicable, transferring the proceeds to an agent designated for purposes of an escrowed Closing of this transaction by wire or ACH transfer; or (c) paying or applying the proceeds as otherwise permitted under this Agreement, by any means appropriate under the circumstances.

**11.07** **ACH Payments.** Party authorizes Lender to, at Lender's option in each instance, to initiate ACH Payments from the Designated Account. If Lender elects to initiate ACH Payments, Party will thereafter maintain sufficient funds in the Designated Account on the dates Lender enters debits for ACH Payment regularly scheduled payments of interest, principal, and fees, if any. If there are insufficient funds in the Designated Account on the date Lender enters any debit authorized by this Agreement, Lender may reverse the debit or may accept the partial payment without prejudice to Lender's right to receive all amounts due and owing. Party agrees to upon request by Lender, execute and deliver to Lender an ACH Payment authorization in form and content satisfactory to Lender.

**11.08** **Prepayment Conditions.** The Prepayment of principal on any Loan shall be subject to the Prepayment Conditions.

**11.09** **LIBOR Rate Loan Indemnification.** Upon Lender's commitment or funding of any LIBOR Rate Loan to Party, Party agrees to indemnify Lender and to hold Lender harmless from any loss or expense which Lender may sustain or incur as a consequence of (a) failure by Party to borrow pursuant to any such LIBOR Rate Loan, or to execute a LIBOR Rate Conversion or a LIBOR Rate Continuation after Party has requested any of the same in accordance with the provisions of this Agreement, (b) default by Party in a borrowing of a LIBOR Rate Loan, a LIBOR Rate Conversion, or a LIBOR Rate Continuation, (c) default by Party in making any Prepayment of a LIBOR Rate Loan after Party has given a notice thereof in accordance with the provisions of this Agreement or (d) the making of a Prepayment of a LIBOR Rate Loan on a day which is not the last day of an Interest Period with respect thereto. Such indemnification may encompass an amount equal to the excess, if any, of (i) the amount of interest which would have accrued on the amount so Prepaid, or borrowed, converted or continued, for the period from the time of such Prepayment or of such failure to borrow, convert or continue to the last day of such Interest Period (or, in the case of the failure to borrow, convert or continue, the Interest Period which would have commenced on the date of such failure) in each case the applicable rate of interest for such Loan provided herein over (ii) the amount of interest (as reasonably defined by the Lender) which would have accrued to the Lender on such amount by placing such amount on deposit for a comparable period with leading banks in the Interbank LIBOR market. This covenant shall survive the termination of this Agreement and the payment of all Loans and all other Obligations due under this Agreement. Amounts payable pursuant to this subsection shall be paid to Lender upon demand. A determination of Lender as to the amounts payable pursuant to this subsection shall be conclusive absent manifest error.

**11.10** **Inability to Determine Rates.** If, in connection with any Loan bearing interest at a LIBOR Rate, Lender determines that (a) United States dollar deposits are not being offered to banks in the London interbank market for the applicable amount of such Loan, (b) adequate and reasonable means do not exist for determining the applicable LIBOR Rate, or (c) the applicable LIBOR Rate does not adequately and fairly reflect the cost to Lender of funding that Loan, Lender will promptly so notify the Party. Thereafter, the obligation of Lender to make or maintain any Loan bearing interest at the applicable LIBOR Rate shall be suspended until Lender revokes such notice, and any Loan which would otherwise bear interest at the applicable LIBOR Rate shall accrue interest at that rate, per annum, equal to a rate determined by Lender in Lender's reasonable discretion.

## ARTICLE 12 - MISCELLANEOUS

**12.01** **Entire Agreement.** This Agreement and the other Loan Documents, collectively: (i) represent the sum of the understandings and agreements between Lender and Party concerning this credit; (ii) replace any prior oral or written agreements between Lender and Party concerning this credit; and (iii) are intended by Lender and Party as the final, complete and exclusive statement of the terms agreed to by them. In the event of any conflict between this Agreement and any other agreements required by this Agreement, this Agreement will prevail.

