**ADDENDUM TO MASTER CREDIT AGREEMENT**

This Addendum to Master Credit Agreement ("Addendum") is entered into and is dated and made effective as of May 14, 2020 between JOSEPH RANDALL ELLER ("Randall Eller"), an unmarried person who is not part of a civil union or domestic partnership and WESCOR FARMING, LLC, a Virginia limited liability company ("Wescor Farming, LLC") (Randall Eller and Wescor Farming, LLC are herein individually and collectively, "Party") and RABO AGRIFINANCE LLC, a Delaware limited liability company (the "Lender"). The Party and the Lender agree as follows:

PRELIMINARY STATEMENT. The Party and the Lender have entered into the Master Credit Agreement dated as of June 3, 2019 (said agreement as amended by any and all modifications or amendments thereto is hereinafter referred to as the "Credit Agreement." The terms defined in the Credit Agreement are used herein as therein defined).

Party and Lender wish to amend certain provisions of the Credit Agreement.

NOW, THEREFORE, Party and Lender agree as follows:

1. **Amendment to Exhibit B Applicable Obligor Covenants.** Exhibit B to the Credit Agreement is hereby deleted in its entirety and replaced with Exhibit B attached to this Addendum and incorporated herein and into the Credit Agreement by this reference as Exhibit B Applicable Obligor Covenants Schedule.

2. **Modification Agreement.** This Addendum does not release or extinguish the Loans under the Credit Agreement. All Collateral granted to or for the benefit of Lender for purposes of securing the Loans also secures the Loans under the Credit Agreement, as amended by this Addendum; and Party reaffirms the terms and provisions of all Collateral Documents.

3. **Reference to and Effect on the Credit Agreement.**

   (a) On and after the date hereof, each reference in the Credit Agreement to "this agreement", "hereunder" "hereof", "herein" or words of like import shall mean and be a reference to the Credit Agreement as amended hereby.

   (b) Except as specifically amended by any prior amendments, the Credit Agreement shall remain in full force and effect and is hereby ratified and confirmed.

   (c) The execution, delivery and effectiveness of this Addendum shall not, except as expressly provided herein, operate as a waiver of any right, power or remedy of Lender under the Credit Agreement, nor constitute a waiver of any provision of the Credit Agreement.

4. **Execution in Counterparts.** This Addendum may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

5. **Expenses.** The Party shall pay on demand all costs and expenses incurred by the Lender in connection with the preparation, execution, delivery, filing, and administration of this Addendum (including, without limitation, Legal Fees incurred in connection with the preparation of this Addendum and advising the Lender as to its rights, and the cost of any credit verification reports or field examinations of the Party's properties or books and records). The Party's Loans to the Lender under this Section shall survive termination of this Addendum and repayment of the Party's Loans to the Lender under the Credit Agreement.

**IN WITNESS WHEREOF,** the parties hereto have caused this Addendum to be executed as of the date first above written.

Address for Notices:
192 Summer St
Jefferson, NC 28640

PARTY:

X _____
JOSEPH RANDALL ELLER

Address for Notices:
407 Lumber Lane
Independence, VA 24348

WESCOR FARMING, LLC, a Virginia limited liability company

By: X _____
JOSEPH RANDALL ELLER
Sole Member

Address for Notices:
14767 N. Outer 40 Rd., Suite 400
Chesterfield, MO 63017
Attention: Loan Closing Department

LENDER:

RABO AGRIFINANCE LLC

By: _____
Name: WB Lawson III
Title: VP

## EXHIBIT B

## APPLICABLE OBLIGOR COVENANTS SCHEDULE

### Covenants

Until such time as all Obligations have been paid in full:

**1.01** **Financial Covenants.**

(a) **Working Capital.** Randall Eller and Wescor Farming, LLC shall maintain not less than $2,800,000.00 in Consolidated Working Capital, determined as of the end of each fiscal year.

**1.02** **Other Covenants.**

(a) **Compensation and Distributions.** Distributions from Wescor to Independence Lumber, and any other entity now owned or after acquired by Joseph Randall Eller, are restricted. Wescor Farming, LLC shall limit Compensation and Distributions to dividends, if any, payable in stock or membership interests.

(b) **Loans to Others.** Individual loans from Joseph Randall Eller to Independence Lumber, and any other entity now owned or after acquired by Joseph Randall Eller, are restricted.

(c) **Loans to Others.** Intercompany Loans from Wescor Farming to Independence Lumber, and any other entity now owned or after acquired by Joseph Randall Eller, are restricted.

**2.01** **Reporting Requirements.**

(a) as soon as available, but no later than 90 days after the end of each fiscal year, a copy of CPA Compiled financial statement of Joseph Randall Eller for that period;

(b) as soon as available, but not later than 90 days after the end of each fiscal year, a copy of CPA Reviewed financial statement of Wescor Farming, LLC for that period;

(c) no later than 90 days after the end of each fiscal year, an updated budget of projected income and expenses relating to Joseph Randall Eller's operations for the upcoming year;

## ADDENDUM TO MASTER CREDIT AGREEMENT

This Addendum to Master Credit Agreement ("Addendum") is entered into and is dated and made effective as of November 16, 2021 between JOSEPH RANDALL ELLER ("Randall Eller"), an unmarried person who is not part of a civil union or domestic partnership and WESCOR FARMING, LLC, a Virginia limited liability company ("Wescor Farming, LLC") (Randall Eller and Wescor Farming, LLC are herein individually and collectively, "Party") and RABO AGRIFINANCE LLC, a Delaware limited liability company (the "Lender"). The Party and the Lender agree as follows:

PRELIMINARY STATEMENT. The Party and the Lender have entered into the Master Credit Agreement dated as of June 3, 2019 (said agreement as amended by any and all modifications or amendments thereto is hereinafter referred to as the "Credit Agreement." The terms defined in the Credit Agreement are used herein as therein defined).

Party and Lender wish to amend certain provisions of the Credit Agreement.

NOW, THEREFORE, Party and Lender agree as follows:

1. **Amendment to Exhibit B Applicable Obligor Covenants**. Exhibit B to the Credit Agreement is hereby deleted in its entirety and replaced with Exhibit B attached to this Addendum and incorporated herein and into the Credit Agreement by this reference as Exhibit B Applicable Obligor Covenants Schedule.

