Complaint Exhibit 10

```
                              FILED ELECTRONICALLY
                                 YADKIN COUNTY NC
                                  ARIC WILHELM
                               REGISTER OF DEEDS
                        ====================================
                        FILED       Jan 29, 2024
                        AT           02:42:35 PM
                        BOOK              01402
                        START PAGE         0336
                        END PAGE           0363
                        INSTRUMENT #      00326
                        EXCISE TAX       $0.00
```

---

Space above this line for Recorder's Use

Prepared by: James S. Livermon, III, Womble Bond Dickinson (US) LLP; 555 Fayetteville St., Suite 1100, Raleigh, NC 27601

Return recorded document to: RABO AGRIFINANCE LLC, 14767 N. Outer 40 Rd., Suite 400, Chesterfield, MO 63017, Attn: Loan Operations

Tax Parcel No(s). **Ashe County**: 18326061; 18326014; 18330132; 18330035; 18326028; 01365246; 18326030; 18326006; 18326035;18326037; 18326031; 18330095; 18326039; 18326026; 18326027; 09263054-001; 09263054-007; 01-365-071 (WITHOUT TITLE EXAMINATION)

**Alleghany County**: 3042412985; 3042134681; 3042037718; 3011-88-7819 (WITHOUT TITLE EXAMINATION)

**Surry County**: 497600188135 (WITHOUT TITLE EXAMINATION)

**Yadkin County**: 486601167205; 486601156716 (WITHOUT TITLE EXAMINATION)

Eller 2024

Operating Line of Credit: 22117154
Inputs Agreement: 748526-11003
Inputs Agreement: 748526-12001

### DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

#### (Ashe, Alleghany, Surry and Yadkin Counties, North Carolina)

THIS RECORD, IN ADDITION TO COVERING OTHER PROPERTY, IS FILED AS A FIXTURE FILING AND COVERS GOODS THAT ARE OR ARE TO BECOME FIXTURES. THE REAL PROPERTY TO WHICH THE FOREGOING IS RELATED IS THE "LAND" DESCRIBED HEREIN BELOW. THE "SECURED PARTY" IS THE LENDER IDENTIFIED BELOW AND THE "DEBTOR" IS THE GRANTOR IDENTIFIED BELOW. UNLESS OTHERWISE INDICATED HEREIN BELOW, THE RECORD OWNER IS GRANTOR. THIS DOCUMENT SERVES AS A FIXTURE FILING UNDER THE UNIFORM COMMERCIAL CODE (N.C.G.S §25-9-502).

THE PERIOD IN WHICH FUTURE ADVANCES MAY BE MADE AND FUTURE OBLIGATIONS MAY BE INCURRED AND SECURED BY THIS DEED OF TRUST IS THE PERIOD BETWEEN THE DATE OF THIS DEED OF TRUST AND THAT DATE WHICH IS 30 YEARS FROM THE DATE OF THIS DEED OF TRUST. THE MAXIMUM PRINCIPAL AMOUNT OF THE SECURED OBLIGATIONS WHICH ARE OR MAY BE SECURED BY THIS DEED OF TRUST (INCLUDING ANY AMOUNTS WHICH HAVE BEEN ADVANCED PRIOR TO THE DATE HEREOF) IS $27,000,000.00.

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

This deed of trust ("Deed of Trust") is dated as of January 22, 2024. It is by Joseph Randall Eller, an unmarried citizen and resident of Jefferson, Ashe County, North Carolina, Grayson Farm & Leasing, Inc., a Virginia corporation, Mountain Top Holding of Virginia/North Carolina, L.L.C., a Virginia limited liability company, DD&R Land Holdings, LLC, a Virginia limited liability

WBD (US) 4874-9636-2383v2

```
        Submitted electronically by "Womble Bond Dickinson (US) LLP"
        in compliance with North Carolina statutes governing recordable documents
        and the terms of the submitter agreement with the Yadkin County Register of Deeds.
```

company, NDRD Land Holdings, LLC, a Virginia limited liability company, D&R Land Holdings, LLC, a Virginia limited liability company, Timber & Logging, LLC., a North Carolina limited liability company, Wescor Farm Operations, LLC, f/k/a Wescor Farming, LLC, a Virginia limited liability company, and Elk Creek Land Holdings, LLC, a Virginia limited liability company (collectively, the "Grantor"), to and in favor of NCFC SERVICES LLC, a North Carolina limited liability company, as trustee ("Trustee"), whose address for purposes of this Deed of Trust is Post Office Box 217, Enfield, NC 27823, for the benefit of RABO AGRIFINANCE LLC, a Delaware limited liability company, as agent for itself and the other Secured Parties (defined herein) under the Collateral Agency Agreement (defined herein; and Rabo AgriFinance LLC, in that capacity, "Beneficiary" and a grantee for indexing purposes).

RABO AGRIFINANCE LLC, a Delaware limited liability company, as Lender ("Lender") has agreed to provide credit in the original principal sum of $13,500,000.00 to Borrower (as defined in the Facility Sheet(s)) under the terms and conditions of the Master Credit Agreement between Borrower and Lender dated June 3, 2019, and Joinder dated May 14, 2020, as may be amended, modified, replaced, or supplemented from time to time (the "MCA"), and under an Application and Account Agreement dated February 27, 2020 to provide credit for the purpose of crop inputs in the original maximum amount of $350,000 (the "Application"), and under the Forbearance Agreement dated of even date herewith (the "Forbearance Agreement", and the MCA, Application and Forbearance Agreement are collectively referred as the "MCA"). Each capitalized term used in this Deed of Trust that is defined in the MCA not defined in this Deed of Trust will have the meaning specified in the MCA. This Deed of Trust will be interpreted in accordance with the Drafting Conventions as contained in the MCA.

Grantor has or may also enter into certain derivatives transactions under Hedging Agreements with Swap Counterparties, under which Grantor has or may incur Hedging Obligations to Swap Counterparties.

The Loan Obligations (defined in the CA) may be, from time to time, guaranteed by Guarantor under the terms and conditions of one or more guaranties in favor of Collateral Agent. The Hedging Obligations are guaranteed by Guarantor under the terms and conditions of the Hedging Agreements and/or a separate guaranty of the Hedging Obligations (the CA, the Guaranty, and the Hedging Agreements and any separate guaranty of the Hedging Obligations are herein sometimes individually and collectively referred to as the "Debt Instrument").

Grantor(s) has an economic interest in Borrower or will obtain some other material financial benefit as a result of Secured Parties' entering into the Secured Obligation Documents (defined herein). Secured Parties require that Grantor(s) execute this agreement as a condition of the Secured Obligation Documents. Grantor(s) jointly and severally agrees and acknowledges that in exchange for the pledging of liens upon their assets, Grantor(s) is receiving valuable and direct consideration and benefit under the Agreement by Lender forbearing from initiating litigation involving transfers of property with and from the Loan Parties and from initiating insolvency proceedings against the Loan Parties that could directly and negatively impact the Grantor(s) and its own insolvency issues.

The noteholder is Lender, having a mailing address of 14767 N. Outer 40 Rd., Suite 400, Chesterfield, MO 63017, Attention: Loan Operations. The maximum aggregate principal amount hereby secured at any one time is $27,000,000.00 (the "Maximum Amount Secured").

NOW, THEREFORE, in consideration of the premises, and the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, to secure repayment of the indebtedness evidenced by the Note (defined herein) and payment and performance of all other Secured Obligations (defined herein), Grantor irrevocably and unconditionally grants, bargains, sells, and conveys to Trustee, in trust, for the benefit of Beneficiary, WITH POWER OF SALE and right of entry and possession wherever located, whether now owned or hereafter acquired or arising, and, except as indicated, whether constituting real estate or personal property (collectively, the "Property"): (a) the real estate and any interest in the personal property and real estate located in Ashe, Alleghany, Surry and Yadkin Counties, North Carolina, and described in EXHIBIT A (the "Land"); (b) all buildings, structures, improvements, fixtures, attachments, appliances, equipment, machinery and other articles now or hereafter erected on, affixed or attached to, or located in or on the Land, including all wells, watering and irrigation apparatus, pumps, motors, generators, pipes, center pivot irrigators and sprinklers, windmills, and fences (the "Improvements"); (c) all easements, rights-of-way and rights appurtenant to the Land or used in connection with the Land or as a means of access thereto ("Easements"); (d) the ground water on, under, pumped from or otherwise available to the Property or Land or any drainage, retention, ditch, canal, reservoir, or other water rights, whether as a result of overlying groundwater rights, contractual rights, or otherwise and whether riparian, appropriative, or otherwise; the right to remove or extract any such ground water including any permits, rights or licenses granted by any nation or government, any state or other political subdivision thereof, any agency, authority, instrumentality, regulatory body, court, administrative tribunal, central bank or other entity exercising executive,

Eller MCA 2024
Deed of Trust, Assignment of Rents and Security Agreement

2

legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government ("Governmental Authority") and any rights granted or created by any easement, covenant, agreement or contract with any Person; and any rights to which the Property or Grantor is entitled with respect to surface water, whether such rights are appropriative, riparian, prescriptive or otherwise and whether or not pursuant to historical use, contractual agreement, permit or other governmental authorization; any water right, water allocation for water not yet delivered, distribution right, delivery right, any proscriptive, contractual, easement or other rights necessary or convenient to convey any water to the Property, water storage right, or other water-related entitlement appurtenant to or otherwise applicable to the Property by virtue of the Property being situated within the boundaries of any governmental water district irrigation district or other local agency or within the boundaries of any private water company, mutual water company, or other non-governmental entity (collectively, "Water Rights"); (e) all other tenements, hereditaments and appurtenances to the Land; (f) minerals, oil, gas, coal, metallic ores, other minerals and any other hydrocarbon substances, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and other interests and estates in, under and on the Land and other oil, gas, coal, metallic ores and any other mineral interests with which any of the foregoing interests or estates are pooled or unitized, including surface damage awards or settlements (the "Mineral Rights"); (g) timber now or hereafter standing or cut; (h) leases, subleases, licenses, occupancy agreements, concessions and other agreements, granting a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Property (collectively, the "Leases"); (i) all utility contracts, maintenance agreements, management agreements, rights under any and all nutrient/manure management plans, service contracts and other agreements directly related to the operation and maintenance of the Property; (j) all bushes, groves, trees, plants, vines or other plantings, upon or under the Land ("Plantings") including all varieties of Plantings that produce fruit, nuts, or other crops in more than one crop year ("Permanent Crop Plantings"); (k) all patents, trademarks, or other intellectual property, working drawings, instructional manuals, and rights in processes directly related to the operation of the Property; (l) other tangible personal property of every kind and description, whether stored on the Land or elsewhere, including all goods, materials, supplies, tools, books, records, chattels, furniture, machinery and equipment (except motor vehicles, trailers, and planting, tillage and harvesting equipment rolling stock) or which is in all cases (i) directly related to the operation of the Property or acquired in connection with any construction or maintenance of the Land or the Improvements or and (ii) affixed or installed, or to be affixed or installed, in any manner on the Land or the Improvements or; (m) all permits and licenses relating or pertaining to the use or enjoyment of the Property; (n) proceeds of and any unearned premiums on any insurance policies covering the Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property (the "Insurance Claims"); (o) all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Land or other Real Estate (the "Condemnation Awards"); (p) rights and interests under any Hedging Agreements, including all rights to the payment of money from Secured Parties or Trustee under the Hedging Agreements; and all accounts, deposit accounts, and general intangibles, including payment intangibles, described in any of the Hedging Agreements; (q) the right, in the name and on behalf of Grantor, upon notice to Grantor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Trustee, Beneficiary or Secured Parties in the Property; and (r) substitutions, replacements, additions, accessions and proceeds for or to any of the foregoing, and all books, records and files relating to any of the foregoing, including, without limitation, computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.

TO HAVE AND TO HOLD the Property unto the Trustee and its heirs, successors and assigns, in fee simple forever, upon the trusts and for the uses and purposes hereinafter set out.

