IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Statesville Division)
Civil Case No. 5:25-cv-00065

| | |
|---|---|
| RABO AGRIFINANCE LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WESCOR FARM OPERATIONS, LLC | ) |
| f/k/a WESCOR FARMING, LLC; | ) |
| JOSEPH RANDALL ELLER; DD&R | ) |
| LAND HOLDINGS, LLC; D&R LAND | ) |
| HOLDINGS, LLC and ELK CREEK | ) |
| LAND HOLDINGS, LLC | ) |
| | ) |
|     Defendants. | ) |
| | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
CONSENSUAL MOTION FOR APPOINTMENT OF RECEIVER**

Submitted by:

**WOMBLE BOND DICKINSON (US) LLP**

By:   /s/ James S. Livermon, III
       JAMES S. LIVERMON, III
       N.C. State Bar No. 26492
       555 Fayetteville Street, Suite 1100
       Raleigh, NC 27601
       Telephone: (919) 755-2148
       Facsimile: (919) 755-6048
       E-mail:charlie.livermon@wbd-us.com

*Attorneys for Rabo AgriFinance LLC*

1

Plaintiff, RABO AGRIFINANCE LLC ("Plaintiff"), by and through the undersigned counsel, hereby files this Memorandum of Law in Support of its Emergency Consensual Motion for the Appointment of Receiver (the "Motion") pursuant to Rule 66 of the Federal Rules of Civil Procedure over certain real property owned by Defendants Wescor Farming Operations, LLC f/k/a Wescor Farming, LLC ("Wescor"), Joseph Randall Eller ("Eller"), DD&R Land Holdings, LLC ("DD&R"), D&R Land Holdings, LLC ("D&R") and Elk Creek Land Holdings, LLC ("Elk Creek" and collectively herein, the "Defendants") pledged as collateral to secure payment of a debt owed to Plaintiff (collectively, the "Collateral").

## FACTUAL BACKGROUND

Rabo is an agricultural financer with a principal place of business in St. Louis, Missouri. Wescor and Eller (collectively, the "Borrowers") operated a relatively small row crop and cattle operation in northwestern North Carolina and southwestern Virginia. As set forth in the Affidavit of Jeff Hanson, a Senior Financial Restructuring Manager at Rabo, in May 2020 Plaintiff extended an operating line of credit to the Borrowers in the original amount of $10,000,000.00 that subsequently increased to $13,5000,000 (hereinafter, the "Line of Credit"). Plaintiff's Line of Credit is secured by the Borrowers' personal property. Plaintiff further extended credit to Borrowers pursuant to the Inputs Agreement in the maximum principal amount of $350,000.00 (the "Inputs Agreement" and together with the Line of Credit, the "Loans").

The Line of Credit matured on May 1, 2023, and the Borrowers defaulted under the Inputs Agreements, making the full balance of the Loans immediately due and owing. Rabo demanded full payment of the debt from the Borrowers; however, the Borrowers did not and could not pay the balance owed. As a result, Rabo engaged in protracted discussions and negotiations with the Borrowers for a structured and orderly liquidation of Rabo's collateral and ultimate payoff of the

2

Loans. The discussions resulted in Rabo and the Defendants entering into a Forbearance Agreement on January 22, 2024. As consideration for Rabo's agreement to forbear its remedies under the Forbearance Agreement, the Defendants agreed to, among other things, hire a chief restructuring officer to liquidate the remaining assets and wind down the affairs of Wescor, to pledge certain real estate listed on the attached Exhibits A and B as additional collateral for the Loans, and to develop a plan for the orderly liquidation of the newly pledged real estate collateral. Importantly for Rabo, the Defendants all agreed to the appointment of a receiver in the event the Defendants defaulted under the terms of the Forbearance Agreement.