**12.02** **Joint and Several Obligations.** If Borrower consists of more than one Person on a Facility Sheet, each Borrower on such Facility Sheet (a) expressly acknowledges that it has benefited and will benefit, directly and indirectly, from each Loan contained in such Facility Sheet and acknowledges and undertakes, together with the other Borrowers on such Facility Sheet, joint and several liability for the punctual payment when due, whether at stated maturity, by acceleration or otherwise, of such Facility Sheet; (b) acknowledges that this agreement is the independent and several obligation of each Borrower and may be enforced against each Borrower on such Facility Sheet, separately, whether or not enforcement of any right or remedy hereunder has been sought against any other Borrower on such Facility Sheet; and (c) agrees that its liability hereunder and under any other Loan Document is absolute, unconditional, continuing and irrevocable. BORROWER EXPRESSLY WAIVES ANY REQUIREMENT THAT LENDER EXHAUST ANY RIGHT, POWER OR REMEDY AND PROCEED AGAINST THE OTHER BORROWERS UNDER THIS AGREEMENT, OR ANY OTHER LOAN DOCUMENTS, OR AGAINST ANY OTHER PERSON UNDER ANY GUARANTY OF, OR SECURITY FOR, ANY OF THE OBLIGATIONS.

**12.03** **Authority to Bind Party.** If Party is comprised of multiple Persons, any Person comprising Party is authorized to bind all Parties comprising Party. Without limitation of the foregoing, Lender may require any Request for Advance or other request, authorization, or other action by or on behalf of Party be by one or more Designated Person. Lender may, at any time and without notice, waive any prior requirement that requests, authorizations, or other actions be taken only by a Designated Person.

**12.04** **Binding Effect; Successors and Assigns.** All Loan Documents will inure to the benefit of and be binding upon the Parties and their respective successors and assigns.

**12.05** **Assignment; Participations.** Party shall not assign its rights or Obligations hereunder without Lender's consent in Lender's sole and absolute discretion. Lender may assign or sell participations in all or any portion of its interest in any Loan or under any Loan Documents to any Person. Lender may disclose to any actual or potential assignee or participant any information that Party has delivered to Lender in connection with any Loan Documents; and Party shall cooperate fully with Lender in providing that information. If Lender assigns or sells a participation in any Loan or any Loan Documents, the purchaser will have a right of set-off against Party.

Eller MCA 2019
Master Credit Agreement
v.004.20180515

Case 5:25-cv-00065-KDB-DCK    Document 1-1    Filed 04/29/25    Page 6 of 12

**12.06    Severability.** Any provision of any Loan Document which is prohibited or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of that Loan Document or affecting the validity or enforceability of that provision in any other jurisdiction; except that if such provision relates to the payment of any monetary sum, then Lender may, at its option, declare all Loan Obligations immediately due and payable.

**12.07    Amendments in Writing.** The Loan Documents may not be amended, changed, modified, altered or terminated without the prior written consent of all Parties to the respective Loan Document.

**12.08    Governing Law.** (A) THIS MCA AND ALL LOAN DOCUMENTS HAVE BEEN NEGOTIATED, EXECUTED AND DELIVERED IN VARIOUS JURISDICTIONS. IN ORDER TO PROVIDE FOR A UNIFORM AND WELL ESTABLISHED BODY OF COMMERCIAL AND OTHER LAW TO DEFINE AND GOVERN THE RIGHTS AND DUTIES OF THE PARTIES, THE PARTIES AGREE THAT THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL SUBSTANTIVE LAWS OF THE GOVERNING LAW STATE WITHOUT GIVING EFFECT TO ANY CHOICE OF LAW RULES THEREOF; PROVIDED, HOWEVER, THAT (I) IF ANY OF THE COLLATERAL SHALL BE LOCATED IN ANY JURISDICTION OTHER THAN GOVERNING LAW STATE, THE LAWS OF SUCH JURISDICTION SHALL GOVERN THE CREATION, PERFECTION AND/OR ENFORCEMENT OF THE LIENS, ASSIGNMENTS AND/OR SECURITY INTERESTS CREATED HEREIN OR IN ANY LOAN DOCUMENT IN CONNECTION HEREWITH AND TO THE ENFORCEMENT OF LENDER'S RIGHTS AND REMEDIES AGAINST THE COLLATERAL, WHICH MATTERS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE COLLATERAL IS LOCATED AND (II) IN THE EVENT THE LAWS OF THE UNITED STATES OF AMERICA AND ANY RULES, REGULATIONS, OR ORDERS ISSUED OR PROMULGATED THEREUNDER APPLICABLE TO THE AFFAIRS AND TRANSACTIONS OF LENDER AND/OR PARTY OTHERWISE PREEMPT GOVERNING LAW STATE LAW, SUCH FEDERAL LAW SHALL CONTROL. IN PARTICULAR, THE PARTIES HERETO AGREE THAT ALL ISSUES RELATING TO USURY, LIMITATIONS ON INTEREST, LOAN CHARGES AND COMMITMENT FEES PAYABLE UNDER THE OBLIGATIONS AND THE LOAN AGREEMENT SHALL BE GOVERNED BY THE LAWS OF GOVERNING LAW STATE. TO THE FULLEST EXTENT PERMITTED BY LAW, PARTY HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS, AND THIS AGREEMENT AND/OR THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF GOVERNING LAW STATE. PARTY UNDERSTANDS, AGREES AND ACKNOWLEDGES THAT (A) THIS AGREEMENT AND THE TRANSACTION EVIDENCED HEREBY HAVE SIGNIFICANT AND SUBSTANTIAL CONTACTS WITH THE GOVERNING LAW STATE, (B) IT IS CONVENIENT TO PARTY AND LENDER TO SELECT THE LAW OF THE GOVERNING LAW STATE TO GOVERN THIS AGREEMENT AND THE TRANSACTIONS EVIDENCED HEREBY, (C) THE TRANSACTIONS EVIDENCED BY THIS AGREEMENT BEAR A REASONABLE CONNECTION TO THE LAWS OF THE GOVERNING LAW STATE, (D) THE CHOICE OF THE INTERNAL LAWS OF THE GOVERNING LAW STATE WAS MADE FOR GOOD AND VALID REASONS, AND (E) THE CHOICE OF THE GOVERNING LAW STATE CONSTITUTES GOOD AND VALUABLE CONSIDERATION FOR LENDER TO ENTER INTO THIS AGREEMENT AND LENDER HAS ENTERED INTO THIS AGREEMENT IN RELIANCE ON THIS CHOICE.