2. **Method and Application of Payments**. Section 3.06 of the Credit Agreement is hereby removed and replaced in its entirety with the following:

3.06 **Method and Application of Payments**. All payments of principal, interest, and other amounts to be made under any Loan Documents shall be made to Lender in U.S. dollars and in immediately available funds, without set-off, deduction, or counterclaim, not later than 2:00 pm (St. Louis, Missouri time) on the Payment Date or the Interest Payment Date, as applicable, (any such payment made after that time on the Payment Date or Interest Payment Date, as applicable, will be deemed to have been made on the next succeeding Business Day). All payments received by Lender (including, to the extent permitted by Applicable Law, all proceeds received from the sale or other liquidation of the Collateral) will be applied to the Obligations in any order determined by Lender. The early or late date of making a regularly scheduled payment will be disregarded for purposes of allocating the payment between principal and interest. For this purpose, the payment will be treated as though made on the date due. In any legal action or proceeding, the entries made by Lender in an account or accounts maintained by Lender or Banking Counterparty or any of their Affiliates in accordance with its usual practice and evidencing the Obligations, will be prima facie evidence of the existence and amounts of those Obligations.

3. **LIBOR Rate Loan Indemnification**. Section 11.10 of the Credit Agreement is hereby removed and replaced in its entirety with the following:

11.10 **SOFR and LIBOR Rate Loan Indemnification**. Upon Lender's commitment or funding of any LIBOR Rate Loan or SOFR Rate Loan to Party, Party agrees to indemnify Lender and to hold Lender harmless from any loss or expense which Lender may sustain or incur as a consequence of (a) failure by Party to borrow pursuant to any such LIBOR Rate Loan or SOFR Rate Loan, or to execute a LIBOR Rate Conversion, LIBOR Rate Continuation, SOFR Rate Conversion or a SOFR Rate Continuation after Party has requested any of the same in accordance with the provisions of this Agreement, (b) default by Party in a borrowing of a LIBOR Rate Loan, SOFR Rate Loan, LIBOR Rate Conversion, a LIBOR Rate Continuation, SOFR Rate Conversion or SOFR Rate Continuation, (c) default by Party in making any Prepayment of a LIBOR Rate Loan or SOFR Rate Loan after Party has given a notice thereof in accordance with the provisions of this Agreement or (d) the making of a Prepayment with respect thereto. For any LIBOR Rate Loan, Term SOFR Rate Loan or Daily Compounded SOFR Rate Loan on a day which is not the last day of an Interest Period with respect thereto. For any LIBOR Rate, such indemnification may encompass an amount equal to the excess, if any, of (i) the amount of interest which would have accrued on the amount so Prepaid, or borrowed, converted or continued, for the period from the time of such Prepayment or of such failure to borrow, convert or continue to the last day of such Interest Period (or, in the case of the failure to borrow, convert or continue, the Interest Period which would have commenced on the date of such failure) in each case the applicable rate of interest for such Loan provided herein over (ii) the amount of interest (as reasonably defined by the Lender) which would have accrued to the Lender on such amount by placing such amount on deposit for a comparable period with leading banks in the interbank LIBOR market. This covenant shall survive the termination of this Agreement and the payment of all Loans and all other Obligations due under this Agreement. Amounts payable pursuant to this subsection shall be paid to Lender upon demand. A determination of Lender as to the amounts payable pursuant to this subsection shall be conclusive absent manifest error.

4. **Inability to Determine Rates**. Section 11.11 of the Credit Agreement is hereby removed and replaced in its entirety with the following:

11.11 **Inability to Determine Rates**. If the Lender determines, in its sole discretion (which shall be conclusive absent manifest error), that (i) an index rate or any tenor(s) of such index rate used in connection with the calculation of interest under this Agreement is no longer appropriate for the purposes of calculating interest; (ii) adequate and reasonable means do not exist for ascertaining such index rate; (iii) such index rate ceases to be adopted or used for calculation of interest in customary market usage in the relevant markets; or (iv) it is announced by the applicable administrator of such index rate, a governmental or regulatory authority or insolvency court having jurisdiction over such administrator, or a governmental authority having jurisdiction over the Lender that such index rate will no longer be made available, or no longer be representative or otherwise should not be used, then (A) the obligation of Lender to make or maintain any Loan bearing interest at such index rate or calculated based on such interest rate shall be suspended, and any Loan which would otherwise bear interest at such index rate or calculated based on such interest rate shall accrue interest at that rate, per annum, equal to a rate as determined by Lender in (B), and (B) Lender may, in its sole discretion, upon delivery of notice to and without any further action or consent of the Borrower, amend this Agreement effective as of the date specified in such notice to replace such index rate so that interest will be calculated based on an alternative index rate referencing the secured overnight financing rate ("SOFR"), a measure of the cost of borrowing cash overnight collateralized by Treasury securities, and may include a corresponding spread adjustment (or adjustments) which may be different to the previously specified interest rate, a term index rate or a compounded index rate referencing the secured overnight financing rate ("SOFR"), a measure of the cost of borrowing cash any such spread adjustments shall, in Lender's discretion (which shall be conclusive absent manifest error), take into account benchmark rates and means of calculating spread adjustments that are being generally accepted in the commercial markets; provided that the Lender shall be permitted by notice to the Borrower to make any other technical, administrative, operational or consequential changes from time to time to this Agreement and any other Loan Document as are necessary or desirable (in Lender's opinion, which shall be conclusive absent manifest error), in order to provide for the use of such alternative rate (or rates) including any corresponding spread adjustment (or adjustments). The Lender shall notify the Borrower of any such technical, administrative, operational or consequential changes to this Agreement and/or any other Loan Document, which, in each case, shall become effective on the date specified or described in such notice to the Borrower.