1.    **Secured Obligations.** Grantor makes the grant, conveyance, transfer and assignment herein, to secure payment and performance of the following obligations (the "Secured Obligations") in any order of priority that Beneficiary may choose: (a) all Obligations (defined in the MCA), under one or more Facility Sheets(s) from time to time where Grantor is designated from time to time as Borrower or Non-Borrower, including (i) the Operating Line of Credit 1 Note dated May 4, 2020, from Borrower to Lender in the original principal amount of $13,500,000.00 (together with all extensions, renewals, modifications, substitutions and amendments thereof, the "Note"); (ii) the Application and Account Agreement in the maximum amount of $350,000 designed by Lender as Loan Obligation Nos. xxxx526-11003 and xxx526-12001; (iii) all Hedging Obligations; and (iv) all other indebtedness, liabilities and obligations of Borrower to Lender and the Swap Counterparties arising pursuant to any of the Transaction Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several; (b) all obligations of Borrower under this Credit Line Deed of Trust; (c) any obligations due to a Banking Counterparty with regard to Banking Obligations; (d) all obligations of Borrower to Lender, Coöperatieve Rabobank U.A., a foreign banking organization organized as a cooperative bank under the laws of The Netherlands ("Rabobank") or any other

Affiliate of Lender (Lender, Rabobank and any other Affiliate of Lender or Rabobank are herein individually and collectively, "Secured Parties"), whether now existing or hereafter incurred or created, whether voluntary or involuntary, whether obligatory or non-obligatory; whether due or not due, whether absolute or contingent, or whether incurred directly or acquired by assignment or otherwise; and (e) any of the foregoing that arises after the filing of a petition by or against Grantor or Borrower under an Insolvency Proceeding. All Persons who have or acquire an interest in the Property will be deemed to have received notice of, and will be bound by, the terms of the MCA, the other Transaction Documents, the Application, and each other agreement or instrument made or entered into in connection with each of the Secured Obligations (the Transaction Documents and those other agreements or instruments, the "Secured Obligation Documents"). These terms include any provisions in the Secured Obligation Documents which permit borrowing, repayment and reborrowing, or which provide that the rate of interest on one or more of the Secured Obligations may vary from time to time. This Credit Line Deed of Trust secures one or more Obligations that contain a variable rate of interest according to a formula based on LIBOR, SOFR ("Secured Overnight Financing Rate") or a similar widely used index which is disclosed in the Loan Documents. This Credit Line Deed of Trust does not secure any obligation which is unsecured pursuant to the express terms of the MCA or any other document, agreement or instrument. Without limitation of the foregoing, this Deed of Trust does not secure the indebtedness, liabilities and obligations of Guarantor as guarantor under the terms and conditions of the Guaranty or any other guaranty given by Guarantor to secure the Hedging Obligations.

2. **Future Secured Obligations.** The Secured Obligations include future advances and other future Secured Obligations made by Beneficiary or Secured Parties, at their option, and for any purpose, and all other future Secured Obligations. Those future advances and other future Secured Obligations are secured to the same extent as if made or incurred on the date of the execution of this Deed of Trust, and have priority as to third Persons with or without actual notice from the time this Deed of Trust is filed for record as provided by law. The total amount of indebtedness secured by this Deed of Trust may decrease or increase from time to time, but the total unpaid principal balance so secured at any one time shall not exceed the maximum principal amount of $27,000,000.00, plus interest and any disbursements made for the payment of taxes, levies or insurance on the Property or to protect the Secured Parties' interest under this Deed of Trust or to protect or preserve the value or condition of the Property, with interest on those disbursements, plus any increase in the principal balance as the result of negative amortization or deferred interest (the "Maximum Amount Secured"). Grantor shall not file for record any notice limiting the maximum amount secured by this Deed of Trust to an amount less than the Maximum Amount Secured (a "Maximum Amount Notice"). A Maximum Amount Notice will be an Event of Default (defined herein). Nothing herein will constitute a commitment to make additional or future advances or enter into future derivatives transactions in any amount.

3. **Assignment.** Grantor irrevocably and unconditionally assigns to Beneficiary and grants Beneficiary a security interest in, the Leases; all rents and other benefits derived from the Leases, and all other issues, profits, royalties, bonuses, income and other benefits derived from or produced by the Real Estate, including but not limited to, any monies, proceeds, damages, Judgments or payments in lieu thereof, received by or due to Grantor occasioned by any mineral or geothermal exploration, wind energy, solar energy or drilling activity on or under the Real Estate, all prepaid rents, security deposits and other supporting obligations (the "Rents"). Beneficiary may collect Rents with or without taking possession of the Property. Beneficiary confers upon Grantor a license to collect and retain the Rents as they become due and payable, so long as there is no Event of Default (the "License"). If an Event of Default has occurred, Beneficiary may terminate the License without notice to or demand upon Grantor. Beneficiary, by its acceptance of this Deed of Trust does not assume any duty or obligation under the Leases. The acceptance by Beneficiary of the assignment of Leases and Rents and profits with all the rights, powers, privileges and authority so granted will not obligate Beneficiary to assume any obligations in respect of the Leases and Rents and profits or under the Leases, or take any action thereunder or to expend any money or incur any expense or perform or discharge any obligation, duty or liability in respect of the Leases and Rents and profits or under the Leases or to assume any obligation or responsibility for the nonperformance of the provisions thereof by Grantor.

4. **Grant of Security Interest.** This Deed of Trust is a security agreement under the Uniform Commercial Code in effect in the State of North Carolina (the "UCC"); and Grantor grants Trustee and Beneficiary a security interest in and pledges and assigns to Trustee and Beneficiary all of Grantor's right, title and interest in the Property, to the extent characterized as personal property (the "Personalty"). The address of Grantor adjacent to its signature below is the mailing address of Grantor as debtor under the UCC. The address for Trustee specified in the first paragraph of this Deed of Trust is the address for Trustee as secured party under the UCC; and the address for Beneficiary specified herein is the address for Beneficiary as secured party under the UCC. As used in this Deed of Trust, the term "lien" is synonymous with the term "lien and security interest." This Deed of Trust shall also constitute a "fixture filing" for the purposes of the UCC. As such, this Deed of Trust covers all items of the Property that

are or are to become fixtures. Pursuant to the fixture filing requirements of the UCC, wherever in this Deed of Trust (i) the word "Grantor" appears it shall be deemed for all purposes to refer to debtor, and (ii) the word "Beneficiary" appears, it shall be deemed for all purposes to refer to secured party. For the avoidance of doubt, the grant of security interest contained in this Deed of Trust is not intended to expand or otherwise modify the grant of security interest contained in the MCA or the Forbearance Agreement, and to the extent that this Deed of Trust conflicts with the MCA or the Forbearance Agreement, those documents shall control.

5. **Warranty of Title.** Grantor represents and warrants that Grantor lawfully possesses and holds good and marketable fee simple title to all of the Land and the Improvements, that Grantor has the right, power and authority to grant, convey and assign the Property; and that the Property is unencumbered. Grantor covenants that Grantor will warrant and forever defend generally the title to, and ownership and possession of, the Property against all claims and demands, with all costs and expenses of defense to be borne by Grantor. Grantor especially agrees and declares that the separate estate of each of them, whether vested, contingent or in expectancy, is hereby conveyed and shall be bound for the payment and performance of the Secured Obligations.

6. **Permanent Crop Plantings.** All Permanent Crop Plantings are real estate and will remain a part of the Land. Grantor represents and warrants that the Permanent Crop Plantings are not subject to intellectual property rights under U.S. or foreign patent, copyright or trademark laws, the Plant Variety Protection Act or similar laws or subject to license from the holder of any such intellectual property rights (collectively "Permanent Crop Planting IP Rights"), other than (where applicable) the Permanent Crop Planting IP Rights described on EXHIBIT B. To the extent the Land does contain or in the future is cultivated to grow any variety of Permanent Crop Plantings that are subject to Permanent Crop Planting IP Rights, (a) Grantor represents and warrants that Grantor is the owner of such IP Rights free and clear of any claim, right, title, interest or Lien of any other person; (b) Grantor shall notify Beneficiary in writing of the existence of any Permanent Crop Planting IP Rights and Grantor grants Beneficiary a security interest in and a Lien upon all of Grantor's present and future rights, title and interests in, to and under Permanent Crop Planting IP Rights; all cash and non-cash proceeds and products of Permanent Crop Planting IP Rights; and all causes of action, past, present and future for infringement, misappropriation or dilution of, or unfair competition regarding any of Permanent Crop Planting IP Rights.

7. **Additional Representations.** Grantor represents to Beneficiary and Secured Parties that: (a) the Property does not represent the proceeds of unlawful activity under any state, federal or foreign law; (b) the Property includes all property and rights which may be reasonably necessary or desirable to enable Grantor to use, enjoy and operate the Land and the Improvements for the present uses thereof; (c) intentionally deleted; (d) Grantor owns the Personalty free and clear of any reservations of title or conditional sales contracts; (e) Grantor has title to, or (in the case of leased property) valid leasehold interests in, all of their properties and assets, real and personal, including the properties and assets and leasehold interests reflected in the Financial Information (other than any properties or assets disposed of in the ordinary course of business); (f) the legal name of Grantor is as appears in the first paragraph of this agreement; (g) Grantor has not used any trade name, assumed name or other name except Grantor's name stated in the first paragraph of this agreement; (h) each Grantor who is a natural Person resides at the address adjacent to his or her signature below; (i) if Grantor is anything other than a natural Person, it has complied with all Applicable Laws concerning its organization, existence and the transaction of its business, and is in existence and good standing in its state of organization and each state in which it conducts its business, except as to NDRD Land Holdings, LLC; (j) the execution, delivery and performance by Grantor of this Deed of Trust is within the powers and authority of Grantor and has been duly authorized; (k) to Grantor's knowledge, this Deed of Trust does not conflict with any Applicable Law; (l) this Deed of Trust is a legal, valid and binding agreement of Grantor, enforceable against Grantor in accordance with its terms, and any instrument or agreement required hereunder, when executed and delivered, will be similarly legal, valid, binding and enforceable; (m) except as otherwise previously disclosed by Grantor, there has been no Material Adverse Effect as to Grantor since the effective date the Financial Information was provided to Beneficiary or Secured Parties; (n) except as otherwise disclosed in the Forbearance Agreement, there is no lawsuit, tax claim or other dispute pending or to Grantor's knowledge threatened against Grantor or the Property that, if determined adverse to Grantor, is reasonably likely to have a Material Adverse Effect; (o) except as otherwise previously disclosed by Grantor, Grantor is not the subject of any Judgment; (p) this Deed of Trust does not conflict with, nor is Grantor in default on any credit agreement, indenture, purchase agreement, guaranty, capital lease, or other investment, agreement, or arrangement presently in effect providing for or relating to extensions of credit in respect of which Grantor is in any manner directly or contingently obligated; (q) Grantor has filed all tax returns (federal, state, and local) required to be filed and has paid all taxes, assessments, and governmental charges and levies thereon, including interest and penalties; (r) before signing this Deed of Trust, Grantor researched, to the satisfaction of Grantor, and inquired into the previous uses and ownership of the Real

Estate, and based on that due diligence, to the best of Grantor's knowledge, no Hazardous Substance has been disposed of or released or otherwise exists in, on, under or onto the Real Estate, except as Grantor has disclosed to Beneficiary or Secured Parties in the Environmental Information; (s) Grantor has complied with all current and future laws, regulations and ordinances or other requirements of any Governmental Authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or Hazardous Substances ("Environmental Laws"); (t) Grantor has not received any notices of violations of any Applicable Laws (including Environmental Laws); and Grantor is in compliance with all Applicable Laws; (u) there are no claims, actions, proceedings or investigations pending or threatened against Grantor or affecting the Property with respect to any violations of Applicable Laws; (v) Grantor's place of business, or its chief executive office, if it has more than one place of business, is located at the address specified below; and (w) unless otherwise disclosed to Beneficiary, Grantor is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986; and there is no Event of Default or event which, with notice or lapse of time would be an Event of Default.