The Defendants did, in fact, default under the Forbearance Agreement by initially failing to propose a plan of liquidation and then by failing to comply with the orderly and timely liquidation of the additional real estate collateral. To address this default, on June 4, 2024, the parties entered into a First Amendment to Forbearance Agreement whereby the Defendants were given final the opportunity to make regular payments to Rabo to pay down and eventually pay off the Loans. The First Amendment to the Forbearance agreement provided that failure to make the payments in a timely manner would be a default under the Forbearance Agreement, thereby allowing Rabo to enforce its rights and remedies, including appointing a receiver. Despite making some payments to Rabo, the Defendants ultimately defaulted under the Forbearance Agreement, prompting Rabo to terminate the agreement.

Rabo brought this diversity action seeking a money judgment of approximately $4 million and for the appointment of a receiver to take control of and liquidate its collateral to pay this debt.

## ARGUMENT

I.    **Federal Law Supports the Appointment of a Receiver**.

The United States District Court has both inherent equitable powers to appoint a receiver

under federal common law and presumed power by federal statute and rule. *See* 28 U.S.C. § 959(a) (allowing federal receivers to sue and be sued); 28 U.S.C. § 959(b) (requiring that a federal receiver manage and operate property in his possession according to the requirements of the laws of the state in which the property is situated); 28 U.S.C. § 754 (allowing federal receivers to be appointed for property situated in different districts); Fed. R. Civ. P. 66 (governing the process in which a receiver is sought); *Liberte Capital Group, LLC v. Capwill,* 462 F.3d, 543, 551 (6th Cir. 2006) (explaining that, while bankruptcy "encompasses the vast majority of cases involving receivership," "there remains a class of cases . . . otherwise falling within the federal court's jurisdiction . . . but which fall outside the statutory bankruptcy proceedings or other legislated domain" "over which federal courts may exercise their equitable powers and institute receiverships").

Federal court across the country agree that whether a federal court should appoint a receiver in a diversity action is governed by federal law. *Gilchrist v. General Elec. Capital Corp.*, 262 F.3d 295, 302 (4th Cir. 2001); *National P'ship Inv. Corp v. Nat'l Housing Development Corp.*, 153 F.3d 1289, 1291-92 (11th Cir. 1998); Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc. 999 F.2d 314, 316 (8th Cir. 1993); *United States Bank Nat'l Ass'n v. Nesbitt Belllevue Prop. LLC*, 866 F.Supp.2d 247 (S.D.N.Y. 2012). "A district court has broad authority to place assets into receivership to preserve and protect property pending its final disposition." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830 (5th Cir. 2019) (quoting *Gordon v. Washington*, 295 U.S. 30, 37, 55 S. Ct. 584, 79 L. Ed. 1282 (1935)); see also *Gilchrist,.*, 262 F.3d at 302 ("the district court has within its equitable powers the authority to appoint receivers and to administer receiverships"); *Wilmington Trust, N.A. v. Winta Asset Mgmt, LLC*, No. 20 Civ. 5309 (JGK), 2020 U.S. Dist. LEXIS 179200, at *1 (S.D.N.Y. Sept. 28, 2020) ("District courts have the power in equity to

4

appoint a receiver to protect a party's interest in property.). The decision to appoint a receiver is within the sound discretion of the court. *Hutchinson v. Fidelity Inv. Ass'n*, 106 F.2d 431, 436 (4th Cir. 1939); *Lantern Bus. Credit, LLC v. Alianza Trinity Dev. Grp.*, LLC, 2016 U.S. Dist. LEXIS 192860 at *3 (W.D.N.C. July 8, 2016). The party seeking the appointment of a receiver has the burden of proof. *Id.*

Federal law requires that the party appointing the receiver must generally show that he has some legally recognized right in the property, such as a security interest. *Southwood v. Credit Card Solution*, No. 7:09-CV-81-F, 2012 WL 12895545 at *20 (E.D.N.C. Oct 23, 2012) (citing *Manuel v. Gembala*, No 7:10-CV-4-FL, 2010 WL 3860407, at *6 (E.D.N.C. Sept 20, 2010). Beyond the necessity of a property right, federal courts weigh relevant considerations including the financial position of the debtor, the danger of the property being lost to casualty, waste, concealment, or injury, where other legal remedies are adequate, and the likelihood that appointment will do more good than harm. *Alianza Trinity*, 2016 U.S. Dist. LEXIS 192860 at *5; *United States Bank Nat'l Ass'n v. Nesbitt Belllevue Prop. LLC*, 866 F.Supp.2d 247 (S.D.N.Y. 2012).