**12.09    Governing Law State.** The Governing Law State is Iowa.

**12.10    Jurisdiction and Venue.** PARTY HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INITIATED BY PARTY AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS AGREEMENT SHALL BE LITIGATED IN ANY CIRCUIT COURT OR UNITED STATES DISTRICT COURT OF THE GOVERNING LAW STATE, OR, IF LENDER INITIATES SUCH ACTION, ANY COURT IN WHICH LENDER SHALL INITIATE SUCH ACTION AND WHICH HAS JURISDICTION. PARTY HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY LENDER IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT PURSUANT TO THIS AGREEMENT. PARTY WAIVES ANY CLAIM THAT THE GOVERNING LAW STATE IS AN INCONVENIENT FORUM OR AN IMPROPER FORUM BASED ON LACK OF VENUE. SHOULD PARTY, AFTER BEING SO SERVED, FAIL TO APPEAR OR ANSWER TO ANY SUMMONS, COMPLAINT, PROCESS OR PAPERS SO SERVED WITHIN THE NUMBER OF DAYS PRESCRIBED BY LAW AFTER THE MAILING THEREOF, PARTY SHALL BE DEEMED IN DEFAULT AND AN ORDER AND/OR JUDGMENT MAY BE ENTERED BY LENDER AGAINST PARTY AS DEMANDED OR PRAYED FOR IN SUCH SUMMONS, COMPLAINT, PROCESS OR PAPERS. THE EXCLUSIVE CHOICE OF FORUM FOR PARTY SET FORTH IN THIS SECTION SHALL NOT BE DEEMED TO PRECLUDE THE ENFORCEMENT BY LENDER OF ANY JUDGMENT OBTAINED IN ANY OTHER FORUM OR THE TAKING BY LENDER OF ANY ACTION TO ENFORCE THE SAME IN ANY OTHER APPROPRIATE JURISDICTION, AND PARTY HEREBY WAIVES THE RIGHT, IF ANY, TO COLLATERALLY ATTACK ANY SUCH JUDGMENT OR ACTION.

**12.11    Counterpart Execution and Signatures.** All Loan Documents may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which, when taken together, shall be deemed to be one and the same agreement or document. An original signed counterpart of this Agreement in the form of paper with a signature in ink transmitted by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original executed copy of this Agreement for all purposes; subject to the obligation, that Borrower shall within twenty (20) days of delivery of the copy, deliver an original signed copy of this Agreement to Lender. Failure to deliver the original in accordance with this paragraph shall be a Non-Monetary Default After Notice.

**12.12    Necessary Action.** Lender is authorized to execute any other documents or take any other actions necessary to effectuate any Loan Documents and the consummation of the transactions contemplated therein.

**12.13    Credit Report.** Lender is authorized to order a credit report and verify all other credit information, including past and present loans and standard references from time to time to evaluate the creditworthiness of Party. Without limitation, a copy of the consent for release of information, general authorization or similar document on file with Lender shall authorize third Persons to provide the information requested from time to time.