5. **Disclaimer**. Section 11.12 is hereby added to the Credit Agreement, as follows:

11.12 **Disclaimer**. The Lender does not warrant or accept any responsibility for, and shall not have any liability with respect to, the continuation of, administration of, submission of, calculation of, or any other matter related to any index rate used to calculate interest hereunder, including a LIBOR Rate, Base Rate or SOFR Rate, any component definition thereof or rates referenced in the definition thereof or any alternative or successor rate thereto, or replacement rate thereof, including, without limitation, (A) any technical, administrative, operational or consequential changes made pursuant to Section 11.11,

(B) whether the composition or characteristics of any alternative, successor or replacement reference rate will be similar to, or produce the same value or economic equivalence of, or have the same volume or liquidity as the predecessor index rate, and (C) the impact or effect of any alternative, successor or replacement reference rate or any technical, administrative, operational or consequential changes pursuant to Section 11.11 on any other financial products or agreements in effect or offered by or to Borrower or Lender or any of their respective Affiliates, including, without limitation, any Hedging Agreement. The Lender may select information sources or services in its reasonable discretion to ascertain any index rate, in each case pursuant to the terms of this Agreement or any Loan Document, and shall have no liability to the Borrowers or any other person or entity for damages of any kind, including direct or indirect, special, punitive, incidental or consequential damages, costs, losses or expenses (whether in tort, contract or otherwise and whether at law or in equity), for any error or calculation of any such rate (or component thereof) provided by any such information source or service. The Lender and its affiliates or other related entities may engage in transactions that affect the calculation of an index rate, any alternative, successor or replacement rate and/or any relevant adjustments thereto, in each case, in a manner adverse to the Borrower.

6. **SOFR Terms and Definitions.** Exhibit A to the Credit Agreement, Schedule of Definitions and Covenants, Article 1 – Definitions (the "MCA Terms or Definitions") is revised to include the attached **EXHIBIT A Supplement – Schedule of Definitions**. To the extent that any of the New Terms or the Revised Definitions (respectively, defined therein) conflicts with any of the MCA Terms or Definitions, the New Terms or Revised Definition shall control.

7. **Counterpart Execution and Signatures.** Section 12.11 of the Credit Agreement is hereby removed and replaced in its entirety with the following:

   **12.11  Counterpart Execution and Signatures.** All Loan Documents may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which, when taken together, shall be deemed to be one and the same agreement or document. The counterparts of the Loan Documents may be executed by electronic signature and delivered by email or facsimile, so long as such method of execution and delivery is acceptable to Lender in Lender's sole discretion.

8. **Optically Imaged Reproductions.** The following Section 12.20 is hereby added to the Credit Agreement:

   **12.20  Optically Imaged Reproductions.** Lender may make an optically imaged reproduction of any or all Transaction Documents and, at its election, destroy the original or originals. Party consents to the destruction of the original or originals and agrees that a copy of the optically imaged reproduction of any Transaction Document will be the equivalent of and for all purposes constitute an "original" document. For purposes of this section, "for all purposes" includes use of the optically imaged reproduction (a) to prove the content of the original document at trial, mediation, arbitration or administrative hearing; (b) for any business purpose; (c) for internal or external audits and/or examination by or on behalf of any Governmental Authority; (d) in canceling or transferring any document; and (e) in conjunction with any other transaction evidenced by the original document.

9. **Modification Agreement.** This Addendum does not release or extinguish the Loans under the Credit Agreement. All Collateral granted to or for the benefit of Lender for purposes of securing the Loans also secures the Loans under the Credit Agreement, as amended by this Addendum; and Party reaffirms the terms and provisions of all Collateral Documents.

10. **Reference to and Effect on the Credit Agreement.**

    (a)  On and after the date hereof, each reference in the Credit Agreement to "this agreement", "hereunder" "hereof", "herein" or words of like import shall mean and be a reference to the Credit Agreement as amended hereby.

    (b)  Except as specifically amended by any prior amendments, the Credit Agreement shall remain in full force and effect and is hereby ratified and confirmed.

    (c)  The execution, delivery and effectiveness of this Addendum shall not, except as expressly provided herein, operate as a waiver of any right, power or remedy of Lender under the Credit Agreement, nor constitute a waiver of any provision of the Credit Agreement.

11. **Execution in Counterparts.** This Addendum may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

12. **Expenses.** The Party shall pay on demand all costs and expenses incurred by the Lender in connection with the preparation, execution, delivery, filing, and administration of this Addendum (including, without limitation, Legal Fees incurred in connection with the preparation of this Addendum and advising the Lender as to its rights, and the cost of any credit verification reports or field examinations of the Party's properties or books and records). The Party's Loans to the Lender under this Section shall survive termination of this Addendum and repayment of the Party's Loans to the Lender under the Credit Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Addendum to be executed as of the date first above written.

PARTY:

*/s/ Joseph Randall Eller*
JOSEPH RANDALL ELLER

Address for Notices:
192 Summer St
Jefferson, NC 28640

Alternate address for notice by U.S. Mail:
604 West Main St
Independence, VA 24348

WESCOR FARMING, LLC, a Virginia limited liability company

By: */s/ Joseph Randall Eller*
JOSEPH RANDALL ELLER
Sole Member

Address for Notices:
207 East Main St.
Independence, VA 24348

Alternate address for notice by U.S. Mail:
604 West Main St
Independence, VA 24348

2

Addendum to Master Credit Agreement
Eller MCA 2019

Address for Notices:

14767 N. Outer 40 Rd., Suite 400
Chesterfield, MO 63017
Attention: Loan Closing Department

LENDER:

RABO AGRIFINANCE LLC

By _____
Name: WB Lawson II
Title: VP

EXHIBIT A Supplement – Schedule of Definitions

SOFR Terms and Definitions

**NEW TERMS – DEFINITIONS.** The following terms and definitions ("New Terms") are added to the Credit Agreement. To the extent that the New Terms conflict with any MCA Terms or Definitions, the New Terms set forth below shall control:

**Daily Compounded SOFR** means Daily Compounded SOFR (With Observation Shift) or Daily Compounded SOFR (Without Observation Shift), as applicable.

**Daily Compounded SOFR (With Observation Shift)** means the rate per annum calculated as set forth in Attachment 1 hereto; provided, that Daily Compounded SOFR (With Observation Shift) shall be increased by the Spread Adjustment, if any, and an Interest Rate Margin as set forth in the MCA or any amendment, modification or supplement thereto and may be Adjusted from time to time in Lender's discretion for reserve requirements, deposit insurance assessment rates and other regulatory costs.

**Daily Compounded SOFR (Without Observation Shift)** means the rate per annum calculated as set forth in Attachment 2 hereto; provided, that Daily Compounded SOFR (Without Observation Shift) shall be increased by the Spread Adjustment, if any, and an Interest Rate Margin as set forth in the MCA or any amendment, modification or supplement thereto and may be Adjusted from time to time in Lender's discretion for reserve requirements, deposit insurance assessment rates and other regulatory costs.

**Daily Compounded SOFR Rate Continuation** means the continuation of any Daily Compounded SOFR Rate Loan for another Interest Period.