8. **Information Accurate and Complete.** All financial statements and other reports, documents, instruments, information and forms of evidence which have been delivered to Beneficiary or Secured Parties concerning Grantor, or the Property (the financial and other information supplied or to be supplied to Beneficiary or Secured Parties in connection with this Deed of Trust is herein referred to as the "Financial Information"), are accurate, correct and sufficiently complete in all material respects to provide Beneficiary and Secured Parties true and accurate knowledge of their subject matter, including, without limitation, all material contingent liabilities. Grantor's submission of any Financial Information or other report, record or information pertaining to the condition or operations, financial or otherwise, of Grantor, from time to time, whether or not required under this Deed of Trust, will be deemed accompanied by a representation by Grantor that the Financial Information or other report, record or information is complete and accurate in all material respects as to the condition or operations of Grantor (and, if applicable, Grantor's Subsidiaries, Affiliates, partners, shareholders, members, or other principals), including, without limitation, all material contingent liabilities and Grantor's business or organizational structure.

9. **Performance of Secured Obligations.** Grantor shall promptly pay and perform each Secured Obligation in accordance with its terms.

10. **Maintenance and Preservation of Property.** Grantor shall: (a) immediately discharge any Lien that attaches to the Property following the recording of this Deed of Trust which Beneficiary has not consented to in writing, and shall also pay when due each obligation secured by or reducible to a Lien which now or hereafter encumbers or appears to encumber all or part of the Property, whether the Lien is or would be senior or subordinate to this Deed of Trust; (b) not alter, remove or demolish any portion of the Improvements, except as permitted or required by the CA; (c) maintain (or cause to be maintained) all policies of insurance required under the MCA and pay (or cause payment of) all premiums for that insurance on or prior to the date when due; (d) promptly and completely repair and/or restore any portion of the Property which becomes damaged or destroyed, in a good and workmanlike manner in accordance with sound building practices, whether or not Grantor has received the proceeds of any Insurance Claim; (e) not commit or allow any waste of the Property, nor do or suffer to be done any act whereby the value of any part of the Property may be lessened; (f) not initiate or allow any change in any zoning or other land use classification which affects the Property or any part of it, except as permitted or required by the CA; (g) if the Land is agricultural, keep the Property in good condition and repair; operate the Property, whether improved pastures, orchards, grazing, timber, or crop lands, in a good and husbandman like manner in accordance with accepted principles of sound agricultural and forestry practices; take all reasonable precautions to control wind and water erosion; fertilize improved pastures, if any, where necessary to maintain a good stand of desirable grasses; protect orchards and timber, if any, by reasonable precautions against loss or damage by fire including the maintenance of appropriate fire breaks; and neither to remove nor permit the removal of any timber, buildings, oil, gas, mineral, stone, rock, clay, fertilizer, gravel or top soil without the prior written consent of Beneficiary; (h) complete appropriation and all other requirements, if any, necessary to obtain the issuance of any license or water permit issued to Grantor, and take all other steps required or advisable for purposes of perfecting and maintaining in good status all other Water Rights; (i) keep all Permanent Crop Plantings cultivated, irrigated, fertilized, sprayed and fumigated, and shall replace all dead or unproductive trees, vines and other Permanent Crop Plantings with new ones; (j) not bring or keep any article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Grantor on the Property or any part of it under this Deed of Trust; and (k) perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value and utility.

**11.** **Compliance with Applicable Law.** Grantor shall not commit or allow any act upon or use of the Property which would violate any Applicable Law, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property;

**12.** **Taxes and Assessments.** Grantor shall pay (a) prior to delinquency, all taxes, levies, charges and assessments imposed by Applicable Law or any public or quasi-public authority or utility company which are (or if not paid, may become) a Lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it (individually and collectively "Impositions"); (b) any and all intangible taxes and documentary stamp taxes determined at any time to be due on or as a result of the Secured Obligations, this Deed of Trust or any other Transaction Documents, together with any and all interest and penalties thereon; and (c) taxes, levies, charges and assessments on Beneficiary's or Secured Parties' interest therein or upon this Deed of Trust or the Secured Obligations (collectively, "Mortgage Taxes"); except that if the amount of Mortgage Taxes exceeds the Maximum Rate, Grantor will not be required to pay any such excess. If after the date of this Deed of Trust, the State of North Carolina passes any law deducting from the value of Land for the purpose of taxation any Lien thereon, or changing in any way the laws for the taxation of Mortgages or debts secured by Mortgage for state or local purposes, or the manner of the collection of any such taxes, so as to affect this Deed of Trust, then within 180 days after notice by Beneficiary to Grantor, Grantor shall pay all Secured Obligations. Notwithstanding the foregoing provisions of this section, Grantor may, at its expense, contest the validity or application of any Imposition by appropriate legal proceedings promptly initiated and conducted in good faith and with due diligence, provided that Beneficiary is satisfied that neither the Property nor any part thereof or interest therein will be at risk of being sold, forfeited, or lost as a result of such contest, and Grantor has posted a bond equal to 115% of the contested amount or furnished such other security required from time to time by Beneficiary for purposes of payment of the contested amount.

**13.** **Damages and Insurance and Condemnation Proceeds.** Beneficiary may, at its option, (a) in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on warranty, or for damage, injury or loss to all or part of the Property, and it may make any compromise or settlement of the action or proceeding; (b) participate in any action or proceeding relating to any Condemnation Award; and (c) join Grantor in adjusting any Insurance Claim. All insurance proceeds, Condemnation Awards, and proceeds of any other claim based on warranty, or for damage, injury or loss to the Property which Grantor may receive or be entitled to must be paid to Beneficiary. In each instance, Beneficiary may apply those proceeds first toward reimbursement of all of Beneficiary's costs and expenses of recovering the proceeds or Condemnation Award, including Legal Fees. The balance shall, at Beneficiary's option, be applied to pay or Prepay some or all of the Secured Obligations in such order and proportions as it may choose. GRANTOR HEREBY SPECIFICALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS OF A PROPERTY OWNER WHICH PROVIDE FOR ALLOCATION OF CONDEMNATION PROCEEDS BETWEEN A PROPERTY OWNER AND A LIENHOLDER, AND ANY OTHER LAW OR SUCCESSOR STATUTE OF SIMILAR IMPORT.

**14.** **Site Visits, Observation and Testing.** Beneficiary and its agents and representatives may enter and visit the Property at any reasonable time for the purposes of observing it, performing Appraisals, taking and removing soil or groundwater samples, and conducting tests on any part of it, as provided in the CA, and otherwise to determine Grantor's compliance with this Deed of Trust.

**15.** **Defense and Notice of Claims and Actions.** At Grantor's sole expense, Grantor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Deed of Trust and the rights and powers of Beneficiary and Trustee created under it, against all adverse claims. Grantor must give Beneficiary and Trustee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

**16.** **Prohibited Transfers.** Grantor or Borrower shall not make or permit any Prohibited Transfer. Upon any Prohibited Transfer Beneficiary may declare all Secured Obligations to be due and payable immediately. "Prohibited Transfer" means: (a) any sale, contract to sell, conveyance, encumbrance, pledge, mortgage, lease of the Property to or for the benefit of a Person not the original Grantor under this instrument, and not expressly permitted under this instrument or the other Secured Obligation Documents, or other transfer of all or any material part of the Property or any interest in it, including any transfer of Mineral Rights, Water Rights, or Water Stock, whether voluntary, involuntary, by operation of law or otherwise; (b) if Grantor or Borrower is a corporation, any transfer or transfers of shares of the voting power or the direct or indirect beneficial ownership of Grantor; (c) if Grantor or Borrower is a partnership, withdrawal or removal of any general partner, dissolution of the partnership

under Applicable Law, or any transfer or transfers of the partnership interests; (d) if Grantor or Borrower is a limited liability company, withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of the voting power or the ownership of the economic interest in the Grantor or Borrower; or (e) if Grantor or Borrower is a trust, withdrawal or removal of any trustee or revocation of the trust. For avoidance of doubt, Section 3 of the Forbearance Agreement contemplates that the Loan Parties (as defined in the Forbearance Agreement), including the Grantor and the CRO (as defined in the Forbearance Agreement) "shall coordinate and execute an orderly liquidation of the Rabo Collateral (as defined in the Forbearance Agreement)", including without limitation the Property. Any Transfer made consistent with the terms of the Forbearance Agreement and any plan of orderly liquidation proposed by the Grantor and the CRO and approved by Beneficiary shall not constitute a Prohibited Transfer.

17. **Compensation and Reimbursement of Costs and Expenses.** Grantor shall pay (a) fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Beneficiary or Trustee when the law provides no maximum limit, for any services that Beneficiary or Trustee may render in connection with this Deed of Trust, including Beneficiary's providing a statement or Trustee's rendering of services in connection with a reconveyance; (b) all of Beneficiary's or Trustee's costs and expenses which may be incurred in rendering any such services; and (c) all costs, expenses and other advances which may be incurred or made by Beneficiary or Trustee in any efforts to enforce any terms of this Deed of Trust or protect the Property, including any rights or remedies afforded to Beneficiary or Trustee herein, including but not limited to Appraisals, inspections, insurance premiums, and prevention of waste, whether any lawsuit is filed or not, including any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the Adjustment of debtor-creditor relationships, or in defending any action or proceeding arising under or relating to this Deed of Trust, including attorneys' fees and other legal costs, costs of any Foreclosure Sale (defined herein) and any cost of evidence of title. If Beneficiary chooses to dispose of Property through more than one Foreclosure Sale, Grantor must pay all costs, expenses or other advances that may be incurred or made by Beneficiary or Trustee in each of those Foreclosure Sales. GRANTOR SHALL INDEMNIFY TRUSTEE, BENEFICIARY AND SECURED PARTIES AGAINST AND SHALL HOLD THEM HARMLESS FROM ALL LOSSES, DAMAGES, LIABILITIES, CLAIMS, CAUSES OF ACTION, JUDGMENTS, COURT COSTS, ATTORNEYS' FEES AND OTHER LEGAL EXPENSES, COST OF EVIDENCE OF TITLE, COST OF EVIDENCE OF VALUE, AND OTHER COSTS AND EXPENSES WHICH EITHER MAY SUFFER OR INCUR: (A) IN PERFORMING ANY ACT REQUIRED OR PERMITTED BY THIS DEED OF TRUST OR ANY OF THE OTHER SECURED OBLIGATION DOCUMENTS OR BY LAW; (B) BECAUSE OF ANY FAILURE OF GRANTOR TO PAY OR PERFORM ANY OF THE SECURED OBLIGATIONS; OR (C) BECAUSE OF ANY ALLEGED OBLIGATION OF OR UNDERTAKING BY BENEFICIARY OR SECURED PARTIES TO PERFORM OR DISCHARGE ANY OF THE REPRESENTATIONS, WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN ANY DOCUMENT RELATING TO THE PROPERTY (OTHER THAN SUCH WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN THE SECURED OBLIGATION DOCUMENTS). THIS AGREEMENT BY GRANTOR TO INDEMNIFY TRUSTEE, BENEFICIARY AND SECURED PARTIES SURVIVES THE RELEASE AND CANCELLATION OF ANY OR ALL OF THE SECURED OBLIGATIONS AND THE FULL OR PARTIAL RELEASE AND/OR RECONVEYANCE OF THIS DEED OF TRUST.

18. **Payments Due under this Deed of Trust.** Grantor must pay all obligations to pay money arising under this Deed of Trust immediately upon demand by Trustee, Beneficiary or Secured Parties to prevent the enforcement of Secured Parties', Beneficiary's or Trustee's remedies under this Deed of Trust. Each such obligation shall bear interest from the date the obligation arises at the Default Rate, both before and after any Judgment on the obligations secured hereby.

19. **Events of Default.** The following each shall be an event of default under this Deed of Trust (an "Event of Default"): (a) an Event of Default under the CA, Application or Forbearance Agreement, including a default termination event or other similar event under any Hedging Agreement which is not cured within any grace or cure period specified therein, if any; (b) a Prohibited Transfer; (c) the Financial Information or any representation in this Deed of Trust is materially incorrect or materially misleading; (d) the filing of a Maximum Amount Notice; (e) for more than ten days after notice from Beneficiary, Grantor is in default under any term, covenant or condition of this Deed of Trust not previously described in this section, which can be cured by the payment of a sum of money; or (f) for 30 days after notice from Beneficiary or Secured Parties, Grantor is in default under any term, covenant or condition of this Deed of Trust not previously described in this section; or (g) Grantor is in default of the terms of any plan of orderly liquidation that is approved by Beneficiary pursuant to Section 3 of the Forbearance Agreement; provided that if (i) it is reasonably certain that the default cannot be cured by Grantor within that 30 day period and (ii) Grantor has commenced curing that default within that 30 day period and thereafter diligently and expeditiously proceeds to cure that default, then that 30

day period shall be extended for so long as reasonably required by Grantor in the exercise of due diligence to cure that default, up to a maximum of 90 days after the notice to Grantor of the Event of Default.