Here, there is no dispute that the Line of Credit matured and the Inputs Agreements are in default, making them all due and owing in full to Plaintiff and entitling Plaintiff to a money judgment for outstanding balance of the debt. In addition, there is no dispute Plaintiff attempted an orderly and structured liquidation of property to pay the debts through the Forbearance Agreement, but the Defendants have unnecessarily delayed and failed to follow through with marketing and sale of the property. To date, most of the properties to be sold remain unsold. In the years' time the parties have been attempting the orderly liquidation, hundreds of thousands of dollars of interest has accrued, leaving Plaintiff in a position where the amount of property to

5

secure the loan is unlikely to fully repay the debt.

Rabo has worked extensively with the Defendants to bring current and eventually pay off the loan. Despite the extra time and opportunity extended to Defendants by Rabo, Defendants have been unable to pay the balance owed or comply with other opportunities provided by the Forbearance Agreement and its amendment. As demonstrated by the Forbearance Agreement, Defendants acknowledge that the Wescor entity is defunct, as it agreed to the appointment of a CRO to wind up operations. Defendants have not demonstrated that they are capable of maintaining the value of the property or operating the business to achieve financial success.

Further, the value of the Property is being actively lost to depreciation and accruing interest. Each day waste occurs: the balance of the loan increases, the potential value of the business and thus Collateral decreases, the Defendants provide no benefit to the business or its assets as they actively stall the inevitable. Having a receiver appointed now will accelerate the efforts to monetize the collateral, satisfy the debt and lessen the amount of assets of the Defendants needed to pay the loan off. An appointment of a receiver will do more good than harm, as a receiver will have the power to allocate funds and property appropriately and wind up a business whose value is dwindling daily.

Rabo is without an effective remedy at law for managing and maintaining the Collateral in order to collect on its interest. In order to preserve the value of the property and the value of Rabo's interest, a receiver is needed take possession and control over the collateral.

## II. Contractual Provisions Weigh in Favor of a Receiver.

Courts disagree on whether a contractual provision providing for the appointment of a receiver is dispositive of the issue. Various federal courts have held that a borrower's contractual agreement is independently a sufficient basis for appointment. *See, e.g. Britton v. Green,* 325 F.2d

6

377, 382 (10th Cir. 1963) (holding that the mortgagee was entitled to the appointment of a receiver because it was provided for in the mortgage documents); *Am. Bank & Trust Co. v. Bond Int'l Ltd.,* 06-CV-0317-CVE-FMH, 2006 U.S. Dist. LEXIS 58361, 2006 WL 2385309 (N.D. Okla. Aug. 17, 2006) (finding that the plaintiff was entitled to the appointment of a receiver under the bargained-for provisions of the parties' agreements).