**12.14    Consent to Disclosure.** Party agrees and consents to the communication and disclosure of all information in respect of the transaction governed by this Agreement and all matters incidental hereto and thereto by Lender: (i) to the head office and all other branches and Affiliates of Lender, provided such communication and disclosure is for risk management and administrative purposes; and (ii) as required by any Applicable Law or regulation or any court or regulatory or other authority of competent jurisdiction.

**12.15    No Construction Against Drafter.** Each Party has participated in negotiating and drafting this Agreement, so if an ambiguity or a question of intent or interpretation arises, this Agreement is to be construed as if the Parties had drafted it jointly, as opposed to being construed against a Party because it was responsible for drafting one or more provisions of this Agreement.

**12.16    Indemnification.** PARTY SHALL DEFEND, INDEMNIFY AND HOLD LENDER AND ITS OFFICERS, DIRECTORS, EMPLOYEES, PARTNERS, AGENTS AND ATTORNEYS (THE "INDEMNIFIED PERSONS") HARMLESS AGAINST ANY AND ALL LOSSES, CLAIMS, DAMAGES, LIABILITIES, AND RELATED EXPENSES, INCLUDING FEES, CHARGES, AND DISBURSEMENTS OF ANY KIND OR NATURE WHATSOEVER THAT MAY BE IMPOSED ON, INCURRED BY, OR ASSERTED AGAINST THE INDEMNIFIED PERSONS ARISING OUT OF, IN CONNECTION WITH, OR AS A RESULT OF : (I) THE FAILURE BY PARTY TO BORROW THE AMOUNT SPECIFIED IN A LOAN REQUEST (INCLUDING ANY FAILURE RESULTING FROM THE FAILURE TO FULFILL THE APPLICABLE CONDITIONS PRECEDENT), INCLUDING ANY LOSS OF ANTICIPATED PROFITS AND LOSSES BY REASON OF THE LIQUIDATION OR REEMPLOYMENT OF FUNDS ACQUIRED BY LENDER TO FUND THE LOAN; (II) AS A RESULT OF ITS ACTS OR OMISSIONS WHICH RESULT FROM COMMUNICATIONS GIVEN OR PURPORTED TO BE GIVEN, BY PARTY OR ANY DESIGNATED PERSON, WHICH ARE INTERRUPTED, WHICH ARE MISUNDERSTOOD, OR WHICH ARE IN FACT FROM UNAUTHORIZED PERSONS; (III) THE VIOLATION BY PARTY OF ANY ENVIRONMENTAL LAW; (IV) THE RELIANCE BY LENDER ON EACH NOTICE PURPORTEDLY GIVEN BY OR ON BEHALF OF PARTY; (V) ANY GUARANTY, INDEMNITY OR THE LIKE GIVEN TO RABOBANK, N.A., WITH RESPECT TO INDEMNIFIED RNA LIABILITIES; (VI) ANY CLAIMS ASSERTED AGAINST THE INDEMNIFIED PERSONS AS A RESULT OF LENDER BEING PARTY TO THIS AGREEMENT OR THE TRANSACTIONS CONSUMMATED PURSUANT TO THIS AGREEMENT; AND (VII) ANY ACTUAL OR PROSPECTIVE CLAIM, LITIGATION, INVESTIGATION OR PROCEEDING RELATING TO ANY OF THE FOREGOING, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY AND REGARDLESS OF WHETHER ANY INDEMNITEE IS A PARTY THERETO. THIS INDEMNIFICATION SHALL APPLY TO EACH INDEMNIFIED PERSON WITH RESPECT TO MATTERS WHICH, IN WHOLE OR IN PART, ARE CAUSED BY OR ARISE OUT OF THE NEGLIGENCE (WHETHER SOLE, COMPARATIVE, OR CONTRIBUTORY) OR STRICT LIABILITY OF SUCH (AND/OR ANY OTHER) INDEMNIFIED PERSON, EXCEPT THAT PARTY SHALL HAVE NO OBLIGATION TO AN INDEMNIFIED PERSON UNDER THIS SECTION WITH RESPECT TO LOSSES RESULTING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THAT INDEMNIFIED PERSON AS DETERMINED BY A COURT OF COMPETENT JURISDICTION. IF AND TO THE EXTENT THAT ANY INDEMNITY UNDER THE LOAN DOCUMENTS IN FAVOR OF INDEMNIFIED PARTIES IS UNENFORCEABLE FOR ANY REASON, PARTY SHALL MAKE THE MAXIMUM CONTRIBUTION TO THE PAYMENT AND SATISFACTION THEREOF WHICH IS PERMISSIBLE UNDER APPLICABLE LAW. ALL INDEMNITIES UNDER THE LOAN DOCUMENTS IN FAVOR OF INDEMNIFIED PARTIES SHALL SURVIVE THE TERMINATION OF THIS AGREEMENT.