**Daily Compounded SOFR Rate Conversion** means a Rate Conversion of any Daily Compounded SOFR Rate Loan.

**Daily Compounded SOFR Rate Loan** means a Loan which bears interest at Daily Compounded SOFR, as set forth in the MCA or any amendment, modification or supplement thereto.

**Daily Simple SOFR** means, for any day (a "SOFR Interest Day"), a rate per annum equal to the greater of (a) SOFR for the day (such day "i") that is five (5) U.S. Government Securities Business Days prior to (i) if such SOFR Interest Day is a U.S. Government Securities Business Day, such SOFR Interest Day or (ii) if such SOFR Interest Day is not a U.S. Government Securities Business Day, the U.S. Government Securities Business Day immediately preceding such SOFR Interest Day, in each case, as such SOFR is published by the SOFR Administrator on the SOFR Administrator's Website, and (b) the Floor Rate of zero. If by 5:00 pm (New York City time) on the second (2nd) U.S. Government Securities Business Day immediately following any day "i", the SOFR in respect of such day "i" has not been published on the SOFR administrator's website and Daily Simple SOFR has not been replaced pursuant to the MCA, then SOFR for such day "i" will be SOFR as published in respect of the first preceding U.S. Government Securities Business Day for which such SOFR was published on the SOFR administrator's website; provided that any SOFR determined pursuant to this sentence shall be utilized for purposes of calculation of Daily Simple SOFR for no more than three (3) consecutive SOFR Interest Days. Any change in Daily Simple SOFR due to a change in SOFR shall be effective from and including the effective date of such change in SOFR without notice to the Borrower. Daily Simple SOFR shall be increased by the Spread Adjustment, if any, and an Interest Rate Margin as set forth in the MCA or any amendment, modification or supplement thereto and may be Adjusted from time to time in Lender's discretion for reserve requirements, deposit insurance assessment rates and other regulatory costs.

**Daily Simple SOFR Rate Loan** means a Loan which bears interest at the Daily Simple SOFR, as set forth in the MCA or any amendment, modification or supplement thereto.

**Daily Simple SOFR Rate Conversion** means a Rate Conversion of any Daily Simple SOFR Rate Loan.

**Payment Date** means the date on which any payment of principal or other amount (other than interest) is due under any Loan, as set forth in the MCA or any amendment, modification or supplement thereto; provided, however, should any Payment Date fall on a date that is not a Business Day, the Payment Date shall be the next succeeding Business Day. For the avoidance of doubt, for any SOFR Rate Loan, if any Payment Date would fall on a day which is not a Business Day such Payment Date shall be the next succeeding Business Day unless that Business Day falls in the next succeeding calendar month, in which case the Payment Date will be the preceding Business Day, and, in the case of any payment accruing interest, interest thereon shall be payable for the period of such extension.

**SOFR** means a rate equal to the secured overnight financing rate published by the Federal Reserve Bank of New York (or a successor administrator of the secured overnight financing rate) on the website of the Federal Reserve Bank of New York currently at http://www.newyorkfed.org, (or any successor source for the secured overnight financing rate identified as such by administrator of such secured overnight financing rate).

4

**SOFR Rate** means Term SOFR, Daily Simple SOFR or Daily Compounded SOFR, as applicable.

**SOFR Rate Continuation** means a Daily Compounded SOFR Rate Continuation or Term SOFR Rate Continuation, as applicable.

**SOFR Rate Conversion** means a Daily Compounded SOFR Rate Conversion, Daily Simple SOFR Rate Conversion or Term SOFR Rate Conversion, as applicable.

**SOFR Rate Loan** means a Daily Compounded SOFR Rate Loan, Term SOFR Rate Loan or Daily Simple SOFR Rate Loan, as applicable.

**SOFR Rate Prepayment Costs** means that amount as determined by Lender as its loss, cost or expense incurred as a result of: (a) the Prepayment of a Term SOFR Rate Loan or Daily Compounded SOFR Rate Loan on a day other than the last day of the Interest Period for that Term SOFR Rate Loan or Daily Compounded SOFR Rate Loan (whether voluntary, mandatory, automatic, by reason of acceleration, or otherwise); (b) any loss of anticipated profits and any loss or expense arising from the liquidation or reemployment of funds obtained by it to maintain that Term SOFR Rate Loan or Daily Compounded SOFR Rate Loan or from fees payable to terminate the deposits from which those funds were obtained; or (c) the Prepayment of a Daily Simple SOFR Rate Loan on a day other than the Interest Payment Date. Borrower shall also pay any administrative fees charged by Lender in connection with any event described in this paragraph.

**Spread Adjustment** means the applicable spread listed below that may be added to the relevant SOFR Rate in addition to the Interest Rate Margin or may be incorporated into the Interest Rate Margin:

(a) For Term SOFR, (i) 0.11448% (11.448 basis points) for an Interest Period of one-month's duration, (ii) 0.26161% (26.161 basis points) for an Interest Period of three-months' duration, (iii) 0.42826% (42.826 basis points) for an Interest Period of six-months' duration, and (iv) 0.71513% (71.513 basis points) for an Interest Period of twelve-months' duration; and

(b) For Daily Simple SOFR or Daily Compounded SOFR, (i) 0.11448% (11.448 basis points) if the Interest Payment Date is monthly, (ii) 0.26161% (26.161 basis points) if the Interest Payment Date is quarterly, (iii) 0.42826% (42.826 basis points) if the Interest Payment Date is semi-annual, and (iv) 0.71513% (71.513 basis points) if the Interest Payment Date is annual.

**Term SOFR** means, with respect to any SOFR Rate Loan for any Interest Period which may be agreed between the Lender and the Borrower, as set forth in the MCA or any amendment, modification or supplement thereto, the forward-looking term rate for a period comparable to such Interest Period based on SOFR that is published by an authorized benchmark administrator and is displayed on a screen or other information service, each as identified or selected by the Lender in its reasonable discretion at approximately a time and as of a date prior to the commencement of such Interest Period determined by the Lender in its reasonable discretion in a manner substantially consistent with market practice; provided, that Term SOFR shall be increased by the Spread Adjustment, if any, and an Interest Rate Margin as set forth in the MCA or any amendment, modification or supplement thereto and may be Adjusted from time to time in Lender's discretion for reserve requirements, deposit insurance assessment rates and other regulatory costs; provided further that in no event shall Term SOFR be less than the Floor Rate of zero. Term SOFR Rate shall be Adjusted on the first day of the applicable Term SOFR Rate Interest Period. Notwithstanding anything contained in the MCA or any other Loan Document, the Lender shall not be required to accept any Loan Request or Rate Request for a Term SOFR Rate Loan.