20.     **Remedies.**  At any time after an Event of Default, Secured Parties, Beneficiary or Trustee may (a) declare any or all of the Secured Obligations to be due and payable immediately; (b) cure any breach or default of Grantor; (c) may, to the extent permitted by Applicable Law, make an ex parte application to any court of competent jurisdiction, and obtain appointment of, a receiver, trustee, liquidator or conservator of the Property, without notice, without giving bond, and without regard for the adequacy of the security for the Secured Obligations and without regard for the solvency of Grantor, Borrower, any Guarantor, or of any Person liable for the payment of the Secured Obligations; (d) in person, by agent or by court-appointed receiver, enter, take possession of, manage and operate all or any part of the Property; (e) exercise any or all of the remedies granted to a secured party under the UCC; (f) bring an action in any court of competent jurisdiction to foreclose this Deed of Trust or to obtain specific enforcement of any of the Covenants or agreements of this Deed of Trust; (g) under the power of sale granted under this Deed of Trust (the "Power of Sale"), at its option cause some or all of the Property, including the Personalty, to be sold or otherwise disposed of in any combination and in any manner permitted by Applicable Law; and (h) do any and all other things in connection with those actions that Beneficiary may consider necessary and appropriate to protect the security of this Deed of Trust.  GRANTOR HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS BENEFICIARY AS GRANTOR'S ATTORNEY-IN-FACT TO PERFORM SUCH ACTS AND EXECUTE SUCH DOCUMENTS AS BENEFICIARY CONSIDERS APPROPRIATE IN CONNECTION WITH TAKING THESE MEASURES, INCLUDING ENDORSEMENT OF GRANTOR'S NAME ON ANY INSTRUMENTS.  GRANTOR HEREBY WAIVES NOTICE OF THE APPLICATION FOR, AND CONSENTS TO THE APPOINTMENT OF A RECEIVER, TRUSTEE, LIQUIDATOR OR CONSERVATOR OF THE PROPERTY IN ACCORDANCE WITH THE PROVISIONS OF THIS SECTION (WHICH APPOINTMENT OF SUCH POWER OF ATTORNEY IS A POWER COUPLED WITH AN INTEREST); AND AGREES TO NOT OPPOSE SUCH APPOINTMENT.  Notwithstanding the foregoing, in no event will Trustee, Beneficiary or Secured Parties have any obligation to take any of the actions set forth in this Deed of Trust.  Beneficiary shall not be considered to have accepted any property other than cash or immediately available funds in satisfaction of any obligation of Grantor to Beneficiary, unless Beneficiary has given express written notice of its election of that remedy.  The proceeds of any receivership shall be applied by the receiver toward the payment of the Secured Obligations or toward the payment of such part of any Judgment thereupon which remains unsatisfied after the sale of the Property.  The receiver may make repairs and keep the Property in good condition and repair pending a sale, and pay all taxes and assessments accrued or accruing or redeem from sales therefore, pay all premiums of insurance required under this Deed of Trust, and pay all other charges as herein provided.

21.     **Sales of Property Following an Event of Default.**  Beneficiary may elect to treat as Personalty any Property which is intangible or which can be severed from the Land or Improvements without causing structural damage.  Beneficiary may dispose of any Personalty separately from the sale of real property, in any manner permitted by the UCC or any other Applicable Law.  Any proceeds of any such disposition shall not cure any Event of Default or reinstate any Secured Obligation.  Beneficiary may choose to dispose of some or all of the Property which consists solely of real property in any manner then permitted by Applicable Law.  To the extent permitted by Applicable Law, Trustee or Beneficiary may also or alternatively choose to dispose of some or all of the Property, in any combination consisting of both real and personal property, together in one sale to be held in accordance with the law and procedures applicable to real property, as permitted by the UCC.  Grantor agrees that such a sale of Personalty together with real property constitutes a commercially reasonable sale of the personal property.  For purposes of the Power of Sale, either a sale of real property alone under the Power of Sale, or, to the extent permitted by Applicable Law, a sale of both real and personal property together under the Power of Sale, together in accordance with the UCC, will sometimes be referred to as a "Non-Judicial Foreclosure Sale."  Before any Non-Judicial Foreclosure Sale, Beneficiary or Trustee must give such notice of default and election to sell as may then be required by law.  When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Beneficiary or Trustee, as required by Applicable Law, may sell the Property being sold at a public auction to be held at the time and place specified in the notice of sale.  Neither Beneficiary nor Trustee have any obligation to make demand on Grantor before any Non-Judicial Foreclosure Sale.  From time to time in accordance with then Applicable Law, Trustee may (and in any event at Beneficiary's request Trustee must), postpone any Non-Judicial Foreclosure Sale by public announcement at the time and place noticed for that sale.  Trustee or Beneficiary, as required by Applicable Law, shall execute and deliver to any purchaser(s) a deed(s) or bill(s) of sale conveying the Property being sold without any covenant or warranty whatsoever, express or implied.  The recitals in any such deed(s) or bill(s) of sale of any matters or facts, including any facts bearing upon the regularity or validity of any Non-Judicial Foreclosure Sale, will be conclusive proof of their truthfulness. Any such deed(s) or bill(s) of sale shall be conclusive against all Persons as to the facts recited in it.  If the Land is located in more than one county, then to the extent permitted by Applicable Law, a judicial or non-judicial foreclosure sale of the

Property may be maintained in any one or more of those counties. If the Property consists of more than one lot, parcel or item of property, Trustee, in consultation with Beneficiary may: (i) designate the order in which the lots, parcels and/or items shall be sold or disposed of or offered for sale or disposition; and (ii) elect to dispose of the lots, parcels and/or items through a single consolidated sale or disposition to be held or made under the Power of Sale, or in connection with judicial proceedings, or by virtue of a Judgment and decree of foreclosure and sale; or through two or more such sales or dispositions; or in any other manner (including a Non-Judicial Foreclosure Sale) Trustee, in consultation with Beneficiary may deem to be appropriate in compliance with Applicable Law (any such sale or disposition, a "<u>Foreclosure Sale;</u>" any two or more, "<u>Foreclosure Sales</u>"). If it chooses to have more than one Foreclosure Sale, Beneficiary at its option may cause the Foreclosure Sales to be held simultaneously or successively, on the same day, or on such different days and at such different times and in such order as it may deem to be in its best interests. No Foreclosure Sale will terminate or affect the Lien of this Deed of Trust on any part of the Property which has not been sold, until all of the Secured Obligations have been paid in full. At any Foreclosure Sale, any person, including Grantor, Beneficiary, Secured Parties or to the extent permitted by Applicable Law, Trustee, may bid for and acquire the Property or any part of it to the extent permitted by then Applicable Law. Instead of paying cash for that property, Beneficiary or Secured Parties may settle for the purchase price by crediting the sales price of the Property against the Secured Obligations, unless Applicable Law mandates a specific order of application, in which event payments and collections will be applied as mandated by Applicable Law. Any such credit, and all other proceeds of any Foreclosure Sale shall be applied to the Secured Obligations in any order Beneficiary may choose in accordance with Applicable Law.

22.    <u>Additional Rights</u>. In addition to the rights and powers given to Beneficiary under this Deed of Trust, Beneficiary shall have all such other rights both in law and equity for collection of the indebtedness secured hereby as it would have but for this Deed of Trust.

23.    <u>Guarantor and/or Non-Obligor Provisions.</u> (a) Guarantor and/or Non-Obligor authorize Trustee, Beneficiary and Secured Parties to perform any of the following acts at any time, all without notice to Guarantor and/or Non-Obligor and without affecting the rights of Trustee, Beneficiary or Secured Parties or the obligations of Guarantor and/or Non-Obligor under this Deed of Trust: (i) alter any terms of the MCA or any part of it, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, replacing an index rate used to calculate or increasing or decreasing the rate of interest on, the MCA or any part of it or amending and making any technical, administrative, consequential or other changes to the CA; (ii) take and hold security for the CA, accept additional or substituted security for the CA, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security; (iii) apply any security now or later held for the MCA in any order that Trustee, Beneficiary and Secured Parties may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale; (iv) release Obligor/Borrower of its liability for the MCA or any part of it; (v) substitute, add or release any one or more guarantors or endorsers of the CA; and (vi) extend other credit to Obligor/Borrower, and may take and hold security for the credit so extended, whether or not such security also secures the CA.

(b)    Guarantor and/or Non-Obligor waive: (i) any right to require Trustee, Beneficiary or Secured Parties to proceed against Obligor/Borrower, proceed against or exhaust any security held from Obligor/Borrower, or pursue any other remedy in Trustee's, Beneficiary's and Secured Parties power to pursue; (ii) any defense based on any legal disability of Obligor/Borrower, any discharge or limitation of the liability of Obligor/Borrower to Trustee, Beneficiary or Secured Parties, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that the obligations of Guarantor and/or Non-Obligor exceed or are more burdensome than those of Obligor/Borrower; (iii) all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Deed of Trust and of the existence, creation, or incurring of new or additional indebtedness of Obligor/Borrower, and demands and notices of every kind; (iv) any defense based on or arising out of any defense that Obligor/Borrower may have to the payment or performance of the MCA or any part of it; and (v) until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that Trustee, Beneficiary or Secured Parties may have against Obligor/Borrower, and all rights to participate in any security now or later to be held by Trustee, Beneficiary or Secured Parties for the CA.

(c)    Guarantor and/or Non-Obligor waive all rights and defenses that Guarantor and/or Non-Obligor may have because the MCA may be secured by real property other than the Property hereby encumbered. This means, among other things: (i) Trustee, Beneficiary and Secured Parties may collect from Guarantor and/or Non-Obligor (including enforcing this Deed of Trust against Guarantor and/or Non-Obligor) without first foreclosing on any real or personal property collateral securing the CA; and (ii)

if Beneficiary forecloses on any real property collateral securing the CA: (A) the amount of the MCA may be reduced only by the price for which that Collateral is sold at the foreclosure sale, even if the Collateral is worth more than the sale price, and (B) Trustee, Beneficiary and Secured Parties may collect from Guarantor and/or Non-Obligor (including enforcing this Deed of Trust against Guarantor and/or Non-Obligor) even if Trustee, Beneficiary or Secured Parties, by foreclosing on the real property collateral, has destroyed any right Guarantor and/or Non-Obligor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor and/or Non-Obligor may have because the MCA may be secured by real property other than the Property.

(d)     Guarantor and/or Non-Obligor waive any right or defense it may have at law or equity, to a fair market value hearing or action to determine a deficiency Judgment after a foreclosure of any real property other than the Property hereby encumbered.

(e)     Guarantor and/or Non-Obligor are solely responsible for keeping informed of the financial condition and business operations of Borrower and all other circumstances affecting the ability of Borrower to pay and perform Borrower's obligations to Trustee, Beneficiary and Secured Parties, and agrees that Trustee, Beneficiary and Secured Parties will have no duty to disclose to Guarantor and/or Non-Obligor any information which Trustee, Beneficiary or Secured Parties may receive about the financial condition, business operations, or any other circumstances bearing on the ability of Borrower to perform.

(f)     No provision or waiver in this Deed of Trust shall be construed as limiting the generality of any other provision or waiver contained in this Deed of Trust or the Guaranty.

24.     **Notices.** All notices, approvals, consents, and other communications, under this Deed of Trust ("Notices") must be given in accordance with and will be subject to the terms and provisions of the CA. Notices must be mailed or delivered, if to Grantor, to the address adjacent Grantor's signature below; if to Trustee, to the address in the first paragraph of this Deed of Trust; if to Beneficiary or Lender, to 14767 N. Outer 40 Rd., Suite 400, Chesterfield, MO 63017, Attention: Loan Operations; if to Secured Parties other than Lender, c/o Rabobank, 245 Park Avenue, New York, NY 10167, Attention: Customer Service Representative; and in the case of any other Person, to the address designated by that Person in a notice to Grantor, Beneficiary, and Lender.