Even among courts that do not see such provisions as dispositive, provisions in agreements to appoint a receiver are given great weight in their equitable analyses. This includes courts in the Fourth Circuit and beyond. *In re U.S. Bank Nat'l Ass'n v. Mt. Blue Hotel Grp., LLC*, 2017 U.S. Dist. LEXIS 174052 (N.D. W. Va. Oct. 19, 2017) (addressing such a provision weighing in favor of appointment as first among other reasons); see also *U.S. Bank Nat'l Ass'n v. Sayona Hosp., LLC*, 2014 U.S. Dist. LEXIS 88182 N.D. W. Va. June 26, 2014) (contractual provisions "strongly support" the appointment of a receiver); *Wilmington Trust, N.A. v. Aevri Salina Meadows LLC*, 2023 U.S. Dist. LEXIS 209257 (S.D.N.Y. Nov. 22, 2023) (stating that receivership language is "a factor militating in plaintiff's favor"); *D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad, Inc.*, 550 F.Supp.2d 481 (S.D.N.Y April 28, 2008) (stating that the existence of contractual language presumably negotiated between the parties is a factor supporting the appointment of a receiver). Courts in the Fourth Circuit have found contractual provisions for the appointment of receivers following default provide significant support for the appointment of receivers. *See Lantern Bus. Credit, LLC v. Alianza Trinity Dev. Grp.*, LLC, 2016 U.S. Dist. LEXIS 192860 at *6 (W.D.N.C. July 8, 2016).

In this case, the Loan Documents contain express authorization and consent of the appointment of a receiver upon default. For instance, Section 20 of the Deeds of Trust entitled "Remedies," states that after an event of default,

> [DEFENDANTS] HEREBY WAIVES NOTICE OF THE APPLICATION
> FOR, AND CONSENTS TO THE APPOINTMENT OF A RECEIVER,
> TRUSTEE, LIQUIDATOR OR CONSERVATOR OF THE PROPERTY
> IN ACCORDANCE WITH THE PROVISIONS OF THIS SECTION …
> AND AGREES NOT TO OPPOSE SUCH APPOINTMENT."

Comp., Ex. 9, p. 9.

Furthermore, an important and material condition of the Forbearance Agreement for which Plaintiff reasonably relied in entering into the Agreement was Defendants' agreement, consent and waiver of any objection or challenge to the appointment of a receiver over the Collateral upon the Event of Termination. Hanson Aff., ¶ 13. Section 3(B) of the Forbearance Agreement states,

> Furthermore, upon the occurrence of any Event of Termination, which is
> not cured within five (5) business days following notice to the [Defendants]
> through its counsel, the [Defendants] agree, consent and waive any
> objection to or challenge to the appointment of a receiver over Wescor or
> the Rabo Collateral, but not a receiver for R. Eller, and Rabo may submit
> this Agreement to any court of competent jurisdiction as evidence and proof
> of the [Defendants'] agreement, consent and waiver of opposition to the
> appointment of a receiver, whether general or limited, for Wescor and/or
> the Rabo Collateral.

Comp., Ex 9, p. 9.

### III.   Relief Requested.

Plaintiff respectfully request this Court appoint Ampleo Turnaround and Restructuring LLC ("Ampleo"), through its authorized representative, Glenn Karlberg, as receiver (hereinafter the "Receiver") to take possession of, manage and operate the Collateral and to collect all proceeds and rents and any other income therefrom, and to do all other acts in accordance with the terms of this Court's order appointing the receiver. The Receiver will cause this action and order to be filing in each judicial district where the receivership property is located. A copy of the proposed Order appointment a receiver is attached hereto.

8

This, the 29th day of April, 2025.

                                                **WOMBLE BOND DICKINSON (US) LLP**

By:    /s/ James S. Livermon, III
           JAMES S. LIVERMON, III
           N.C. State Bar No. 26492
           555 Fayetteville Street, Suite 1100
           Raleigh, NC 27601
           Telephone: (919) 755-2148
           Facsimile: (919) 755-6048
           E-mail:charlie.livermon@wbd-us.com

           *Attorneys for Rabo AgriFinance LLC*

9

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing <u>Memorandum of Law in Support of Plaintiff's Consensual Motion for Appointment of Receiver</u> and by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail, addressed to the following person at the following address which is the last address known to me:

Michael H. Hastings, Esq.
Woods Rogers Vandeventer Black PLC
10 S. Jefferson Street, Suite 1800
Roanoke, VA 24011

*Attorneys for Defendants*

This, the 29th day of April, 2025.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ James S. Livermon, III
JAMES S. LIVERMON, III

10