**12.17    Collateral Agency Agreement.** Parties hereby acknowledge Lender has entered in to the Collateral Agency Agreement which, as amended, modified, or restated, permits Rabo AgriFinance LLC to act as a Collateral Agent in serving the applicable Loan.

**12.18    Waiver of Trial By Jury.** THE PARTIES (A) COVENANT AND AGREE NOT TO ELECT A TRIAL BY JURY IN ANY ACTION OR PROCEEDING FOR THE RESOLUTION OF ANY CONTROVERSY OR CLAIM THAT ARISES OUT OF OR RELATES TO: (I) THIS AGREEMENT; OR (II) ANY COLLATERAL DOCUMENT, WHETHER ARISING IN CONTRACT, TORT OR BY STATUTE; AND, (B) TO THE EXTENT PERMITTED BY APPLICABLE LAW, WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH CONTROVERSY OR CLAIM TO THE EXTENT SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THE PROVISIONS OF THIS SECTION ARE GIVEN KNOWINGLY AND VOLUNTARILY AND ARE A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THE COLLATERAL DOCUMENTS AND THE SWAP COUNTERPARTIES ENTERING INTO THE HEDGING AGREEMENTS.

**12.19    Office of Foreign Assets Control; Patriot Act.** Without limiting the provisions of any other provision hereof above, each Party shall, and each Party shall cause each of its Subsidiaries and Affiliates to, (1) ensure that no Person who owns a controlling interest in or otherwise controls such Person shall be listed on the Specially Designated Nationals and Blocked Person List or other similar lists maintained by the OFAC, the Department of the Treasury or included in any executive orders, (2) not use or permit the use of the proceeds of any Loan to violate any of the foreign asset control regulations of OFAC or any enabling statute or executive order relating thereto, (3) comply with the Bank Secrecy Act and its implementing laws and regulations, as amended, including without limitation those related to anti-money laundering; and (4) ensure that it is and each of its Subsidiaries and Affiliates are not engaged in illegal activity or are a recipient of proceeds of illegal activity,. As required by federal law and each Lender's policies and practices, each Lender may need to obtain, verify and record certain customer identification information and documentation in connection with opening or maintaining accounts, or establishing or continuing to provide services.

Case 5:25-cv-00065-KDB-DCK    Document 1-1    Filed 04/29/25    Page 8 of 12

The Parties have signed this Agreement effective as of the day and year first written above and certify Parties have received and agree to the provisions set forth in the Schedule of Definitions as acknowledged and incorporated above.

PARTY:

Address for Notices:
192 Summer St
Jefferson, NC 28640

JOSEPH RANDALL ELLER

Address for Notices:

14767 N. Outer 40 Rd., Suite 400
Chesterfield, MO 63017
Attention: Loan Closing Department

**LENDER:**

**RABO AGRIFINANCE LLC**

By: _____

Name: _____ W B Lawson III _____

Title: _____ V P _____

Eller MCA 2019
Master Credit Agreement
v.004.20180515

**Exhibit A**

**SCHEDULE OF DEFINITIONS AND COVENANTS**

As further acknowledged in Section 2.01 of the Master Credit Agreement, Party has received the Schedule of Definitions via paper copy, electronic copy, electronic mail or by accessing the Schedule of Definitions with the version number that matches the version number shown in the footer of this Agreement at https://www.raboag.com/about-us/scheduledefinitions-167.

Eller MCA 2019
Master Credit Agreement
v.004.20180515

11

## APPLICABLE OBLIGOR COVENANTS SCHEDULE

### Covenants

Until such time as all Obligations have been paid in full:

**1.01   Financial Covenants.**

(a)      **Working Capital.** Randall Eller shall maintain not less than $2,800,000.00 in Working Capital, determined as of the end of each fiscal year.

**2.01   Reporting Requirements.**

(a)      as soon as available, but no later than 90 days after the end of each fiscal year, a copy of CPA Compiled financial statements of Randall Eller for that period;

(b)      no later than 90 days after the end of each fiscal year, an updated budget of projected income and expenses relating to Joseph Randall Eller's operations for the upcoming fiscal year;