**Term SOFR Rate Continuation** means the continuation of any Term SOFR Rate Loan for another Interest Period.

**Term SOFR Rate Conversion** means a Rate Conversion of any Term SOFR Rate Loan.

**Term SOFR Rate Interest Period** means Term SOFR Rate for the applicable Interest Period.

**Term SOFR Rate Loan** means a Loan which bears interest at Term SOFR set forth in the MCA or any amendment, modification or supplement thereto.

**U.S. Government Securities Business Day** means any day except for (a) a Saturday, (b) a Sunday or (c) a day on which the Securities Industry and Financial Markets Association recommends that the fixed income departments of its members be closed for the entire day for purposes of trading in United States government securities.

**EXISTING TERMS – REVSED DEFINITIONS.** The definitions for capitalized terms currently in the Credit Agreement are hereby revised and replaced with the following "Revised Definitions". To the extent that the Revised Definitions conflict with those in the MCA Terms or Definitions, the Revised Definitions set forth below shall control:

**Adjustment Date** means each date on which the Interest Rate is or may be Adjusted by Lender pursuant to the MCA or any amendment, modification, or supplement thereto.

**Business Day** means any day other than a Saturday, Sunday, or other day on which commercial banks are authorized or required to close under the Applicable Laws of the State of Iowa or Missouri, or are in fact closed in the State of Iowa or Missouri, provided that, when used in connection with a SOFR Rate Loan calculation, determination, prepayment or requests or notices from the Borrower involving a SOFR Rate Loan or a SOFR Rate borrowing, the term "Business Day" means any such day that is a U.S. Government Securities Business Day.

**Consent and Waivers by Borrower and Non-Borrower Grantor** means Lender is authorized to perform any of the following acts at any time, all without Notice to Non-Borrower (whether designated in any Transaction Document as "Non-Borrower Grantor" or "Non-Borrower Pledgor") and, to the extent applicable to Borrower and the Loan Document permits an action without Notice, to Borrower, in each case to the extent permitted under any applicable law, without affecting the rights of Lender or Borrower or Non-Borrower's Obligations under the Loan Documents (and upon any such act Borrower and Non-Borrower confirms and agrees that such Non-Borrower's Obligations and any accommodations, lien or security interests in or to its properties shall not in any way be novated, discharged or otherwise impaired, and shall continue, be ratified and be affirmed and shall remain in full force in effect): (i) alter any terms of the MCA or any part of it, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Obligations; (ii) take and hold security for the Obligations, accept additional or substituted Collateral for the Obligations, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such Collateral; (iii) apply any Collateral now or later held for the Obligations in any order that Lender may choose, and direct the order and manner of any sale of all or any part of it and bid at any such sale; (iv) release Borrower of its liability for the Obligations or any of them; (v) substitute, add or release any one or more guarantors or endorsers of the Obligations; and (vi) extend other credit to Borrower, and take and hold security for the credit so extended, whether or not such security also secures the Obligations. Furthermore, Non- Borrower waives: (i) any right to require Lender to proceed against Borrower, proceed against or exhaust any Collateral held from Borrower, or pursue any other remedy in Lender's power to pursue; (ii) any defense based on any legal disability of Borrower, any discharge or limitation of the liability of Borrower to Lender, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that Non-Borrower's Obligations exceed or are more burdensome than those of Borrower; (iii) all presentments, demands for performance, Notices of nonperformance, protests, Notices of protest, Notices of dishonor, Notices of acceptance of the Loan Documents and of the existence, creation, or incurring of new or additional indebtedness of Borrower, and demands and Notices of every kind; (iv) any defense based on or arising out of any defense that Borrower may have to the payment or performance of the Obligations or any of them; (v) until the Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code or any successor statute, all rights to enforce any remedy that Lender may have against Borrower, and all rights to participate in any Collateral now or later to be held by Lender for the Obligations; (vi) replace the rate with an alternative rate in accordance with the rights afforded to it under the MCA (including, without limitation, under the Section entitled "Inability to Determine Rates") and (vii) make any technical, administrative, operational or consequential changes that the Lender is permitted to make under the MCA to the Loans or Loan Documentation. Borrower and Non-Borrower waive all rights and defenses that Borrower or Non-Borrower may have because the Obligations may be secured by any particular Collateral. This means, among other things:(i) Lender may enforce the Loan Documents against Borrower or Non-Borrower without first foreclosing on any other real or personal property Collateral securing the Obligations; and (ii) if Lender forecloses on any particular Collateral securing the Obligations: (A) the amount of the Obligations may be reduced only by the price for which that Collateral is sold at the foreclosure sale, even if the Collateral is worth more than the sale price, and (B) Lender may enforce the Loan Documents against Borrower or Non-Borrower even if Lender, by foreclosing on any Collateral, has destroyed any right between Borrower and Non-Borrower to collect from the other party. This is an unconditional and irrevocable waiver of any rights and defenses Borrower and Non-Borrower may have because the Obligations may be secured by any particular Collateral. Borrower and Non-Borrower waive any right or defense it may have at law or equity, to a fair market value hearing or action to determine a deficiency Judgment after a foreclosure of any Collateral granted to Lender under the Loan Documents. Borrower and Non-Borrower assume full responsibility for keeping informed of Borrower's financial condition and business operations and all other circumstances affecting Borrower's ability to pay and perform its Obligations to Lender, and agrees that Lender will have no duty to disclose to Borrower or Non-Borrower any information which Lender may receive about the other party's financial condition, business operations, or any other circumstances bearing on its ability to perform. No provision or waiver in the Loan Documents shall be construed as limiting the generality of any other provision or waiver contained in this consent. Borrower and Non-Borrower each certify that as of the date hereof and after giving effect to the advance contemplated by the applicable Loan and Security Instrument to which the Consent and Waiver by Borrower or Non-Borrower Grantor applies, Borrower and Non-Borrower will be solvent. Borrower and Non-Borrower represent that each party has determined that the terms available to the maker of the Note are in Borrower or Non-Borrower's best interests. Each of Borrower and Non-Borrower acknowledges that it will derive substantial direct and indirect benefit from the transactions contemplated by the Note. Each of Borrower and Non-Borrower has determined that its execution, delivery and performance of the Security Instrument to which the Consent and Waiver by Borrower or Non- Borrower Grantor applies, directly benefits, and is within the corporate purposes and in the best interests of the Borrower or Non-Borrower, respectively. Borrower and Non-Borrower certifies that as of the date hereof Borrower or Non-Borrower is not engaged in business or a transaction, or about to engage in business or a transaction for which any property remaining with Borrower or Non-Borrower will result in an unreasonably small amount of capital.