25.     **Request for Notice.** Grantor requests that a copy of any notice of default and any notice of sale be mailed to it at the address specified adjacent to its signature below.

26.     **Trustee and Beneficiary.** Without affecting the personal liability of any Person, including Grantor and Obligor/Borrower, for the payment of the Secured Obligations or the Lien of this Deed of Trust on the remainder of the Property for the unpaid amount of the Secured Obligations: (a) Beneficiary and Secured Parties may from time to time and without notice: (i) release any Person liable for payment of any Secured Obligation; (ii) extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligation; (iii) accept additional real or personal property of any kind as security for any Secured Obligation, whether evidenced by deeds of trust, Mortgages, Security Agreements or any other instruments of security; or (iv) alter, substitute or release any property securing the Secured Obligations; and (b) Trustee may perform any of the following acts when requested to do so by Beneficiary or a Secured Party in writing: (i) consent to the making of any plat or map of the Property or any part of it; (ii) join in granting any easement or creating any restriction affecting the Property; (iii) join in any subordination or other agreement affecting this Deed of Trust or the Lien of it; or (iv) reconvey the Property or any part of it without any warranty.

27.     **Exculpation of Trustee and Beneficiary.** None of Trustee, Beneficiary or Secured Parties will be directly or indirectly liable to Grantor or any other Person as a consequence of any of the following: (a) the exercise of or failure to exercise any rights, remedies or powers granted to it in this Deed of Trust; (b) any failure or refusal to perform or discharge any obligation or liability of Grantor under any agreement related to the Property or under this Deed of Trust; or (c) any loss sustained by Grantor or any third party resulting from any failure to lease the Property or from any other act or omission in managing the Property after an Event of Default, unless the loss is caused by the gross negligence, willful misconduct or bad faith of Trustee, Beneficiary or Secured Parties, respectively. GRANTOR HEREBY EXPRESSLY WAIVES AND RELEASES ALL LIABILITY OF THE TYPES DESCRIBED ABOVE, AND AGREES THAT NO SUCH LIABILITY BE ASSERTED AGAINST OR IMPOSED UPON TRUSTEE, BENEFICIARY OR ANY SECURED PARTY.

28.     **Substitution of Trustee.** Beneficiary may substitute a successor to any Trustee named in or acting under this Deed of Trust in any manner now or later to be provided at Applicable Law.

**29.** **Waiver of Dower, Homestead, and Distributive Share.** Grantor relinquishes all right of dower and waives all right of homestead and distributive share in and to the Property. Grantor waives any right of exemption as to the Property.

**30.** **Waiver of Certain Other Laws.** To the full extent Grantor may do so, Grantor agrees that Grantor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for appraisement, valuation, stay, extension or redemption, and Grantor, for Grantor, and its representatives, successors and assigns, and for any and all Persons ever claiming any interest in the Property, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, or notice of election to mature or declare due the whole of the Secured Obligations in the event of foreclosure of the Lien created by this Deed of Trust.

**31.** **Reconveyance.** When all Secured Obligations have been paid in full and the Hedging Agreements have been terminated, Beneficiary will cause Trustee to execute and deliver an instrument reconveying the Property, or so much of it as is then held under this Deed of Trust, without warranty to the Person or Persons legally entitled to it. In the reconveyance, the grantee may be described as "the Person or Persons legally entitled thereto," and the recitals of any matters or facts shall be conclusive proof of their truthfulness. Trustee, Beneficiary and Secured Parties will have no duty to determine the rights of Persons claiming to be rightful grantees of any reconveyance of the Property.

**32.** **Additional Provisions.** The Secured Obligation Documents state all of the terms and conditions of the parties' agreement regarding the matters mentioned in or incidental to this Deed of Trust. The Secured Obligation Documents also grant further rights to Beneficiary and Secured Parties and contain further agreements and affirmative and negative covenants by Grantor which apply to this Deed of Trust and to the Property.

**33.** **Collateral Agency Agreement.** This Deed of Trust is subject to the terms of the collateral agency agreement between the Secured Parties (the "Collateral Agency Agreement").

**34.** **Entire Agreement.** This Deed of Trust and the other Secured Obligation Documents collectively: (i) represent the sum of the understandings and agreements between Beneficiary, Secured Parties and Grantor concerning this credit; (ii) replace any prior oral or written agreements between Beneficiary, Secured Parties and Grantor concerning this credit; and (iii) are intended by Beneficiary, Secured Parties and Grantor as the final, complete and exclusive statement of the terms agreed to by them. In the event of any conflict between this Deed of Trust and any other agreements required by this Deed of Trust, this Deed of Trust will prevail.

**35.** **Other Acts.** Grantor shall cooperate with Beneficiary for the purposes of, and perform all acts which may be necessary or advisable to perfect any Lien provided for in this Deed of Trust or to carry out the intent of this agreement. Promptly (but in no event more than ten days) after request by Beneficiary, Grantor will execute, acknowledge and deliver any document which Beneficiary deems necessary or advisable for these purposes, and will, on demand, pay any expenses incurred by Beneficiary in the preparation, execution and filing of any such documents.

**36.** **No Waiver or Cure.** Each waiver by Trustee, Beneficiary or Secured Parties must be in writing, and no waiver is to be construed as a continuing waiver. No waiver is to be implied from any delay or failure by Trustee, Beneficiary or Secured Parties to take action on account of any default of Grantor. Consent by Trustee, Beneficiary or Secured Parties to any act or omission by Grantor must not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Trustee's, Beneficiary's or Secured Parties' consent to be obtained in any future or other instance. The exercise by Trustee, Beneficiary or Secured Parties of any right or remedy under this Deed of Trust or the other Secured Obligation Documents or under Applicable Law, shall not: cure or waive a breach, Event of Default or notice of default under this Deed of Trust or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed and all other defaults under the Secured Obligation Documents, including any Hedging Agreements, have been cured); or impair the security of this Deed of Trust; or prejudice Trustee, Beneficiary, Secured Parties or any receiver appointed in accordance with this Deed of Trust, in the exercise of any right or remedy afforded any of them under this Deed of Trust; or be construed as an affirmation by Beneficiary or Secured Parties of any tenancy, lease or option, or a subordination of the Lien of this Deed of Trust.

**37.** **Waivers.** Grantor waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to require upon foreclosure sales of assets in a particular order. Grantor waives presentment, demand, protest, notice of protest and notice of dishonor and waives all exemptions as to the Secured Obligations. Each successor and assign of Grantor,

including any holder of a Lien subordinate to this Deed of Trust, by acceptance of its interest or Lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

38.     **Joint and Several Obligations.** If Grantor consists of more than one Person, each Grantor (a) acknowledges and undertakes, together with the other Grantors, joint and several liability for the indebtedness, liabilities and obligations of Grantor under this Deed of Trust; (b) acknowledges that this Deed of Trust is the independent and several obligation of each Grantor and may be enforced against each Grantor separately, whether or not enforcement of any right or remedy hereunder has been sought against any other Grantor; and (c) agrees that its liability hereunder and under any other Secured Obligation Document shall be absolute, unconditional, continuing and irrevocable.    GRANTOR EXPRESSLY WAIVES ANY REQUIREMENT THAT BENEFICIARY OR SECURED PARTIES EXHAUST ANY RIGHT, POWER OR REMEDY AND PROCEED AGAINST THE OTHER GRANTORS UNDER THIS DEED OF TRUST, OR ANY OTHER SECURED OBLIGATION DOCUMENTS, OR AGAINST ANY OTHER PERSON UNDER ANY GUARANTY OF, OR SECURITY FOR, ANY OF THE SECURED OBLIGATIONS.

39.     **Binding Effect; Successors and Assigns.** The Secured Obligation Documents shall inure to the benefit of and shall be binding upon the parties and their respective successors and assigns; provided that Grantor shall not assign its rights or obligations hereunder without Secured Parties' consent.  Beneficiary and Secured Parties may transfer all or any portion of its rights under the Secured Obligation Documents to any other Person.  Beneficiary and Secured Parties may disclose to any actual or proposed transferee any information that Grantor has delivered to Beneficiary and Secured Parties in connection with the negotiation of this Deed of Trust or pursuant to the Secured Obligation Documents; and Grantor shall cooperate fully with Beneficiary and Secured Parties in providing that information to any actual or proposed transferee.

40.     **Governing Law.** This Deed of Trust shall be governed exclusively by the Applicable Laws of the State of North Carolina (the "Governing Law State") without regard or reference to its conflict of laws principles.  Grantor understands that the laws of the Governing Law State may differ from the laws of the state where Grantor resides or otherwise is located or where the Property is located.  However, Grantor understands, agrees and acknowledges that (a) this Deed of Trust and the Secured Obligation Documents have significant and substantial contacts with the Governing Law State, (b) it is convenient to Grantor and Lender to select the law of the Governing Law State to govern this Deed of Trust and the transactions evidenced hereby, (c) the transactions evidenced by the MCA and this Deed of Trust bear a reasonable connection to the laws of the Governing Law State, (d) the choice of the internal laws of the Governing Law State was made for good and valid reasons, and (e) the choice of the Governing Law State constitutes good and valuable consideration for Secured Parties to enter into the Secured Obligation Documents and Secured Parties have entered into the Secured Obligation Documents in reliance on this choice.

41.     **JURISDICTION AND VENUE.**    GRANTOR IRREVOCABLY AGREES THAT, AT THE OPTION OF BENEFICIARY, ALL ACTIONS, PROCEEDINGS OR COUNTERCLAIMS ARISING OUT OF OR RELATING TO THIS DEED OF TRUST OR ANY OTHER TRANSACTION DOCUMENT WILL BE LITIGATED IN THE IOWA DISTRICT COURT FOR BLACK HAWK COUNTY, IOWA, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF IOWA. GRANTOR IRREVOCABLY CONSENTS TO SERVICE, JURISDICTION, AND VENUE OF THOSE COURTS FOR ALL SUCH ACTIONS, PROCEEDINGS AND COUNTERCLAIMS AND WAIVES ANY OTHER VENUE TO WHICH IT MIGHT BE ENTITLED BY VIRTUE OF DOMICILE, HABITUAL RESIDENCE OR OTHERWISE.

42.     **Miscellaneous.** This Deed of Trust may be executed in counterparts, each of which will be an original and all of which together are deemed one and the same instrument.  If Grantor is comprised of multiple Persons, any Person comprising Grantor is hereby authorized to bind all parties comprising Grantor.  Beneficiary or Secured Parties may, at any time and without notice, waive any prior requirement that requests, authorizations, or other actions be taken only by a Designated Person.  Time is of the essence of this Deed of Trust.  Each Party has participated in negotiating and drafting this Deed of Trust, so if an ambiguity or a question of intent or interpretation arises, this Deed of Trust is to be construed as if the parties had drafted it jointly, as opposed to being construed against a Party because it was responsible for drafting one or more provisions of this Deed of Trust.  Beneficiary is authorized to execute any other documents or take any other actions necessary to effectuate this Deed of Trust and the consummation of the transactions contemplated herein.  This Deed of Trust may not be amended, changed, modified, altered or terminated without the prior written consent of Beneficiary and Secured Parties.  Any provision of any Secured Obligation Document which is prohibited or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of that Secured Obligation Document or affecting the validity or enforceability of that provision in any other jurisdiction; except that if such provision relates to the payment of any monetary sum,

then Beneficiary or Secured Parties may, at its option, declare all Secured Obligations immediately due and payable. No merger shall occur as a result of Beneficiary's or Secured Parties' acquiring any other estate in or any other Lien on the Property. All rights and remedies under this Deed of Trust and the Secured Obligation Documents are cumulative, and the exercise of any one or more of them does not constitute an election of remedies.