**Drawdown Date** means in the case of the applicable Loan, the date on which that Loan is made, in the case of a Rate Conversion, the effective date of the Rate Conversion, and in the case of a LIBOR Rate Continuation, a Term SOFR Rate Continuation or a Daily Compounded SOFR Rate Continuation, the effective date of the LIBOR Rate Continuation, Term SOFR Rate Continuation or Daily Compounded SOFR Rate Continuation, respectively.

**Floor Rate** means the minimum per annum Interest Rate that may be charged on a Loan as stated in the MCA or any amendment, modification or supplement thereto.

**Interest Payment Date** means a date on which regularly scheduled payments of interest are due, as set forth in the MCA or any amendment, modification or supplement thereto. For the avoidance of doubt, for any SOFR Rate Loan, if any Interest Payment Date would fall on a day which is not a Business Day such Interest Payment Date shall be the next succeeding Business Day unless that Business Day falls in the next succeeding calendar month, in which case the Interest Payment Date will be the preceding Business Day, and, in the case of any payment accruing interest, interest thereon shall be payable for the period of such extension.

**Interest Period** means (a) with respect to each applicable LIBOR Rate Loan, Term SOFR Rate Loan, Daily Compounded SOFR Rate Loan and Long Term Adjustable Rate Loan (to the extent applicable), each period commencing on the date that any initial LIBOR Rate Loan, Term SOFR Rate Loan, Daily Compounded SOFR Rate Loan or Long Term Adjustable Rate Loan (to the extent applicable) is made with respect to each applicable Loan Type, or the applicable rate is recalculated, until the next Adjustment Date or, if earlier, the respective Maturity Date; and (b) with respect to each applicable LIBOR Rate Loan, Term SOFR Rate Loan or Daily Compounded SOFR Rate Loan, the period selected by Borrower or agreed to between Borrower and Lender, during which the applicable LIBOR Rate, Term SOFR Rate or Daily Compounded SOFR will be effective; except that Borrower may not select any Interest Period which would extend beyond the Maturity Date of the respective Loan, each LIBOR Rate Interest Period or Term SOFR Rate Interest Period which commences on the last Business Day of a month (or on any day for which there is no numerically corresponding day in the appropriate subsequent month) shall end on the last Business Day of the appropriate subsequent month, each LIBOR Rate Interest Period or Term SOFR Rate Interest Period which would otherwise end on a day which is not a Business Day shall end on the next succeeding Business Day, each Term SOFR Rate Interest Period which would otherwise end on a day which is not a Business Day shall end on the next succeeding Business Day unless that Business Day falls in the next succeeding calendar month, in which case the Interest Period will end on the preceding Business Day, and, in the case of any payment accruing interest, interest thereon shall be payable for the period of such extension, and unless otherwise determined by Lender, no Interest Period for any LIBOR Rate Loan or Term SOFR Rate Loan shall have a duration of less than one month, and, if the Interest Period would otherwise be a shorter period, the related LIBOR Rate Loan or Term SOFR Rate Loan shall not be available. Unless the MCA or any amendment, modification or supplement thereto provides otherwise, if a Daily Compounded SOFR Rate Loan is outstanding, such Daily Compounded SOFR Rate Loan shall use one Interest Period as initially set forth therein and all Daily Compounded SOFR Rate Continuations shall automatically continue in such Interest Period.

**Interest Rate** means with respect to each applicable Loan, the applicable rate of interest for such Loan increased by an Interest Rate Margin, if any, and, for any SOFR Rate Loan, the Spread Adjustment, if any, all as set forth in the MCA or any amendment, modification or supplement thereto.

**Interest Rate Margin** means with respect to each applicable Loan, the percentage margin set by Lender and added to a published rate or rate calculated based on a published rate to establish the Interest Rate set forth in the MCA or any amendment, modification or supplement thereto.

**Optional Rate Conditions** shall mean the following:

    (a)    **Rate Request.** Lender must receive a Rate Request;

    (b)    **Time of Request.** At Lender's option, all Rate Requests must be received by Lender before 12:00 noon (St. Louis, Missouri time), on

        (i)    In the case of a LIBOR Rate Conversion, LIBOR Rate Continuation, SOFR Rate Conversion or SOFR Rate Continuation, a Business Day which is not less than two Business Days prior to the date of the LIBOR Rate Conversion, LIBOR Rate Continuation, SOFR Rate Conversion or SOFR Rate Continuation (except a SOFR Rate Continuation where the SOFR Rate Loan is automatically continued pursuant to the MCA) and

        (ii)    in the case all other Rate Conversions, a Business Day which is not less than one Business day prior to the date of that Rate Conversion; and

    (c)    **LIBOR and Term SOFR Conversion.** A Rate Conversion of a LIBOR Rate Loan, Term SOFR Rate Loan or Daily Compounded SOFR Rate Loan may take place only on the last day of the respective Interest Period.

    (d)    **No Default.** Except for any Rate Conversions into any Base Rate Loan, no Rate Conversions, LIBOR Rate Continuations or SOFR Rate Continuations will be made (automatically or otherwise) while there exists an Event of Default or an event which, with the passage of time or the giving of Notice would be an Event of Default, or if the Interest Rate for that Loan would exceed the Maximum Rate.

    (e)    **Irrevocable.** Each Rate Request will be irrevocable.

    (f)    **Automatic Conversion.** If there is (i) an Event of Default, or (ii) if Borrower fails to select the Interest Rate applicable to a Loan or portion thereof or the duration of any Interest Period for any LIBOR Rate Loan, Term SOFR Rate Loan or Daily Compounded SOFR Rate Loan within the time period and otherwise as provided in this section, that Loan (if other than a Base Rate Loan) will be, if not then outstanding, made as or, if then outstanding, automatically converted to, a Loan bearing interest at the applicable Base Rate on the last day of the Interest Period for a LIBOR Rate Loan, Term SOFR Rate Loan or Daily Compounded SOFR Rate Loan and immediately for a Daily Simple SOFR Rate Loan.