43. <u>INDEMNIFICATION.</u> GRANTOR SHALL DEFEND, INDEMNIFY AND HOLD TRUSTEE, BENEFICIARY AND SECURED PARTIES AND THEIR OFFICERS, DIRECTORS, EMPLOYEES, PARTNERS, AGENTS AND ATTORNEYS (THE "<u>INDEMNIFIED PERSONS</u>") HARMLESS AGAINST ANY AND ALL LOSSES OF ANY KIND OR NATURE WHATSOEVER THAT MAY BE IMPOSED ON, INCURRED BY, OR ASSERTED AGAINST THE INDEMNIFIED PERSONS (A) ARISING OUT OF OR RESULTING FROM THE VIOLATION OF ANY ENVIRONMENTAL LAW; OR (B) ARISING OUT OF CLAIMS ASSERTED AGAINST THE INDEMNIFIED PERSONS AS A RESULT OF TRUSTEE, BENEFICIARY OR SECURED PARTIES BEING PARTY TO THIS DEED OF TRUST OR THE TRANSACTIONS CONSUMMATED PURSUANT TO THIS DEED OF TRUST; except that Grantor shall have no obligation to an Indemnified Person under this section with respect to Losses resulting from the gross negligence or willful misconduct of that Indemnified Person as determined by a court of competent jurisdiction. If and to the extent that an Indemnity is unenforceable for any reason, Grantor shall be obligated to make the maximum contribution to the payment and satisfaction thereof which is permissible under Applicable Law. THE PROVISIONS OF ALL INDEMNITIES SHALL SURVIVE THE TERMINATION OF THIS DEED OF TRUST.

44. <u>WAIVER OF TRIAL BY JURY.</u> GRANTOR AND, BY ACCEPTANCE HEREOF, BENEFICIARY (A) COVENANT AND AGREE NOT TO ELECT A TRIAL BY JURY IN ANY ACTION OR PROCEEDING FOR THE RESOLUTION OF ANY CONTROVERSY OR CLAIM THAT ARISES OUT OF OR RELATES TO: (I) THIS DEED OF TRUST; OR (II) ANY SECURED OBLIGATION DOCUMENT, WHETHER ARISING IN CONTRACT, TORT OR BY STATUTE (INDIVIDUALLY AND COLLECTIVELY, A "CONTROVERSY OR CLAIM"); AND, (B) TO THE EXTENT PERMITTED BY APPLICABLE LAW, WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY CONTROVERSY OR CLAIM TO THE EXTENT SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THE PROVISIONS OF THIS SECTION ARE GIVEN KNOWINGLY AND VOLUNTARILY, AND ARE A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THE SECURED OBLIGATION DOCUMENTS.

45. <u>Future Advances - Additional Provisions.</u> Notwithstanding any term or provision to the contrary in the Transaction Documents, this Deed of Trust secures future advances, provided nothing contained herein will obligate Lender to make any advances to or otherwise extend credit to or for the benefit of Grantor or any other person. The terms and conditions under which any advances to or other extensions of credit to or for the benefit of Grantor or any other person may be made by Lender are set forth in one or more of the other Transaction Documents evidencing or entered into with respect to the Secured Obligations; and those terms and conditions may permit the maximum amount available under some or all of the Secured Obligations to be borrowed and repaid by full or partial payments and from time to time reborrowed/repaid/reborrowed (i.e., decrease or increase from time to time). The other Transaction Documents, or one or more of them, set out the period within which any and all future advances or other extensions of credit may be made and obligations incurred under the Secured Obligations, but in no event will such period exceed 30 years from the date of this Deed of Trust. The maximum principal amount of the Secured Obligations, including present and future advances and obligations, that may be secured by this Deed of Trust at any one time is an aggregate amount up to the Maximum Amount Secured, which amount may be more than the maximum amount to which Lender has agreed to extend credit to Borrower, if Lender elects, in its discretion, to extend credit to Borrower in a principal amount in excess of the maximum amount to which Lender has agreed to extend credit to Borrower. No written instrument or notation will be required to evidence or secure any future advances and obligations hereunder. If the maximum amount secured by this Deed of Trust has not been advanced or if any obligation secured hereby is paid or is reduced by partial payment, further advances may be made and additional obligations secured by this Deed of Trust may be incurred from time to time within the time limit fixed by this Deed of Trust as set forth above, and such further advances and obligations, together with interest thereon, shall be secured by this Deed of Trust to the same extent as original advances and obligations secured hereunder. If the aggregate outstanding principal balance of the obligation or obligations secured by this Deed of Trust exceeds the maximum principal amount that may be secured by this Deed of Trust at any one time as provided above, then such amount in excess and interest on the amount in excess shall be secured by this Deed of Trust but the priority of the lien of this Deed of Trust with respect to the amount in excess shall be determined in the manner provided in North Carolina General Statutes § 45-70. All payments made, sums advanced, and expenses incurred by the beneficiary or secured creditor for the purposes described in North Carolina General Statutes § 45-70 shall be secured by this Deed of Trust and shall have priority as described in § 45-70. The provisions of this Section are intended

to comply with the North Carolina General Statutes governing Instruments to Secure Future Advances and Future Obligations, North Carolina General Statutes § 45-67, *et seq.*

46. **Waiver of Statutory Rights.** Grantor waives any rights Grantor might have or have had under North Carolina General Statute Section 26-7, et. seq. or any other similar laws. Grantor waives any rights or remedies on account of any extensions of time, releases granted or other dealings between Beneficiary and any subsequent owner of the Property as said activities are contemplated or otherwise addressed under North Carolina General Statute Section 45-45.1 or any other similar or subsequent laws.

47. **Joinder by Trustee.** Trustee will not be required to join in a modification, amendment or other change to this Deed of Trust and the lack of joinder by Trustee will not negate, impair or void this Deed of Trust.

48. **Substitution of Trustee.** Beneficiary has the irrevocable right to remove Trustee herein named at anytime without notice or cause and to appoint its successor by an instrument in writing, duly acknowledged, in such form as to entitle such written instrument to be recorded in the State of North Carolina. In the event of the death, cessation of business, termination of existence or resignation of Trustee, Beneficiary may appoint its successor by such written instrument. Any Trustee so appointed will be vested with title to the Property and will possess all the powers, duties and obligations herein conferred on Trustee in the same manner and to the same extent as though it were named herein as Trustee. Trustee will not be required to join in any change to this Deed of Trust.

49. **Power of Sale Following Event of Default.**

(a) Notwithstanding any other provision in this Deed of Trust, on the application of Beneficiary, Trustee will be obligated, and is hereby authorized and empowered, to expose at one or more sales and sell the Land and all of the other Property constituting real property through public auction for cash and the Personalty at public or private sales for cash, after first having complied with all then applicable requirements of North Carolina law relating to sales under power of sale. In connection with the foregoing, the Land and other Property constituting real property, and the Personalty may be sold separately or together, as a whole or in parts or parcels, at one or more sales conducted at different times and places. Upon such sales, Trustee will convey title to the purchaser. Beneficiary will have the right to bid at any sale through a credit bid. Trustee may require the successful bidder at any sale to deposit immediately with Trustee cash or certified funds in an amount not to exceed 5% of the bid. Trustee may reject any bid if the deposit is not immediately made and Trustee may declare the next highest bidder to be the purchaser. Such deposit shall be refunded in case of an upset bid or if the Trustee is unable to convey the portion of the Property so sold to the bidder because the power of sale has been terminated in accordance with applicable law. If the purchaser fails to comply with its bid, the deposit may, at the option of the Trustee be retained and applied to any damages incurred by reason of such default (including, without limitation, liability to the extent that the final sales price is less than the bid plus all the costs of resale as provided in N.C. Gen. Stat. Section 45-21.30, as amended) or may be deposited with Clerk of Superior Court. In all other cases, the deposit shall be applied to the purchase price. If the Personalty are sold hereunder, it need not be at the place of sale. The published notice of public sale, however, will state the time and place where such Personalty may be inspected prior to sale. In the event a proceeding to exercise the power of sale contained herein is begun but not completed, Grantor will pay all costs and expenses incurred by Trustee and a partial commission computed as follows: one-fourth of the hereinafter-specified commission prior to Trustee's issuance of a notice of hearing on the right to foreclose and one-half of the hereinafter-specified commission after the issuance of such notice and prior to sale. The foregoing costs and expenses, and partial commission, may be paid by Beneficiary on behalf of Grantor but, in any event, will be secured by this Deed of Trust.

(b) The provisions above will in no way be construed to limit the powers of sale or restrict the discretion Trustee may have under the provisions of Article 2A of Chapter 45 of the North Carolina General Statutes, as amended, or such other laws as Beneficiary or Trustee may be proceeding under, including the laws relating to judicial foreclosure if such is determined to be either the necessary or appropriate process to follow in foreclosing on the lien of this Deed of Trust.

(c) Unless a different order of application is mandated under applicable laws, proceeds derived from any sale will be applied to pay, first, costs and expenses, including Trustee's commission in the amount of five percent in the event of sale and Trustee's attorneys' fees; second, to taxes and public and private assessments due and unpaid, if Trustee deems it appropriate to do so or Trustee may sell the Property subject to such taxes and assessments; third, to the payment of the Secured Obligations and any other Indebtedness and other Secured Obligations secured by this Deed of Trust in such order as may be directed by Beneficiary, in its discretion in compliance with Applicable Law; and fourth, the balance, if any, to the person or persons entitled

thereto, or if a conflict exists as to the person or persons entitled thereto, to the Clerk of Superior Court of the county in which the foreclosure sale was held.

  (d)  In any foreclosure sale or sales, Trustee or Beneficiary will have the right to sell or cause to be sold the Property, or parts thereof or interests therein, subject to any liens, security interests and other encumbrances and rights which are subordinate to the lien and security interest hereof, including any Leases which may be subordinate hereto.

  **50.**  **Reconveyance.** Notwithstanding any other provision of this Deed of Trust, Beneficiary will, upon written request of Grantor and at Grantor's costs and expense, if permitted by applicable law, cause Trustee to execute and deliver to Grantor a reconveyance or satisfaction of this Deed of Trust. Unless earlier cancelled as provided in the preceding sentence and without extending the due date of any payment and the date of performance of any Secured Obligation, and assuming no other provision in this Deed of Trust specifically provides to the contrary, the period of this Deed of Trust (including its lien and security interest) and the period by which all of the terms and conditions of this Deed of Trust are required to be finally and fully performed will be a date forty-five (45) years from the date of this Deed of Trust.

  Grantor is signing and delivering this Deed of Trust under seal effective as of the day and year first written above.

    (Signature Pages to Follow)

**GRANTORS**:

Address for Notices:
407 Lumber Lane
Independence, VA 24348
[SEAL]

**WESCOR FARM OPERATIONS, LLC,** a Virginia limited liability company

By: _____
   Joseph Randall Eller
   Member/Manager

Address for Notices:
192 Summer Street
Jefferson, NC 28640

_____ [SEAL]
**JOSEPH RANDALL ELLER,** an individual

Address for Notices:
604 W. Main Street
Independence, VA 24348-4426
[SEAL]

**GRAYSON FARM & LEASING, INC.,** a Virginia corporation

By: _____
   Joseph Randall Eller
   President

Address for Notices:
604 W. Main Street
Independence, VA 24348-4426
[SEAL]

**MOUNTAIN TOP HOLDING OF VIRGINIA/NORTH CAROLINA, L.L.C.,** a Virginia limited liability company

By: _____
   Joseph Randall Eller
   Member/Manager

Address for Notices:
604 W. Main Street
Independence, VA 24348-4426
[SEAL]

**DD&R LAND HOLDINGS, LLC,** a Virginia limited liability company

By: _____
   Joseph Randall Eller
   Member/Manager

Address for Notices:
604 W. Main Street
Independence, VA 24348-4426
[SEAL]

**NDRD LAND HOLDINGS, LLC,** a Virginia limited liability company

By: _____
   Joseph Randall Eller
   Member/Manager

Address for Notices:
604 W. Main Street
Independence, VA 24348-4426
[SEAL]

**D&R LAND HOLDINGS, LLC**, a Virginia limited liability company

By: _____

Joseph Randall Eller
Member/Manager

Address for Notices:
604 W. Main Street
Independence, VA 24348-4426
[SEAL]

**TIMBER & LOGGING, LLC**, a North Carolina limited liability company

By: _____

Joseph Randall Eller
Manager

Address for Notices:
604 W. Main Street
Independence, VA 24348-4426
[SEAL]

**ELK CREEK LAND HOLDINGS, LLC**, a North Carolina limited liability company

By: _____

Joseph Randall Eller
Manager

Eller MCA 2024
Deed of Trust, Assignment of Rents and Security Agreement

18

COMMONWEALTH OF VIRGINIA )

COUNTY OF Grayson ) SS
)

    I, the undersigned Notary Public of the County and State aforesaid, certify that **JOSEPH RANDALL ELLER** personally appeared before me this day and acknowledged that he is a Member Manager of WescorFarm Operations, LLC, a Virginia limited liability company, and that by authority duly given and as and as an act of such entity, he signed the foregoing instrument in its name on its behalf as its act and deed. Witness my hand and Notarial stamp or seal, this 24 day of January, 2024.