    (g)    **Limitations on Number and Size.** The unpaid principal amount of any Loan of any Loan Type must at no time be subject to more than five different rates of interest. The portion of any Loan of any Loan Type initially subject to each rate other than the Base Rate must be no less than $200,000.00.

Case 5:25-cv-00065-KDB-DCK    Document 1-3    Filed 04/29/25    Page 9 of 14

**Optional Rates** means one or more of the following Interest Rates as selected by Borrower and applicable to an advance or portions of a Loan:

(a) **Base Rate.** The Base Rate;

(b) **LIBOR.** The LIBOR Rate;

(c) **SOFR.** The applicable SOFR Rate;

(d) **Long Term Adjustable.** The Long Term Adjustable Rate; and

(e) **Fixed.** The Fixed Rate.

**Prepayment Conditions** means the following:

(a) **Lender May Refuse.** Lender may refuse to accept any Prepayment not expressly permitted in the MCA.

(b) **Effect of Notice of Prepayment.** If a Prepayment is conditioned upon prior Notice to Lender, at the option of Lender,

    (i) That Notice will be irrevocable;

    (ii) A Prepayment will be due in the amount and on the date specified in that Notice; and

    (iii) That Notice will not affect Borrower's obligation to make all other payments required under the Loan Documents on the date when due;

(c) **Accrued Interest and Fee.** Prepayments of any applicable Loan must be accompanied by unpaid accrued interest and the Prepayment Fee, if applicable;

(d) **All Amounts Due.** Permitted Prepayments of any applicable Loan are subject to payment of all amounts then due under such applicable Loan;

(e) **Application of Prepayment.** Each Prepayment of a portion of any applicable Loan will be applied to the most remote payment of the principal due under such Loan;

(f) **Effect of Acceptance.** If Lender receives any Prepayment which Lender is permitted to refuse, Lender may accept the Prepayment and Lender may, as a condition of acceptance, require the payment of interest which would accrue on the amount Prepaid through the date when Lender would be obligated to accept the Prepayment, or the date the principal amount Prepaid would be due under the MCA, whichever is earlier;

(g) **Application of Fee.** The Prepayment Fee shall apply to all Prepayments of any applicable Loan, including any payments or Prepayments made upon the acceleration of the due date of such Loan because of default or otherwise, and such Prepayment Fee shall be payable in addition to any default interest and other sums required to be paid under such Loan;

(h) **Insurance and Condemnation.** The application of the proceeds of insurance or of a Condemnation Award in reduction of the indebtedness shall require payment of Prepayment Fee;

(i) **LIBOR and SOFR Prepayment.** Borrower shall have no right to Prepay any LIBOR Rate Loan or SOFR Rate Loan bearing an Interest Period except at the end of an Interest Period;

(j) **Last 30 Days Free.** Notwithstanding any provisions of the Loan Documents to the contrary, no Prepayment Fee shall be due if Borrower voluntarily Prepays a Loan in full within the period of thirty (30) days immediately preceding the Maturity Date; provided that on the date such Prepayment is made, no Event of Default (or event which, with the passage of time or the giving of Notice, or both, would be an Event of Default) shall have occurred and still be outstanding; and

(k) **Daily Compounded SOFR Rate Loan Prepayments.**

    (i) No prepayment of a SOFR Rate Loan which computes interest using Daily Compounded SOFR shall be made on any day that is not a U.S. Government Securities Business Day, and if any prepayment to be made by the Borrowers shall fall due on such day, payment shall be made on the next succeeding U.S. Government Securities Business Day and such extension of time shall be reflected in computing interest or fees, as the case may be.

    (ii) In the event of any repayment or prepayment of any Daily Compounded SOFR Rate Loan, accrued interest on the principal amount repaid or prepaid shall be payable on the date of such repayment or prepayment and (iii) in the event of any Daily Compounded SOFR Rate Conversion or Daily Compounded SOFR Rate Continuation of any borrowings computed by reference to Daily Compounded SOFR prior to the end of the Interest Period therefor, accrued interest on such Borrowing shall be payable on the effective date of such conversion or continuation.

**Rate Request** means the request that Borrower must submit to Lender to request a Rate Conversion, LIBOR Rate Continuation or SOFR Rate Continuation (other than a SOFR Rate Continuation where the SOFR Rate Loan is automatically continued pursuant to the MCA), which request must specify the amount of the applicable Loan subject to the Rate Conversion, LIBOR Rate Continuation or SOFR Rate Continuation, the rate to be applicable to the applicable Loan, and if a LIBOR Rate Loan, Term SOFR Rate Loan or Daily Compounded SOFR Rate Loan is selected, the applicable Interest Period, as more particularly described in the MCA or any amendment, modification or supplement thereto.

**Request for Advance** means each request made by Borrower, which request:

    (a)    **Irrevocable.** Shall be irrevocable.

    (b)    **Amount of Request.** Must specify the amount of the Request for Advance.

    (c)    **Specify Rate.** If Borrower may select from Optional Rates of interest, must specify the rate to be applicable to the applicable Loan.

    (d)    **LIBOR or Term SOFR Period.** If a LIBOR Rate Loan, Term SOFR Rate Loan or Daily Compounded SOFR Rate Loan is selected, the Interest Period requested therefore.

    (e)    **Time of Request.** Must be received by Lender before 12:00 noon (St. Louis, Missouri time):

        (i)    If the applicable Loan is to be a LIBOR Rate Loan or SOFR Rate Loan, on a Business Day which is not less than two Business Days prior to the date of such Loan, and

        (ii)    In the case of any other applicable Loan, on a Business Day which is not less than one Business day prior to the date of such Loan.