Date: 1-24-24

           _Sandra Chandler Blevins_
           (official signature of Notary)
           Sandra Chandler Blevins Notary Public
           (Notary's printed or typed name)

           My commission expires: 4/30/25

(Official Seal)

COMMONWEALTH OF VIRGINIA )

COUNTY OF Grayson ) SS
)

    I, the undersigned Notary Public of the County and State aforesaid, certify that **JOSEPH RANDALL ELLER** personally appeared before me this day and signed the foregoing instrument. Witness my hand and Notarial stamp or seal, this 24 day of January, 2024.

Date: 1-24-24

           _Sandra Chandler Blevins_
           (official signature of Notary)
           Sandra Chandler Blevins Notary Public
           (Notary's printed or typed name)

           My commission expires: 4/30/25

(Official Seal)

Eller MCA 2024
Deed of Trust, Assignment of Rents and Security Agreement

19

COMMONWEALTH OF VIRGINIA       )
                                      ) SS

COUNTY OF Grayson              )

       I, the undersigned Notary Public of the County and State aforesaid, certify that **JOSEPH RANDALL ELLER** personally appeared before me this day and acknowledged that he is the President of Grayson Farm & Leasing, Inc., a Virginia corporation, and that by authority duly given and as and as an act of such entity, he signed the foregoing instrument in its name on its behalf as its act and deed. Witness my hand and Notarial stamp or seal, this 24 day of January, 2024.

Date: 1-24-24

Sandra Chandler Blevins
(official signature of Notary)
Sandra Chandler Blevins, Notary Public
(Notary's printed or typed name)

My commission expires: 4/30/25

(Official Seal)

COMMONWEALTH OF VIRGINIA       )
                                      ) SS

COUNTY OF Grayson              )

       I, the undersigned Notary Public of the County and State aforesaid, certify that **JOSEPH RANDALL ELLER** personally appeared before me this day and acknowledged that he is a Member Manager of Mountain Top Holding of Virginia/North Carolina, L.L.C., a Virginia limited liability company, and that by authority duly given and as and as an act of such entity, he signed the foregoing instrument in its name on its behalf as its act and deed. Witness my hand and Notarial stamp or seal, this 24 day of January, 2024.

Date: 1-24-24

Sandra Chandler Blevins
(official signature of Notary)
Sandra Chandler Blevins, Notary Public
(Notary's printed or typed name)

My commission expires: 4/30/25

(Official Seal)

Eller MCA 2024
Deed of Trust, Assignment of Rents and Security Agreement

COMMONWEALTH OF VIRGINIA       )
                                      ) SS
COUNTY OF Grayson               )

    I, the undersigned Notary Public of the County and State aforesaid, certify that **JOSEPH RANDALL ELLER** personally appeared before me this day and acknowledged that he is a Member Manager of DD&R Land Holdings, LLC, a Virginia limited liability company, and that by authority duly given and as and as an act of such entity, he signed the foregoing instrument in its name on its behalf as its act and deed. Witness my hand and Notarial stamp or seal, this 24 day of January, 2024.

Date: 1-24-24

                    _Sandra Chandler Blevins_
                    (official signature of Notary)
                    _Sandra Chandler Blevins_, Notary Public
                    (Notary's printed or typed name)

(Official Seal)

                    My commission expires: 4/30/25

---

COMMONWEALTH OF VIRGINIA       )
                                        ) SS
COUNTY OF Grayson               )

    I, the undersigned Notary Public of the County and State aforesaid, certify that **JOSEPH RANDALL ELLER** personally appeared before me this day and acknowledged that he is a Member Manager of NDRD Land Holdings, LLC, a Virginia limited liability company, and that by authority duly given and as and as an act of such entity, he signed the foregoing instrument in its name on its behalf as its act and deed. Witness my hand and Notarial stamp or seal, this 24 day of January, 2024.

Date: 1-24-24

                    _Sandra Chandler Blevins_
                    (official signature of Notary)
                    _Sandra Chandler Blevins_, Notary Public
                    (Notary's printed or typed name)

(Official Seal)

                    My commission expires: 4/30/25

Eller MCA 2024
Deed of Trust, Assignment of Rents and Security Agreement

1402 0357

COMMONWEALTH OF VIRGINIA )
) SS
COUNTY OF Grayson )

I, the undersigned Notary Public of the County and State aforesaid, certify that **JOSEPH RANDALL ELLER** personally appeared before me this day and acknowledged that he is a Member Manager of D&R Land Holdings, LLC, a Virginia limited liability company, and that by authority duly given and as and as an act of such entity, he signed the foregoing instrument in its name on its behalf as its act and deed. Witness my hand and Notarial stamp or seal, this 24 day of January, 2024.

Date: 1-24-24

_(official signature of Notary)_
Sandra Chandler Blevins, Notary Public
(Notary's printed or typed name)

(Official Seal)

My commission expires: 4/30/25

COMMONWEALTH OF VIRGINIA )
) SS
COUNTY OF Grayson )

I, the undersigned Notary Public of the County and State aforesaid, certify that **JOSEPH RANDALL ELLER** personally appeared before me this day and acknowledged that he is a Manager of Timber & Logging, LLC, a North Carolina limited liability company, and that by authority duly given and as and as an act of such entity, he signed the foregoing instrument in its name on its behalf as its act and deed. Witness my hand and Notarial stamp or seal, this 24 day of January, 2024.

Date: 1-24-24

_(official signature of Notary)_
Sandra Chandler Blevins, Notary Public
(Notary's printed or typed name)

(Official Seal)

My commission expires: 4/30/25

Eller MCA 2024
Deed of Trust, Assignment of Rents and Security Agreement

22

COMMONWEALTH OF VIRGINIA          )
                                  ) SS
COUNTY OF Grayson                 )

    I, the undersigned Notary Public of the County and State aforesaid, certify that **JOSEPH RANDALL ELLER** personally appeared before me this day and acknowledged that he is a Manager of Elk Creek Land Holdings, LLC, a Virginia limited liability company, and that by authority duly given and as and as an act of such entity, he signed the foregoing instrument in its name on its behalf as its act and deed. Witness my hand and Notarial stamp or seal, this 24 day of January, 2024.

Date: 1-24-24

        _Sandra Chandler Blev_
        (official signature of Notary)

        Sandra Chandler Blevins, Notary Public
        (Notary's printed or typed name)

(Official Seal)

My commission expires: 4/30/25

**EXHIBIT A**

DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

**Legal Description of Real Estate**

Ashe, Alleghany, Surry and Yadkin Counties, North Carolina

Being all those tracts and parcels of land set out and described in the following Deed Books and Pages of the Ashe County, N.C. Register of Deed office to which Deed Books and Pages referenced is made for more specific descriptions:

**Tract One**: **PIN No. 18326-061 (Description found in Deed Book 323, Page 1911 – 1.869 Acres) (Ashe County)**

Being a portion of the property as described in Deed Book 242 Page 1882, which is in the name of Chancey C. Roark, bounded by the lands of, formerly of, or in possession of the following: on the north by N.C.S.R. #1542, on the east by a new line through the Roark property, on the south and west by Randall Eller (243-1459); Being more particularly described as:

BEGINNING on a point in the centerline of N.C.S.R. #1542, said point being the most western corner of the Roark property and the most northern corner of the Eller property; thence with said centerline five courses: 1) thence N.35-54-52E. 38.82 feet to a point, 2) thence N.42-41-22E. 50.01 feet to a point, 3) thence N.52-49-56E. 36.68 feet to a point, 4) thence N.62-24- 43E. 47.50 feet to a point, 5) thence N.67-26-25E. **108.55** feet to a point; thence with a new line S.23-57-36E., passing over a 1/2 inch rebar set at 20.00 feet, for a total distance of 364.24 feet to a 1/2 inch rebar set; thence with the southern and western lines of the Roark property and the Eller lines four courses: I) thence S.70-33-55W. 198.26 feet to an oak, said oak being N.42-44-56W. 1.47 feet from a 1/2 inch rebar set as a reference point, 2) thence N.48-46-59W. 126.51 feet to a 1/2 inch rebar set, 3) thence N.37-10-57E. 60.85 feet to a fence corner, said corner being N.33-08-35E. 0.80 feet from a 1/2 inch rebar set as a reference point, 4) thence N.49-11-03W., passing over a fence post at 137.76 feet, said post being S.37-24-41E. 0.52 feet from a 1/2 inch rebar set as a reference point, for a total distance of 172.85 feet to the BEGINNING; containing 1.869 acres as calculated by coordinate geometry, from field data gathered by Thomas Herman Company, PLLC, P.O. Box 519, Jefferson, NC 28640-0519, (336) 846-3352, P.L.S. L-2633, dated December 13, 2004. Job# 041202.

Subject to water easement as described in Deed Book 217 Page 1272.

**Tracts Two through Eleven (Ashe County)**

BEING all those certain tracts, together with rights and easements of record, and subject to such rights, agreements, easements, restrictions and liens of record as further set forth in Book 385, Pages 2367-2368, Ashe County Registry, said documents incorporated by reference as though fully set forth herein.

The specific parcel numbers being conveyed are:

| | |
|---|---|
| PIN# 18326014 - 38.281 Acres | Described in Deed Book 344, Page 481 |
| PIN# 18330132 - 1.919 Acres | Described in Deed Book 236, Page 1771 |
| PIN# 18330035 - 0.7 Acres | Described in Deed Book 251, Page 1318 |
| PIN# 18326028 - 25.979 Acres | Described in Deed Book 174, Page 2123 |
| PIN# 01365246 - 13.96 Acres | Described in Deed Book 479, Page 1300 |
| PIN# 18326030 - 12.041 Acres | Described in Deed Book 243, Page 1459 |
| PIN# 18326006 - 3.105 Acres | Described in Deed Book 243, Page 1459 |
| PIN# 18326035 - 9.675 Acres | Described in Deed Book 156, Page 1657 |

WBD (US) 4874-9636-2383v2

PIN # 18326037 - 2.29 Acres

PIN# 18326031 - 27.57 Acres          Described in Deed Book 156, Page 1657

Subject to such respective valid and existing restrictions, reservations, rights, conditions and easements as have been heretofore imposed, by recorded deed or plat, upon the property or interest therein.

The properties described above were acquired by Grantor by instrument recorded in Book 00550, Page 1696, Ashe County Registry.

## Tract Twelve: Parcel # 18330095 (Ashe County)

Bounded on the North by the lands of F.M. Jones and Cleve Fuller, on the East by the Vannoy land the land of Frank McMillan; on the South by the lands of Frank McMillan and J.W. Gambill, and on the West by the Highway and the lands of Luther Francis;

BEGINNING on a beechwood on the bank of Mill Creek, corner to Jones and with Creek S 22 ½ W 20 poles, S 23 ½ W 13 poles, S 31 W 11-2/5 poles; thence leaving Creek with Gambill, S 88 E 37 poles to a white oak, S 69 ½ E 24-1/3 poles to a sarvice, S 42 E 14-3/5 poles to a stake J.W. Gambill corner, N 50 ½ E 10 3/5 poles to a chestnut stump, N 22 E 3 poles to a stake, N 61 ½ E 20-1/3 poles to a stone, corner to McMillan and Vannoy, N 10 W 30 poles, N 22 W 2-4/5 poles to a gate post, corner to Vannoy and Eller, S 88 ½ W 15-1/5 poles to a chestnut stump, N 75 W 10-2/3 poles to a sassafras, S 82 W 9-3/5 poles to a white oak, S 82 W 46 poles, S 70 W 14 poles to a black gum, S 76 ½ W 36 poles to the Beginning, containing 39 acres, 148 poles.