Attachment 2 to EXHIBIT A Supplement – Schedule of Definitions

Compounding Without Observation Shift

**Daily Compounded SOFR (Without Observation Shift)** means, for any U.S. Government Securities Business Day m during an Interest Period, the rate per annum (rounded to the nearest one hundred thousandth of a percentage point) calculated as follows:

$$(CER_m - CER_{m-1}) \times \frac{N}{n_m}$$

For purposes of the above formula:

"CERm" is the Compounded Effective Rate for that U.S. Government Securities Business Day "m";

"CERm-1" is, in relation to that U.S. Government Securities Business Day "m", the Compounded Effective Rate for the immediately preceding U.S. Government Securities Business Day (if any) during such Interest Period;

"$n_m$" is, the number of calendar days from, and including, that U.S. Government Securities Business Day "m" up to, but excluding, the following U.S. Government Securities Business Day;

"N" is 360; and

"Compounded Effective Rate" is, for any U.S. Government Securities Business Day during an Interest Period (the "Calculation Business Day"), the percentage rate per annum calculated as set out below:

$$\left[ \prod_{i=1}^{d_o} \left( 1 + \frac{n_i \times FlooredSOFR_{i-[5]Business\ Days}}{N} \right) \right] - 1$$

For purposes of calculating the Compounded Effective Rate:

"Calculation Period" means the period from the first U.S. Government Securities Business Day of that Interest Period to, and including, such Calculation Business Day;

"$d_o$" is the number of U.S. Government Securities Business Days in the Calculation Period;

"i" is a series of whole numbers from one to $d_o$, each representing the relevant U.S. Government Securities Business Day in chronological order in the Calculation Period;

"Floored SOFR$_{i - [5] Business\ Days}$" is, for any U.S. Government Securities Business Day "i" during the Calculation Period, the greater of: (a) SOFR for the U.S. Government Securities Business Day (such day, the "SOFR Determination Day") which is five (5) U.S. Government Securities Business Days prior to that U.S. Government Securities Business Day "i" as such SOFR is published by the SOFR administrator on their website and (b) the Floor Rate of zero. If by 5:00 pm (New York City time) on the second (2nd) U.S. Government Securities Business Day immediately following any SOFR Determination Day, SOFR in respect of such SOFR Determination Day has not been published on the SOFR administrator's website and the benchmark has not been replaced pursuant to the MCA, then SOFR for such SOFR Determination Day will be SOFR as published in respect of the first preceding U.S. Government Securities Business Day for which SOFR was published on the SOFR administrator's website; provided that any SOFR determined pursuant to this sentence shall be utilized for purposes of calculation of Daily Compounded SOFR for no more than three (3) consecutive U.S. Government Securities Business Days "i";

"$n_i$" is, the number of calendar days from, and including, that U.S. Government Securities Business Day "i" up to, but excluding, the following U.S. Government Securities Business Day; and

"N" has the same meaning as the term above.

**Attachment 1 to EXHIBIT A Supplement – Schedule of Definitions**

**Compounded With Observation Shift**

<u>Daily Compounded SOFR (With Observation Shift)</u> means, for any Observation Period (defined below) for a Daily Compounded SOFR Rate Loan (With Observation Shift) is the percentage rate per annum (rounded to the nearest one hundred thousandth of a percentage point) calculated as follows:

$$\left[\prod_{i=1}^{d_o}\left(1 + \frac{n_i \times FlooredSOFR_{i-[\_]Business\,Days}}{N}\right) - 1\right] \times \frac{N}{d}$$

For purposes of calculating the rate in the above formula:

"$d_o$" is the number of U.S. Government Securities Business Days in the Observation Period;

"i" is a series of whole numbers from one to $d_o$, each representing the relevant U.S. Government Securities Business Day in chronological order from, and including, the first Business Day in the Observation Period to, but excluding, the last U.S. Government Securities Business Day in the Observation Period;

"Floored SOFR$_{i-[5]\,Business\,Days}$" is, for any U.S. Government Securities Business Day "i" during the Observation Period, the greater of: (a) SOFR for the U.S. Government Securities Business Day (such day, the "<u>SOFR Determination Day</u>") which is five (5) U.S. Government Securities Business Days prior to that U.S. Government Securities Business Day "i" and (b) the Floor Rate of zero. If by 5:00 pm (New York City time) on the second (2nd) U.S. Government Securities Business Day immediately following any SOFR Determination Day, SOFR in respect of such SOFR Determination Day has not been published on the SOFR administrator's website and the benchmark has not been replaced pursuant to the MCA, then SOFR for such SOFR Determination Day will be SOFR as published in respect of the first preceding U.S. Government Securities Business Day for which SOFR was published on the SOFR administrator's website; provided that any SOFR determined pursuant to this sentence shall be utilized for purposes of calculation of Daily Compounded SOFR for no more than three (3) consecutive U.S. Government Securities Business Days "i";

"$n_i$" is, for any U.S. Government Securities Business Day "i", the number of calendar days from, and including, that U.S. Government Securities Business Day "i" up to, but excluding, the following U.S. Government Securities Business Day;

"N" is 360; and

"d" is the number of calendar days in the Observation Period.

"Observation Period" means (a) for purposes of the calculation of interest for any Daily Compounded SOFR Rate Loan (or portion thereof) payable on the Interest Payment Date therefor, the period from, and including, the date that is five (5) U.S. Government Securities Business Days preceding the first date in such Interest Period to, but excluding, the date that is five (5) U.S. Government Securities Business Days preceding such Interest Payment Date and (b) for purposes of the calculation of interest for any such Daily Compounded SOFR Rate Loan (or portion thereof) that accrues on or after the Interest Payment Date therefor, the period from, and including, the date that is five (5) U.S. Government Securities Business Days preceding such Interest Payment Date and to, but excluding, the date that is five (5) U.S. Government Securities Business Days preceding the date on which such interest is actually paid to the Lender.

# EXHIBIT B

## APPLICABLE OBLIGOR COVENANTS SCHEDULE

### Covenants

Until such time as all Obligations have been paid in full:

**1.01 Financial Covenants.**

(a) **Working Capital.** Randall Eller and Wescor Farming, LLC shall maintain not less than $2,800,000.00 in Consolidated Working Capital, determined as of the end of each fiscal year.

**1.02 Other Covenants.**

(a) **Compensation and Distributions.** Wescor Farming, LLC shall limit Compensation and Distributions to no more than $0.00 per fiscal year, plus dividends, if any, payable in stock or membership interests.

**2.01 Reporting Requirements.**

(a) as soon as available, but no later than 90 days after the end of each fiscal year, a copy of CPA Compiled financial statements of Randall Eller for that period;

(b) as soon as available, but no later than 90 days after the end of each fiscal year, a copy of CPA Reviewed financial statements of Wescor Farming, LLC for that period;

(c) no later than 90 days after the end of each fiscal year, an updated budget of projected income and expenses relating to Randall Eller's operations for the upcoming fiscal year;

Addendum to Master Credit Agreement
Eller MCA 2019