Parcel # 18330095 was acquired by the Grantor by Deed recorded in Book 00549, Page 2424, Ashe County Registry.

## Tract Thirteen: Parcel # 18326039  (Ashe County)

BEING a 0.378 acre as shown as Tract 2 on plat entitled "Recombination Map for J. Randall Eller and Damon Randall Eller" recorded in Plat Book 10, Page 796, Ashe County Registry. Plat reference being hereby made for a more specific description of said property.

Parcel # 18326039 was acquired by the Grantor by Deed recorded in Book 00549, Page 2424, Ashe County Registry.

## Tract Fourteen and Fifteen:  Parcel #'s 18326026 and 18326027 (Ashe County)

BEING all the real property in Ashe County as set forth in Deed Book 1-3 at page 556 and Deed Book 0-5  at page 407, said documents incorporated by reference as though fully set out herein together with rights and easements of record, and subject to such rights, easements and restrictions of record.

Being the same property described in and conveyed by deed recorded in Book 361, Page 1136, Ashe County Registry.

Also being a portion of the property shown in Deed Book 385, Page 2367, Ashe County Registry and being further referenced as Parcel #'s 18326-026 & 18326-027 containing 26.05 acres and 33.17 acres.

This conveyance is SUBJECT TO the Life Estate of William Lee Eller as RESERVED in Book 361, Pag e 1136, Ashe County Registry.

## Tract Sixteen:  Parcel No. 09263054 001 (Ashe County)

BEING all of Lot 1 of Wild Acres Subdivision as recorded in Plat Book 6, Page 25, of the Ashe County Registry, to which recorded plat reference is hereby made for a more specific description thereof.

The above described lots is Subject to the Restrictive Covenants and Restrictions Agreement as fully set out in that certain instrument of record in the Ashe County Public Registry in Book 267, at Page 257, to which recorded reference is hereby made for a specific recital of the same.

WBD (US) 4874-9636-2383v2

The property hereinabove described was acquired by Grantor by instrument recorded in **Bk. 465, Pg. 729-731**

A Map showing the above described property is recorded in Plat Book **6** Page **25**, Ashe County Registry.

Property may be subject to a Life Estate.

## Tract Seventeen: Parcel No. 09263054 007 (Ashe County)

BEING all of Lot 7 of Wild Acres Subdivision as recorded in Plat Book 6, Page 25, of the Ashe County Registry, to which recorded plat reference is hereby made for a more specific description thereof.

The above described lots is Subject to the Restrictive Covenants and Restrictions Agreement as fully set out in that certain instrument of record in the Ashe County Public Registry in Book 267, at Page 257, to which recorded reference is hereby made for a specific recital of the same.

The property hereinabove described was acquired by Grantor by instrument recorded in **Bk. 465, Pg. 535-536**, Ashe County Registry

A Map showing the above described property is recorded in Plat Book **6** Page **25**, Ashe County Registry.

## Tract Eighteen: Parcel No. 01-365-071 (Ashe County)

TRACT ONE: BEGINNING at a coal heath and running S 30 East with the fence 5 poles to a stake, then S 21 E 20 poles to a stake; then S 22 E 20 poles to a stake where a fence joins; then S 22 E 2 poles to a stake between two Spanish Oaks, then 38 E 5-1/2 poles to a stake; then S 37 E 9 poles to a stake; then S 31-1/2 E 7-4/5 poles to a stake; then N 66-1/2 E 10 poles to a stake; then N 77-1/2 E 7 poles to a wild cherry tree; then N 84 E 9-1/5 poles to a hickory; then N 88-1/2 E 8-1/2 poles to a stake; then S 78 E 18 poles to a stake and large birch; then N 7 W 4 poles to a stake on the West side of the branch; then N 50 E 2 poles to a stake and maple on bank of the road; then N 30 W 2 poles; then N 19 W 7 poles to a stake; then N 8-1/2 W 2 poles to a stake; then N 1 E 6 poles to a stake; then N 12 W 2-2/5 poles to a stake; F.M. Jones corner; then N 21 W 7 poles to a stake and poplar; then N 7-1/2 W 3 poles to a stake; then N 9 E 2 poles to a stake; then N 19-1/2 E 6 poles to a stake; then N 7-1/2 E 1-1/5 poles to a rock set in the ground; then N 45 West 12-1/2 poles to a stake in the road; then with the road N 59 W 4 poles to a stake in the road; then N 27 W 9 poles to a stake; then N 57 W 4 poles; then N 68 W 8 poles; then N 55 W 4 poles; then N 35 W 8 poles then N 45-1/2 W 4 poles; then N 59-1/2 W 2 poles; then N 76 W 7 poles; then N 55 W 2 poles; then N 40-1/2 W 6 poles; then N 64 W 5 poles; then S 60 W 2 poles; then southwest 2 poles; then S 13 E 6 poles; then 26 E 12 poles; then S 4 E 7 poles; then S 26 W 4 poles; then S 47 W 2 poles; then S 61 W 4 poles; then S 48 W 6 poles; then S 61 W 6 poles; then S 77 W 2 poles; then N 62 W 3-3/4 poles; then S 49-1/2 W 1-1/2 poles to the BEGINNING, containing 30 acres, and 43-1/2 poles, more or less.

TRACT TWO: BEGINNING on a point in the southern line of the Clifton C. Poe and wife, Katherine Poe property as described in the Second Tract in Deed Book W-4, Page 400 and the northern line of the Ollie Black property as described in Deed Book 196 Page 1101, said point being S. 88-16-55 E. 256.13 feet from a marked oak said oak being N. 01-18-59 W. 3.77 feet from a ½-inch rebar as a reference point, said oak being the northwestern corner of said Black property, thence with the southern line of said Poe property, S. 88-16-55 E. 26.83 feet to a ½- inch rebar by a fence post; thence with the description taken from said Poe deed, N. 77-E-28- 1/2 poles to a stake; thence N 19 W. 16 poles to a stake; thence N. 11 W 20 poles to a stake; thence N. 1 W. 20 poles to a locust; thence N. 57 W 27-1/2 poles to a stake near a branch; thence N.17 W. 14 poles to a chesntut; thence N. 79 W. with a conditional fence 24 poles to a stake; thence West 9 poles with the fence to a stake; thence S. 77 W. 16 poles to a stake; thence to a poplar above the graveyard, thence with a new line, S. 33-09-24 E.1628.73 feet to the BEGINNING; containing 24 acres more or less.

TRACT THREE: BEGINNING on a stake in J. L. Jones' and John Vaught's line fence, running East 18 poles and 13 feet to W.P. Sturgill's lie; then N 28-1/2 poles to Sturgill's line; then East 16 poles to a double maple; then N 18 poles to an old ridge road; then 61 E 16 poles to a double oak; then N 4 poles to B. F. Jones' lie; then west with Jones' line 18 poles to a stake; then W 20 poles to J.W. Gambill's line and J. L. Jones line to a stake; then S 58 poles to the **BEGINNING,** containing 11 acres more or less.

WBD (US) 4874-9636-2383v2

TRACT FOUR: **BEGINNING** on a locust; thence running Southward with J. E. Gambill's line to John Vaught's line of top of a ridge; thence Northward with said Vaught's line to the corner of Lane's land; being the land bought of T.C. Bowie; thence with said Lane's line to James Gambill's line near a branch; thence southeastward up the branch in the BEGINNING, containing 50 acres, more or less.

There is EXCEPTED from the Fourth Tract above set out, approximately 11 acres of land heretofore sold to Paul Jamison, for specific description of same reference is hereby made to title deed of record in the Office of Register of Deeds of Ashe County.

Deed Ref: Book 5 3 0 , Page 1734, Ashe County Registry.

#### Tract Nineteen:  Parcel No. 3042412985  (Alleghany County)

Being a 93.537 acre tract located in Piney Creek Township as more particularly described in Deed Book 403, Page 994, Alleghany County Registry. Having a Tax Parcel ID # of 3042412985.

#### Tract Twenty:  Parcel No. 3042134681  (Alleghany County)

Being a 69.881 acre tract located in Piney Creek Township as more particularly described in Deed Book 401, Page 1108, Alleghany County Registry. Having a Tax Parcel ID # of 3042134681.

#### Tract Twenty-One:  Parcel 3042037718 (Alleghany County)

BEGINNING at an existing rebar found, in the line of Clifton A. Rector and Shirley Rector (DB 81 at Page 116, Alleghany County Registry) corner common to Elizabeth A. Lian, Trustee (DB 426 at Page 171, Alleghany County Registry); said point being S 70° 44' 47" E 123.78 feet from an existing rebar at Post (Tie Line); thence with the line of Lian N 69° 07' 30" E 169.01 feet to a point, said point being S 69° 07' 30" W 53.49 feet from an existing rebar at post (Tie Line); said point being the corner common to the new tract being conveyed this day, and property of J. Randall Eller (DB 401 at page 1108) and Lian; thence leaving the line of Lian and with the line of Eller, S 07° 29' 12" E 1057.69 feet to a new ½ inch rebar set in Eller line; thence N 89° 01' 23" W 366.65 feet to a ref nail set in East side of 50 inch white oak, corner common to Rector and Eller; thence with the new division line of Rector; N 04° 07' 37" E 984.75 feet to the point and place of BEGINNING and containing 6.134 acres, as shown on a Plat of Survey entitled "Property to be Conveyed to Randall J. Eller" drawing number 7496 by Andrews & Gentry Surveyors dated March 10, 2022 and incorporated herein by reference.

#### Tract Twenty-Two:  Parcel No. 3011-88-7819 (Alleghany County)

BEING ALL THAT  TRACT AND PARCEL OF LAND SET OUT AND DESCRIBED IN THE OFFICE OF THE REGISTER OF DEEDS OF ALLEGHANY COUNTY, N. C. IN DEED BOOK 225, PAGE 920,  TO WHICH  REFERENCE IS MADE FOR A MORE SPECIFIC DESCRIPTION. (ALSO SEE DEED BOOK 276, PAGE 462 of the Alleghany County Registry).

#### Tract Twenty-Three:  Parcel No. 497600188135 (Surry County)

Being all that tract and parcel of land set out and described in Deed Book 1256, Page 59-60 of the Surry County, N.C. Register of Deeds Office to which Deed Book and page reference is made for a more specific description of the property herein conveyed. Reference is also made to Deed Book 703, Page 923 of the Surry County Registry.

WBD (US) 4874-9636-2383v2

**Tracts Twenty-Four and Twenty-Five: Parcel Nos. 486601167205 and 486601156716 (Yadkin County)**

    <u>Tract 1</u>:     Being all of that tract or parcel designated as **Lot I containing 7.317 acres,** more or less, according to a survey and recorded plat recorded in **Plat Book 10 Page 141,** Yadkin County Registry entitled "Plat of Survey Showing Proposed Allotment of Property of Junior Niten, et. al," by Franklin G. Kinder, PLS, L-4462, dated September 24, 2007.

Also conveyed herewith and subject to the 45 ft. access easement and right of way shown along the eastern side of Lots 1 and 2 on Plat Book 10 Page 141, Yadkin County Registry, which right of way is a mutual and nonexclusive, permanent and perpetual access easement and right of way for the owners of Lot 1 (containing 7.317 acres), Lot 2 (containing 5.041 acres), and Lot 3 (containing 2.005 acres), and their heirs, successors, and assigns and shall be an appurtenance to the respective lots.

    <u>Tract 2</u>:     Being all of that tract or parcel designated as **Lot 2 containing 5.041 acres,** more or less, according to a survey and recorded plat recorded **in Plat Book 10 Page 141,** Yadkin County Registry entitled "Plat of Survey Showing Proposed Allotment of Property of Junior Niten, et. al," by Franklin G. Kinder, PLS, L-4462, dated September 24, 2007.

Also conveyed herewith and subject to the 45 ft. access easement and right of way shown along the eastern side of Lots 1 and 2 on Plat Book 10 Page 141, Yadkin County Registry, which right of way is a mutual and nonexclusive, permanent and perpetual access easement and right of way for the owners of Lot 1 (containing 7.317 acres), Lot 2 (containing 5.041 acres), and Lot 3 (containing 2.005 acres), and their heirs, successors, and assigns and shall be an appurtenance to the respective lots.